**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PEOPLE FOR THE ETHICAL**
**TREATMENT OF ANIMALS, INC.,**

     **Plaintiff,**

**v.**                                  **Case No: 8:16-cv-2899-T-36AAS**

**DADE CITY'S WILD THINGS, INC.,**
**STEARNS ZOOLOGICAL RESCUE &**
**REHAB CENTER, INC., KATHRYN P.**
**STEARNS and RANDALL E. STEARNS,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

People for the Ethical Treatment of Animals, Inc. ("PETA") requests the court impose

sanctions on Dade City Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc.

("collectively, Dade City Wild Things"), Kathryn Stearns, and Randall Stearns for violations of

the July 12, 2017 Order (Doc. 63) and July 14, 2017 Order (Doc. 69) (collectively, the "July

Discovery Orders"), and for spoliation of evidence.[1]  (Doc. 76).  In addition, PETA seeks an order

to show cause why Kathryn Stearns, Randall Stearns, and non-party Kenneth Stearns should not

be held in civil and criminal contempt.  (Docs. 76, 97).

---

[1] Throughout this Report and Recommendation, Mrs. Stearns, Randall Stearns, and the two corporate entities behind Dade City Wild Things, will be referred to collectively as "the defendants."   Otherwise, Mrs. Stearns, Randall Stearns, and Kenneth Stearns will be listed individually by name, and collectively as "the Stearns."

I.    **THE COURT'S PROCEDURAL HISTORY RELEVANT TO THE JULY DISCOVERY ORDERS[2]**

Mrs. Stearns and Randall Stearns (who is Mrs. Stearns and Kenneth Stearns' son) operate a zoo in Dade City, Florida, under the name of Dade City Wild Things.  (Doc. 38, ¶ 2).  Mrs. Stearns is listed as the director and registered agent for the relevant corporate entities.  (Doc. 37-1).  Randall Stearns is listed as the president and director of the relevant corporate entities.  (*Id.*).  PETA, an animal rights group, alleges that the defendants violated the Endangered Species Act, 16 U.S.C. § 1538 ("ESA"), by prematurely separating tiger cubs from their mothers, forcing the cubs to swim with the public for profit, and inadequately housing and caring for their tigers.  (Doc. 37, ¶ 3).  The defendants filed counterclaims against PETA for tortious interference, conversion, and fraud, in relation to a PETA "investigator" who allegedly obtained employment with Dade City Wild Things for the sole purpose of generating and disseminating internal information in preparation for the filing of this action.  (Doc. 38).

On June 7, 2017, PETA served the defendants' then-counsel, William Cook, with a request to conduct a site inspection at Dade City Wild Things.  (Doc. 56-1).  On June 30, 2017, PETA filed a motion to compel entry upon land to conduct a site inspection of Dade City Wild Things.[3]

---

[2] The detailed events surrounding the violations of the July Discovery Orders will be addressed below, in Section II.

[3] The site inspection included: (1) observing the tiger cubs during public encounters, both on land and in the pool, (2) observing the tigers interact with their trainers, both on land and in the pool, (3) observing all tigers interact without trainer interaction, (4) observing the physical condition of the tigers, (5) observing all tigers during meal time, (6) observing all tigers when shifted to off-exhibit areas, (7) observing all tigers when their enclosures are being cleaned, (8) measuring the size of the enclosures where the tigers are held, (9) observing areas associated with maintenance of the facility pool, and (10) taking water samples from the pool where tiger swims occur.  (Doc. 56-1).

(Doc. 56).  According to PETA's motion, Shiva—the sole tiger cub used for "swim encounters" at that time—would become too large for swim encounters after the end of July, so time was of the essence.  (*Id.* at p. 2).  The site inspection was originally scheduled to occur on July 11, 2017, but PETA agreed to reschedule the inspection for July 20, 2017, to not interfere with Dade City Wild Things' "kids camp."  (*Id.* at pp. 1-2).  However, when pressed to confirm a date, the defendants refused to permit a site inspection without a court order.  (*Id.* at p. 2).  Accordingly, PETA's July 30th motion requested the court compel the defendants to permit PETA to conduct a site inspection at Dade City Wild Things on July 20, 2017.  (*Id.* at p. 3).

On July 3, 3017, Mr. Cook sought to withdraw from representing the defendants due to "irreconcilable differences."  (Doc. 57, p. 1).  On July 12, 2017, the undersigned held a hearing on PETA's motion to compel the site inspection and Mr. Cook's motion to withdraw.  (Doc. 64).  The court overruled defendants' objections to the site inspection and granted the motion to compel the site inspection.  (Doc. 63, p. 1).  The court ordered that the site inspection occur at Dade City Wild Things during normal business hours on July 20, 2017.  (*Id.* at p. 2).  In addition, the court denied without prejudice Mr. Cook's motion to withdraw and instructed Mr. Cook that he could refile the motion after completion of the site inspection on July 20, 2017.  (*Id.*).

On July 14, 2017, after receiving information that the Stearns were in the process of removing their tigers from Dade City Wild Things, PETA filed an emergency motion for an order preserving the tigers in their current state and location to ensure PETA would have access to the tigers during the July 20th site inspection.  (Doc. 67).  That same day, the undersigned granted PETA's emergency motion and ordered that the defendants must "keep its twenty-two tigers on [Dade City Wild Things'] property and shall not transfer, transport, relocate or in any way harm

its twenty-two tigers absent further order of the Court." (Doc. 69, p. 4). In addition, the order stated that "transfer of the tigers [] would amount to a direct violation of the Court's July 12, 2017 Order mandating that the site inspection go forward on July 20, 2017." (*Id.* at p. 2). Given that the motion was granted on an emergency basis and so the court could consider the matter further with the benefit of the defendants' response, the undersigned set the motion for a hearing on July 26, 2017. (*Id.*)

From July 14 to July 16, 2017, the Stearns relocated all of their tigers, including Shiva, in direct violation of the court's order. The Stearns moved the majority of the tigers to Greater Wynnewood Exotic Animal Park ("Wynnewood"), located in Wynnewood, Oklahoma. Following the tiger transfer, Mr. Cook filed, on July 18, 2017, a renewed motion to withdraw as counsel for the defendants. (Doc. 70). The court added the motion to the matter set for a hearing on July 26, 2017. (Doc. 74).

On July 20, 2017, when PETA's site inspection team arrived at Dade City Wild Things for the court ordered site inspection, the Stearns denied them access to the facility. On July 25, 2017, PETA filed its motion for sanctions against the defendants for failure to comply with the July Discovery Orders, including the July 12th order compelling and setting the site inspection at Dade City Wild Things (Doc. 63) and the July 14th order prohibiting the removal of the tigers (Doc. 69). (Doc. 76).

The parties appeared before the undersigned for a hearing on July 26, 2017. (Doc. 78). At the hearing, the undersigned directed PETA to coordinate with its site inspection team to select a date for the site inspection to occur. (Doc. 81). The undersigned also directed the United States Marshal Service to be present at the rescheduled site inspection to ensure compliance by the

4

Stearns and for any necessary peace-keeping measures.  (*Id.*).  Mr. Cook's motion to withdraw was granted as to Mrs. Stearns and Randall Stearns, but was denied without prejudice as to Dade City Wild Things, until after completion of the site inspection.  (*Id.*).

PETA's site inspection of Dade City Wild Things, albeit without tigers, occured on August 4, 2017.  (Doc. 83).  On August 10, 2017, Mr. Cook filed a third motion to withdraw as counsel. (Doc. 90).  The court granted the motion and directed Dade City Wild Things to obtain new counsel by August 25, 2017.  (Doc. 92).  On August 24, 2017, attorneys James A. Wardell and Chip Purcell appeared on behalf of the defendants.  (Docs. 93, 94).

On August 28, 2017, PETA moved the court for an order for Wynnewood to show cause why it should not be held in contempt for aiding and abetting the defendants' violation of the July Discovery Orders.[4]  (Doc. 95).  On September 6, 2017, PETA moved the court for an order for Kenneth Stearns (Mrs. Stearns' husband and Randall Stearns' father) to show cause why he should not be held in contempt for aiding and abetting the defendants' violation of the July Discovery Orders.  (Doc. 97).  The court scheduled an evidentiary hearing on these motions for November 29, 2017.[5]  (Doc. 120).

On October 26, 2017, PETA moved the court to compel the production of Mr. Cook's documents and to enforce a subpoena for Mr. Cook's testimony concerning the defendants' violation of the July Discovery Orders.  (Doc. 131).  The defendants objected to PETA obtaining any discovery from Mr. Cook, and argued that their communications with him were protected by

---

[4] PETA later withdrew its motion against Wynnewood.  (Doc. 152).

[5] November 29, 2017, was the earliest day that counsel, the parties, and the non-parties collectively were available for the hearing.  (*See* Doc. 120, p. 2).

attorney-client privilege.  (Docs. 141, 142).  On November 3, 2017, the undersigned granted the motion to compel and concluded that the defendants waived their privilege for a limited timeframe when they placed documents and communications with Mr. Cook at issue by asserting his legal advice as their defense to violating the July Discovery Orders.  (Doc. 145).

On November 14, 2017, the defendants objected to the undersigned's order requiring limited discovery from Mr. Cook.  (Doc. 154).  The undersigned stayed the evidentiary hearing and Mr. Cook's discovery obligations pending resolution of the defendants' objections.  (Doc. 159).  On January 10, 2018, United Stated District Judge Charlene Edwards Honeywell overruled the defendants' objections and required Mr. Cook to produce the communications and testify to what occurred during the time of the violations.  (Doc. 170).

On January 12, 2018, Messrs. Wardell and Purcell moved to withdraw as counsel for the defendants and Kenneth Stearns, citing "irreconcilable differences."  (Doc. 173, p. 1).  The court set a hearing on the motion for January 24, 2018, and ordered the defendants and Kenneth Stearns to appear at the hearing.  (Doc. 178).  The defendants and Kenneth Stearns did not appear as ordered.  (Doc. 182).  The undersigned telephoned each of the Stearns and made clear on the record that they be physically present at a continued hearing the following day, January 25, 2018.  (Doc. 181).

On January 25, 2018, counsel for the parties, the defendants, and Kenneth Stearns appeared for the continued hearing.  (Doc. 184).  The court granted Messrs. Wardell and Purcell's motion to withdraw, and gave the corporate defendants until February 9, 2018, to obtain new counsel.  (Doc. 185, pp. 1-2).  In addition, the undersigned ordered the defendants to provide various

outstanding discovery responses, including documents missing from their document production.[6] (*Id.* at pp. 2-3).

The undersigned rescheduled the evidentiary hearing on PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) and PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) for February 21 and 22, 2018.  (Doc. 185, p. 4).

On February 9, 2018, the defendants requested—and were permitted—an extension of time to obtain counsel, until February 14, 2018.  (Docs. 197, 198).  On February 14, 2018, attorneys Gus Centrone and Brian Shrader appeared as counsel for Dade City Wild Things and the Stearns. (Docs. 201, 202).  The evidentiary hearing on the motions for sanctions was held on February 21 and 22, 2018.  (Docs. 219, 220).  During the two day hearing, the undersigned heard testimony from witnesses and received evidence related to the discovery violations.  (Docs. 219, 220).

## II.   THE STEARNS' ACTIONS RELEVANT TO THE JULY DISCOVERY ORDERS[7]

As of **June 26, 2017**, Dade City Wild Things owned twenty-four tigers, including tiger cub Shiva.  At 1:56 p.m., Mr. Cook emailed Mrs. Stearns and attached PETA's formal Rule 34(a)(2), Fed. R. Civ. P., request to conduct a site inspection of Dade City Wild Things.  (Pl. Exh. 49, Cook

---

[6] In all, PETA claimed it received only 33 pages of documents from the defendants, and that the vast majority of the production was not related to this action.  (*See* Doc. 188, pp. 40-41). Notably, the defendants' production did not include the requested and discoverable emails and text messages presented at the evidentiary hearing and received from other sources.  (*See* Doc. 163-1).

[7] In evaluating the appropriate sanctions, it is crucial to examine the events that took place surrounding the July Discovery Orders violations.  The timeline will begin on June 26, 2017, at the date Mr. Cook notified the defendants that PETA requested to perform a site inspection at Dade City Wild Things, until July 20, 2017, the date the Stearns prohibited PETA's entry onto the premises to conduct the court ordered site inspection.

Depo. at Exh. 1).  Mrs. Stearns testified that she receives emails sent to either her business or personal email addresses through her iPhone (#813-717-2555), which she carries with her.  (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 43-45).  Mr. Cook testified that it was his practice to send all email correspondence to Mrs. Stearns at both of her email addresses.  (Pl. Exh. 49, Cook Depo. at p. 12).  Mr. Cook understood that Mrs. Stearns shared all case related information with her son, Randall Stearns.  (Pl. Exh. 49, Cook Depo. at p. 15).

After receiving notice that PETA requested a site inspection of Dade City Wild Things, Mrs. Stearns immediately called Joseph Maldonado a/k/a Joe Schreibvogel, the entertainment and marketing director for Wynnewood, and asked him if Wynnewood would take eight of Dade City Wild Things' tigers.[8]  (Pl. Exh. 4, Maldonado Depo. at pp. 78-79).

At 7:20 p.m., Mrs. Stearns sent a text message to Susan Nassivera, a volunteer with Endangered Animal Rescue Sanctuary ("EARS") in Citra, Florida, and asked her if she knew anyone willing to take any of Dade City Wild Things' tigers.  (Pl. Exh. 6, Nassivera Depo. at Exh. 2).  As the reason for relocating the tigers, Mrs. Stearns text messaged to Ms. Nassivera: "Trying to lower tiger inventory due to peta lawsuit. … They might get [to come] tour my zoo.  If so trying to limit what [they] see."  (*Id.* at pp. 1-3).  Ms. Nassivera testified that Mrs. Stearns "was placing tigers because PETA was coming in for an inspection" and there would be less to see.  (Pl. Exh. 6, Nassivera Depo. at pp. 36, 61).  This was also confirmed in various Facebook video posts

---

[8] Mrs. Stearns testified that Mr. Maldonado actually reached out to her to ask for tigers. (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 56).  This testimony is not credible and directly contrary to Mr. Maldonado's testimony that Wynnewood already had more than 200 hundred tigers and that it was Mrs. Stearns who reached out to him for placement of Dade City Wild Things' tigers.  (Pl. Exh. 4, Maldonado Depo. at p. 24).

wherein Kenneth Stearns stated that the tigers were relocated so they could not be inspected by PETA.[9]  (Pl. Exhs. 38, 39).

The following day, on **June 27, 2017**, Mrs. Stearns returned Mr. Cook's email notifying her of the site inspection, via her iPhone, with a list of objections to the site inspection.  (Pl. Exh. 50, Mrs. Stearns' Depo, Exh 13).  Mrs. Stearns' email does not mention her plans to relocate the tigers.  That same day, after a hearing before Judge Honeywell on PETA's motion to dismiss the defendants' counterclaims, Mr. Cook met with Mrs. Stearns at the courthouse to discuss PETA's site inspection request.  (Pl. Exh. 49, Cook Depo. at pp. 19-20).  During this discussion, Mrs. Stearns said nothing to Mr. Cook about her ongoing efforts to relocate the tigers in advance of the site inspection.  (*Id.* at p. 22).

On **June 30, 2017**, Mrs. Stearns emailed Mr. Cook with additional objections to PETA's request for site inspection, as well as other issues.   (Pl. Ex. 50, Mrs. Stearns Depo. at Ex. 25).  Mrs. Stearns also stated she needed "time to discuss [the site inspection request] clearly with Randy (Randall Stearns) and get his thoughts and opinions." (*Id.*).  Again, Mrs. Stearns never mentioned her pending plans to relocate all of the tigers at Dade City Wild Things.

On **July 9, 2017**, Robert Engesser, on behalf of Dade City Wild Things, contacted Deborah Warrick, the founder and owner of St. Augustine Wild Reserve, and inquired if Ms. Warrick was interested in accepting some tigers from Dade City Wild Things.  (Doc. 76, Exh. 3, D. Warrick Decl. at ¶ 4).  At 11:14 a.m., Mrs. Stearns sent a text message to Ms. Nassivera asking, "Any luck on the tigers[?]"  (Pl. Exh. 6, Nassivera Depo. at Exh. 2, p. 4).

---

[9] For example, Kenneth Stearns stated, "now you see why I moved those tigers," and "with no tigers, how they gonna prove tiger abuse?"  (Pl. Exh. 38-3, 39).

On **July 12, 2017**, the undersigned held a hearing on PETA's motion to compel site inspection.  (Doc. 62).   Mrs. Stearns, who was physically present at the hearing, misled the undersigned to believe that there were no time constraints for the site inspection because the tiger encounters would not be ending in the foreseeable future.  (Doc. 64, pp. 13-14).  Mrs. Stearns said nothing about her contemporaneous efforts and plans to remove all of the tigers from Dade City Wild Things.  Mrs. Stearns testified that she did not tell the undersigned about her plans because it "didn't come up," so there was "never a reason to tell the court."  (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 86-88, 181).  The undersigned issued a ruling directing that the site inspection (which included the inspection and observation of tigers) occur on July 20, 2017.  (Doc. 63).

Immediately after the hearing, Mrs. Stearns called Randall Stearns and Kenneth Stearns. (Pl. Exh. 55, Stearns' Telephone Records at p. 7).  Mrs. Stearns also called Mr. Maldonado, and asked him if Wynnewood would take twenty-two tigers.  (*Id.*; Pl. Exh. 4, Maldonado Depo. at p. 215).  Mrs. Stearns told Mr. Maldonado that she had to "get [the tigers] out by the weekend."  (*Id.* at p. 293).  This is confirmed in a text message from Mr. Maldonado to Jeff Lowe, the CEO of Wynnewood, where Mr. Maldonado asked Mr. Lowe if Wynnewood would take Dade City Wild Things' tigers because "PETA won in court today."  (Pl. Exh. 4, Maldonado Depo. at Exh. 3).  Mr. Lowe agreed.[10]  (*Id.*).

Mrs. Stearns also called Mr. Cook and asked him what would happen "hypothetically" if she removed all of the tigers from Dade City Wild Things.  (Pl. Exh. 49, Cook Depo. at p. 56). Mr. Cook informed Mrs. Stearns that, "PETA likely would take the position that the tigers are

---

[10] Wynnewood solicited donations through gofundme.com to support the incoming tigers from a "private zoo [] forced to give up 22 tigers."  (Pl. Exh. 4, Maldonado Depo. at Exh. 6).

evidence in the case and [] they would probably file a motion for sanctions if that happened." (*Id.* at pp. 56-57). Mr. Cook testified that he did not think Mrs. Stearns would actually move the tigers. (*Id.* at pp. 22-23). Also during this conversation, Mrs. Stearns told Mr. Cook that Shiva was getting too big for public swim encounters. (*Id.* at pp. 63-64). However, when Mrs. Stearns was asked earlier that afternoon by the undersigned if swim encounters would be ending soon, Mrs. Stearns stated, "no, ma'am." (Doc. 64, p. 13).

The next day, **July 13, 2017**, Mrs. Stearns transferred ownership of twenty-three tigers from the corporate entity to her husband Kenneth Stearns.[11] (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 4). Ms. Nassivera traveled to Dade City Wild Things to pick up two white tigers to transport to EARS. (Pl. Exh. 6, Nassivera Depo. at p. 35). Randall Stearns helped Ms. Nassivera load the tigers. (*Id.* at p. 57). Kenneth Stearns followed Ms. Nassivera back to EARS to assist with unloading the tigers. (*Id.* at Exh. 2, p. 8). During this time, Kenneth Stearns told Ms. Nassivera that he and Mrs. Stearns are "ready to go to jail" and "they aren't backing down." (*Id.* at p. 14). Ms. Nassivera sent a text message to Gail Bowen, the manager of EARS, and told her she did not see Mrs. Stearns while she was at Dade City Wild Things because "they are keeping close to the vest … so [we] won't have to lie if asked." (*Id.* at pp. 13-14). When delivering the two tigers to EARS, Kenneth Stearns told Ms. Bowen that he may need to bring more tigers to EARS because PETA was going to inspect Dade City Wild Things. (Pl. Exh. 1, Bowen Depo. at pp. 49-50).

At 12:40 p.m., Mrs. Stearns sent the following email to Ms. Warrick:

Calling to discuss the placement of a few tigers – I am shipping out and wanted to see which tigers you want so that I can keep those for you – please let me know

---

[11] This transfer may have occurred on July 12. The date on the transfer document looks like a both a number 12 and 13. (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 4).

which ones and then we can discuss a delivery date as well – please call me asap .
. . I need to have this confirmed today if at all possible.

(Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 32).   Mrs. Stearns also contacted veterinarian Dawn

Miller, DVM, and told her that the Stearns had "lost the case with PETA" and "the judge ordered

that the tigers be moved [from Dade City Wild Things] by Tuesday [July 18]."  (Pl. Exh. 5, Miller

Depo. at pp. 49, 51).   Mrs. Stearns asked Dr. Miller to inspect the tigers for transport to

Wynnewood.  (*Id.* at 51).  At 1:40 p.m., Mrs. Stearns emailed Dr. Miller with the list of tigers for

Dr. Miller to inspect.  (Pl. Exh. 5, Miller Depo. at Ex. 7).

At 4:31 p.m., Mr. Cook emailed Mrs. Stearns and advised her that he received notice from

PETA that the Stearns were attempting to relocate their tigers, and warned her that it would be a

violation of the court's order and they would be subject to sanctions for disposing of evidence.

(Pl. Exh. 49, Cook Depo. at Exh. 12).   At 9:37 p.m., Mrs. Stearns followed up with Ms. Warrick

via email to ask if she would take two male tigers.[12]   (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 32).

The following day, **July 14, 2017**, Mrs. Stearns transferred tiger cub Shiva (the only tiger

cub being used for the public swim encounters) to Anne Kelly at Hernando Primate Sanctuary in

Brooksville, Florida.  (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 59).  At 7:31 a.m., Mrs. Stearns sent

a text message to Ms. Nassivera telling her the paperwork for the white tigers that were delivered

to EARS the day before should be put in Kenneth Stearns' name.  (Pl. Exh. 6, Nassivera Depo. at

Exh. 2, p. 4).

---

[12] Despite Mrs. Stearns having personally reached out to Ms. Warrick on at least two
occasions inquiring as to whether she would take any tigers, Mrs. Stearns testified that it was Ms.
Warrick who texted her about "wanting the tigers."  (Pl. Exh. 50, Mrs. Stearns Depo. at p. 193-98;
Exh. 32).  Ultimately, Ms. Warrick did not receive any tigers from Dade City Wild Things.  (Doc.
76, Exh. 3, D. Warrick Decl. at ¶¶ 11-12).

In the meantime, Dr. Miller attempted to travel to Dade City Wild Things to inspect tigers for transport but was delayed by traffic for three hours due to an accident on the highway.  (Pl. Exh. 5, Miller Depo. at p. 50).  Dr. Miller testified that she became exhausted from the heat during the delay and had to return home.  (*Id.* at p. 61).

Mrs. Stearns contacted veterinarian David Murphy, DVM, and told him it was an "emergency" and asked him to assist in the sedation and loading of Dade City Wild Things' tigers. (Doc. 224, February 21, 2017 Hearing Transcript at p. 31).  Dr. Murphy testified that Mrs. Stearns told him it was urgent because she was "under a court order" to move the tigers by Tuesday, July 18.  (*Id.*).  This is verified in Dr. Murphy's clinical notes.  (Pl. Exh. 31).

Mrs. Stearns testified that she did not tell either Dr. Murphy or Dr. Miller that she was under a court order to remove the tigers.  (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 230, 232).  Mrs. Stearns' testimony is not credible, considering that Dr. Miller and Dr. Murphy testified that they had not spoken to one another and that Mrs. Stearns told them the exact same thing.  (Pl. Exh. 5, Miller Depo. at p. 92; Doc. 224, February 21, 2017 Hearing Transcript at p. 31).

At approximately 1:00 p.m., on July 14, 2017, Dr. Murphy arrived at Dade City Wild Things, and Randall Stearns greeted him at the gate and let him in.  (Doc. 224, February 21, 2017 Hearing Transcript at pp. 33-34).  Mrs. Stearns and Kenneth Stearns were also there.  (*Id.* at p. 34). Mrs. Stearns testified that she was "in bed with pain pills and sick" from July 14th to July 16th, but Dr. Murphy stated that Mrs. Stearns was up walking around and did not appear sick.  (Pl. Exh. 50, Mrs. Stearns Depo. at p. 185; *Id.* at p. 35).  In addition, Mrs. Stearns testified that the tigers were removed due to a tornado that went through and "wipe[d] out half the zoo."  (Pl. Exh. 50, Mrs. Stearns Depo. at p. 53).  However, Dr. Murphy testified that he saw no damage and that the

13

enclosures appeared to be in good working order.  (February 21, 2017 Hearing Transcript at pp. 40-41).

Dr. Murphy testified that the tigers were loaded into an aluminum double-decker trailer, meant for transporting cattle or hoof stock, which was "potentially dangerous" for transporting tigers.  (*Id.* at pp. 38-40).  Dr. Murphy stated that he had assisted in sedating and loading tigers twenty-five to fifty times before, but had never seen tigers transported in that fashion.  (*Id.* at p. 38).  The trailer had openings that were large enough for the tigers to stick their paws out.  (*Id.* at p. 40).  Also, there were no water receptacles on the trailer.  (*Id.*).  Dr. Murphy expressed his concerns to Kenneth Stearns, who told Dr. Murphy he was "comfortable with the procedure."  (*Id.* at p. 39-40).  Dr. Murphy's concerns and Kenneth Stearns' reaction was noted in Dr. Murphy's clinical notes.  (Pl. Exh. 31).

At 1:14 p.m., Mr. Cook emailed Mrs. Stearns and advised her that PETA filed a motion to prohibit the relocation of the tigers from Dade City Wild Things and, if granted, the Stearns would be in violation of a court order.  (Pl. Exh. 49, Cook Depo. at Exh. 12).   At 4:46 p.m., the court granted PETA's motion and expressly prohibited the relocation of the tigers.  (Doc. 69).  At 5:43 p.m., Mr. Cook emailed Mrs. Stearns and advised her that PETA's motion was granted and she is prohibited from moving the tigers.  (Pl. Exh. 49, Cook Depo., Exh. 15).  Dr. Murphy, who was not informed of the order, continued with the sedation and loading of the tigers until after 9:00 p.m. (Doc. 224, February 21, 2017 Hearing Transcript at p. 42).

The next day, on **July 15, 2017**, at 6:25 a.m., Mrs. Stearns sent a text message to Dr. Murphy asking him his estimated time of arrival.  (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 36).  At

approximately 7:00 a.m., Dr. Murphy arrived at Dade City Wild Things and finished the tiger sedation and loading.[13]  (Doc. 224, February 21, 2017 Hearing Transcript at p. 42).

At approximately 4:00 p.m., Kenneth Stearns arrived at EARS with twenty-one tigers from Dade City Wild Things.  (Pl. Exh. 6, Nassivera Depo. at pp. 42, 45).  Ms. Bowen testified that the tigers appeared to be hot and there were no water receptacles in the trailer.  (Id. at pp. 55-56).  Ms. Bowen asked two of her employees to water the trailer.  (*Id.* at 55).

Kenneth Stearns delivered two more tigers to EARS but did not have time to unload them because he was in a hurry, so he left them in a trailer to unload the following day.  (Pl. Exh. 1, Bowen Depo. at 59).  Kenneth Stearns instructed Ms. Bowen to list himself as the donor.  (*Id.* at p. 41).  Kenneth Stearns took the remaining nineteen tigers to a parking lot of a Gainesville shopping center for Dr. Miller to examine and issue the health certificates needed to leave Florida. (Pl. Exh. 5, Miller Depo. at p. 25).

On **July 16, 2017**, at 9:30 a.m., Mrs. Stearns sent a text message to Ms. Nassivera, letting her know that Kenneth Stearns was on his way to EARS to help unload the two tigers he left there the day before.  (Pl. Exh. 50, Mrs. Stearns' Depo. at Exh. 35, p. 5).  At 12:32 p.m., Mrs. Stearns sent another text message to Ms. Nassivera letting her know that Kenneth Stearns was five minutes away.  (*Id.* at p. 6).

---

[13] On September 23, 2017, Mrs. Stearns sent Dr. Murphy a text message asking him "who mentioned I had court order to move the tigers."  (Pl. Exh. 33).  Dr. Murphy testified that he laughed when he received Mrs. Stearns' text message because "she knows why we were moving those tigers, because she told me that she was under a court order to move those tigers by Tuesday [July 18], and so that's the only reason, you know, that I jumped in there and helped like that." (Doc. 224, February 21, 2017 Hearing Transcript at p. 48).

At approximately 5:00 p.m., and after traveling approximately 12,000 miles for eighteen hours in the summer heat, the aluminum trailer carrying nineteen tigers arrived at Wynnewood.[14] (Pl. Exh. 4, Maldonado Depo.at p. 94; Exh. 10).   The tigers were in "bad shape" upon arrival.   (Pl. Exh. 4, Maldonado Depo. at p. 308).   The tigers had open sores, infected toenails, and fungal infections.   (*Id.* at p. 264).   Sadly, one pregnant female tiger delivered three cubs during the trip and all three cubs died.[15]   (*Id.* at p. 154).

On the morning of **July 17, 2017**, Mr. Maldonado learned of the court order prohibiting the removal of the tigers from Dade City Wild Things.   (*Id.* at p. 1221-22).   He immediately called Mrs. Stearns to ask her about the order, and Mrs. Stearns replied that the tigers were already on the road when the order was entered.   (*Id.* at p. 123).   In fact, the tigers were still at Dade City Wild Things when the order was entered, and did not leave for Wynnewood until after the remainder of the tigers were loaded by the following afternoon.

At 10:36 p.m., Mrs. Stearns emailed Mr. Cook and told him, "I am just seeing these emails" —the emails relating to the court order prohibiting the removal of the tigers.   (Pl. Exh. 49, Cook

---

[14] Mrs. Stearns testified that Mr. Maldonado arranged the transportation.   (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 115).   This testimony is not credible as Mr. Maldonado credibly testified that Mrs. Stearns arranged the transportation, which he contemporaneously confirmed in a text message to Mr. Lowe.   (Pl. Exh. 4, Maldonado Depo. at Exh. 3).   In addition, the F-150 that hauled the trailer containing the tigers reportedly had a Florida tag numbered Y76GNJ.   (Doc. 76, Exh. 3, Decl. D. Warrick at ¶ 21).   Mrs. Stearns has a Ford F-150 registered in her name bearing that same Florida tag number.   (Doc. 76, Exh. 8, Decl. of J. Orr at ¶ 6).

[15] Mrs. Stearns knew that at least one of the tigers was pregnant, but she never told this fact to either Dr. Miller or Dr. Murphy.   (Doc. 224, February 21, 2017 Hearing Transcript at p. 42; Pl. Exh. 5, Miller Depo. at p. 18; Pl. Exh. 50, Mrs. Stearns Depo. at p. 86).   The dead tiger cubs were captured on a live Facebook feed.   (Pl. Exh. 4, Maldonado Depo. at Exh. 11).   In response to the video, a commenter posted, "Obviously the care was subpar because she shouldn't have been moved without them being aware of her situation."   (*Id.*).   Mr. Maldonado replied, "Court ordered them to be … That's what I'm so mad about."   (*Id.*).

Depo., Exh. 16).  Mrs. Stearns made this statement to Mr. Cook despite having discussed the court order earlier in the day with Mr. Maldanado.  Also, despite the fact that between July 13th and 16th, Mrs. Stearns had been on her iPhone and sent and received at least seven known emails, at least twenty-one known text messages, and placed and received 178 phone calls that lasted a total of 9.5 hours.  (Pl. Exh. 55).

On **July 19, 2017**, the day before the scheduled site inspection, Mrs. Stearns emailed Mr. Cook and advised him that there was no longer anything for PETA to inspect because Dade City Wild Things no longer had tigers.   (Pl. Exh. 49, Cook Depo. at Exh. 17).  Mr. Cook responded and advised Mrs. Stearns that she did not have the authority to cancel the site inspection, and that prohibiting the site inspection would be a violation of the court's order.  (*Id.* at Exh. 18).

Nonetheless, on **July 20, 2017**, when PETA's site inspection team arrived at Dade City Wild Things, there was a sign on the door stating that it was closed "due to PETA death threats." (Pl. Exh, 50, Ms, Stearns' Depo. at Exh. 11).  Mrs. Stearns testified that she does not know why the zoo was closed because she was bedridden.[16]  (Pl. Exh, 50, Ms, Stearns' Depo. at pp. 101, 131). However, Kenneth Stearns testified that Mrs. Stearns is the only person with authority to close Dade City Wild Things.  (Doc. 225, February 22, 2017 Hearing Transcript at p. 52).

Mrs. Stearns testified that she thought the site inspection was cancelled because Shiva was too big to swim, so there was no reason to have the inspection.  (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 103).  This testimony is contrary to Mrs. Stearns and Kenneth Stearns' own admissions that they were relocating the tigers so there would be nothing for PETA to inspect.  (Pl. Exh. 6,

---

[16] Despite all of the testimony about Mrs. Stearns activity, Mrs. Stearns claimed to be bedridden from a surgery that occurred almost two months prior, on May 30. (Pl. Exh, 50, Ms, Stearns' Depo. at p. 54).

Nassivera Depo. at Exhs. 1-3; Pl. Exhs. 37-1, 38-3, 39).   In addition, even without tigers, the facility was still subject to inspection.   (See Doc. 56-1).

PETA contacted Mr. Cook, who emailed Mrs. Stearns and advised her yet again that prohibiting PETA's access to the facility was a violation of the court's order and asked her to reconsider her actions.   (Pl. Exh. 49, Cook Depo. at Exh. 19).   She did not, and PETA's site inspection team eventually left the premises.

## III.   ANALYSIS

PETA requests the following sanctions against the defendants for violations of the July Discovery Orders and spoliation of evidence: (1) entry of a default judgment; (2) dismissal of the defendants' counterclaims; and (3) payment of PETA's reasonable expenses, including attorney's fees and expenses, caused by the failure to comply with the July Discovery Orders.   (Doc. 76). PETA further moves for orders for Mrs. Stearns, Randall Stearns, and Kenneth Stearns to show cause why each of them should not be held in contempt.   (Docs. 76, 97).

### A.   Rule 37 Sanctions

A district court has broad authority under Rule 37 to control discovery.   *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).   "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process."   *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982).

Federal Rule of Civil Procedure 37(b) authorizes the court to impose such sanctions "as are just" against a party that violates an order compelling discovery.   Fed. R. Civ. P. 37(b)(2).   The Rule includes a list of the following possible sanctions:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

18

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). "Instead of or in addition to [such sanctions], the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Although dismissal of claims and default judgment are sanctions of "last resort," they may be imposed where the disobedient party's noncompliance is willful or done in bad faith and lesser sanctions would not suffice. *Malautea v. Suzuki Motor, Co., Ltd.*, 987 F.3d 1536, 1542 (11th Cir. 1993). Generally, the sanctions of default or dismissal are considered drastic remedies that should be resorted to "only if noncompliance is due to willful or bad faith disregard of court orders." *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (citations omitted). The district court must find that less drastic sanctions would not be equally effective in achieving compliance with the court's orders. *Id.* (citing *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 481-82 (11th Cir. 1982)). However, when the noncompliant party

demonstrates "a flagrant disregard for the court and the discovery process," the "severe" sanctions of default and dismissal are not an abuse of discretion. *Aztec Steel Co.*, 691 F.2d at 481.

### i.      Conduct was Willful and Done in Bad Faith.

Without question, the defendants and Kenneth Stearns willfully acted in bad faith and in flagrant disregard for the discovery process essential to this federal cause of action. Immediately after receiving PETA's request for a site inspection, the Stearns began a calculated and deliberately deceptive process of disposing of their twenty-four tigers designed to frustrate the site inspection and eliminate evidence.  In the process, the Stearns lied to the veterinarians caring for their animals, lied to their attorney, lied to the recipients of the tigers, and lied to the court.  The breadth of the defendants' deceit is confounding and, thankfully, this type of brazen misconduct is a rare occurrence.

While there is no doubt that Mrs. Stearns took the lead in this egregious behavior and disregard for the judicial process, Randall Stearns is not without fault.  He is a party to this action and was on notice that PETA's lawsuit involved the housing and treatment of Dade City Wild Things' tigers.  Randall Stearns is listed as the president and director of Dade City Wild Things and Stearns Zoological Rescue & Rehab Center.  (Doc. 37-1).  He works as a volunteer at Dade City Wild Things, and is featured as the "tiger man" throughout Dade City Wild Thing's website. *See* www.dadecitywildthings.com (last visited March 2, 2018).  Randall Stearns recorded at least some of Kenneth Stearns' videos, which included discussions of the case as well as removing the tigers from Dade City Wild Things.  (Pl. Ex. 51, Randall Stearns Depo. at p. 35).  When discussing possible objections to the site inspection, Mrs. Stearns told Mr. Cook that she needed "time to discuss this clearly with Randy [Randall Stearns] and get his thoughts and opinions."  (Pl. Ex. 50,

Mrs. Stearns Depo. at Ex. 25).  After the hearing ordering the site inspection, Mrs. Stearns called Randall Stearns first.  (Pl. Exh. 55, Stearns' Telephone Records at p. 7).  In addition, Randall Stearns was at Dade City Wild Things on July 14, 2017, to greet Dr. Murphy and let him in when he arrived to sedate and load the tigers for transport.  (Doc. 224, February 21, 2017 Hearing Transcript at pp. 33-34).  He was also present when Ms. Nassivera arrived to facilitate removing two tigers from Dade City Wild Things to transport them to EARS.  (Pl. Exh. 6, Nassivera Depo. at p. 57).  Randall Stearns acted in bad faith and with a disregard for the court and the judicial process.

Kenneth Stearns also acted in bad faith in heavily aiding in the violation of the July Discovery Orders.  Although Kenneth Stearns is a non-party, Dade City Wild Things is a family business and any sanctions imposed will affect that business.  Thus, the undersigned will address Kenneth Stearns' bad faith conduct.  Knowing full well that PETA was scheduled to conduct a site inspection at Dade City Wild Things, Kenneth Stearns accepted a transfer of ownership of all of Dade City Wild Things' tigers into his name.  (Pl. Exh, 50, Mrs. Stearns Depo. at Exh. 4).  That same day, Kenneth Stearns assisted Ms. Nassivera in relocating two of Dade City Wild Things' tigers to EARS.  (Pl. Exh. 6, Nassivera Depo. at Exh. 2, p. 8).  The following two days, Kenneth Stearns assisted Dr. Murphy in the sedation and loading of twenty-one tigers.  Kenneth Stearns then delivered two more tigers to EARS and transported nineteen to be inspected for travel to Wynnewood.  Kenneth Stearns took ownership and pride in his actions when posting on Facebook, making statements such as "now you see why I moved those tigers" and a reference to "outsmarting" PETA by removing the tigers.  (Pl. Exh. 39, 37-1).  Kenneth Stearns also acted in bad faith and with a disregard for the court and the judicial process.

### ii.        The Prejudice to PETA and the Court is Significant.

This lawsuit challenges the defendants' treatment and housing of their tigers.  (*See* Doc.

38).  A site inspection is an essential, and permissible, discovery practice specifically authorized

by Rule 34 of the Federal Rules of Civil Procedure.  The tigers are central evidence to PETA's

case, and observing the tigers as they existed at Dade City Wild Things is crucial.  The Stearns

knew of the importance of observing the tigers and went to great lengths to deprive PETA of that

right.  Because, as Kenneth Stearns stated, "With no tigers, how they gonna prove tiger abuse?"

(Pl. Exh. 38).  The prejudice to PETA is significant, as the Stearns succeeded with their plans to

deprive PETA of the ability to obtain the information and evidence essential to prove its claims.

Because of the Stearns' relentless bad acts, PETA and the court have been deprived of ever having

this case resolved on the merits.

In addition to thwarting PETA's ability to discover facts necessary to prove its case, the

Stearns' conduct caused PETA to incur extensive and unnecessary attorney's fees and expenses.

PETA incurred fees and expenses for the motion and hearings related to the rescheduling of the

site inspection, the fees and expenses associated with all filings related to the defendants'

relocation of the tigers, the fees and expenses associated with the failed July 2017 site inspection,

and the fees and expenses related to the instant motions, evidentiary hearing, and hours of related

discovery, including numerous out-of-town depositions.

The court had also been impacted by the defendants' actions.  In the approximate eight

months since this sanctionable conduct began, over 170 filings have been added to the court's

docket—the vast majority of which relate to this discovery dispute and not to the underlying merits

of the case.

22

### iii.    Imposing Lesser Sanctions Would Be Futile.

PETA requests that the court enter a default judgment against the defendants, and dismiss the counterclaims against PETA with prejudice.  Given the egregious nature of the defendants' discovery violations and their flagrant disregard for the court's order and the judicial process, the undersigned agrees that the entry of default judgment and dismissal of the counterclaims is appropriate.  This harsh sanction is warranted under these facts.  Lesser sanctions will not suffice.

Rule 37(b)(2) provides for the imposition of lesser sanctions ranging from staying the proceedings until the disobedient party obeys the court's orders, taking the matters addressed in the order as established, or monetary sanctions designed to make the moving party whole.  Rule 37(b)(2), however, broadly applies to *any* failure to comply with a court order or failure to provide or permit discovery.   An offending party's non-compliance with an order could result from more defensible conduct ranging from an inability to comply with a discovery order to a misunderstanding, or to simple negligence.  It is incumbent on courts to calibrate carefully the appropriate sanctions with a disobedient party's conduct.

Here, the defendants and Kenneth Stearns' continuous, systematic, and willful disobedience of the July 2017 Discovery Orders instructs that they will not comply with any lesser sanctions that the court can impose.  The ongoing and pervasive nature of their unwillingness to follow court orders—especially after being put on notice on multiple occasions by the undersigned and their then counsel William Cook that interfering with the site inspection was sanctionable conduct—leads the undersigned to conclude that any further attempts at ordering compliance with discovery-related directives, much less a sanctions order, would be futile.

Further, it is impractical, if not impossible, for lesser sanctions to somehow cure the prejudice that the defendants' actions have caused.  The tigers at issue in this lawsuit have been moved at least once to three separate locations, and most of the tigers have been moved twice and now are located at a sanctuary in Colorado.  Even if the tigers could be returned to Dade City Wild Things, they are unlikely in the condition that they were in when the defendants and Kenneth Stearns removed them in July 2017.

"When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those lesser sanctions."  *Malautea*, 987 F.2d at 1544; *see also Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988) (holding sanctions of default or dismissal are appropriate when less draconian sanctions will not cure the prejudice or otherwise ensure future compliance with discovery obligations); *Commodity Futures Trading Comm. v. Alpha Trade Group, S.A.*, 2012 WL 3984717, at *3 (M.D. Fla. Aug. 24, 2012) ("Faced with the evidence of 'flagrant disregard' of this Court's prior Orders, the Court has every reason to expect that an order of lesser sanctions would be similarly ignored.").

Therefore, in light of the defendants' willful, deceitful, and prejudicial conduct, the undersigned recommends that entry of a default judgment and the dismissal of the defendants' related counterclaims, is warranted.  Lesser sanctions will not cure the prejudice, will not ensure compliance with court orders, and will not adequately punish the defendants' willful disobedience of the July Discovery Orders.  In addition to entry of a default judgment against the defendants and the dismissal of their counterclaims, the undersigned further recommends that the defendants pay PETA's reasonable expenses, including attorney's fees, related to the defendants' failure to comply with the July Discovery Orders.  *See* Fed. R. Civ. P. 37(b)(2)(c).

**B.**     **Sanctions for Spoliation of Evidence**

Alternatively, even if Rule 37 did not authorize these sanctions, the court can rely on its inherent authority to sanction litigation misconduct and impose sanctions against the defendants for spoliation of evidence central to this case. "Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence." *Optowave Co. v. Nikitin*, No. 6:05–cv–1083–Orl–22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006)(quoting Blacks Law Dictionary 1437 (8th Ed. 2004)). Generally, spoliation is established when the party seeking sanctions proves that: (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense. *Id.*

The court has broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). "Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 3:06-cv-13-33TEM, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007). In the Eleventh Circuit, the most severe sanctions (such as dismissal or default) should be exercised only when there is a showing of bad faith and lesser sanctions will not suffice. *See Flury*, 427 F.3d at 944-45.

### i.     The Removal of the Tigers Constituted Spoliation.

Here, the unlawful spoliation of evidence occurred.  The tigers were present at Dade City

Wild Things when PETA filed this action.  From the face of the original complaint, it is clear that

the defendants' treatment of the tigers is central to this action.  The defendants not only knew of

the pending litigation and their obligation to preserve the tigers, but also knew that the inspection

of the tigers was imminent and yet intentionally spoliated that evidence by hurriedly removing the

tigers in the days leading up to the court-ordered inspection.  "[A] litigant . . . is under a duty to

preserve what it knows, or reasonably should know, is relevant in the action, is reasonably

calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested

during discovery, and/or is the subject of a pending discovery request."  *Optowave*, 2006 WL

3231422, at *7-8 (citation omitted).  Not only should the defendants have reasonably known that

the presence of the tigers was important for the scheduled inspection, Mr. Cook repeatedly advised

the defendants of their obligation to preserve this specific evidence.  (Pl. Exh. 49, Cook Depo. at

p. 56, Exhs. 12, 15, 18).

### ii.     The Spoliation Was Willful and in Bad Faith.

Bad faith is found "where a party tampers with, purposefully loses, or intentionally destroys

relevant evidence."  *E.E.O.C. v. Suntrust Bank*, No. 8:12-CV-1325-T-33, 2014 WL 1364982, at

*5 (M.D. Fla. Apr. 7, 2014).  Where a party destroys evidence despite a clear obligation to

preserve, bad faith must be found.  *E.g., Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280–81

(M.D. Fla. 2009).

As thoroughly detailed in the parallel Rule 37 sanctions section above, the intentional

removal of all of Dade City Wild Things' tigers was done in bad faith.  In addition, the prejudice

to PETA is as serious, if not more so, than the prejudice existing in other cases in which courts found bad faith. *See Britton v. Wal–Mart Stores East, L.P.*, No. 4:11-cv-32-RH/WCS, 2011 WL 3236189, at *13 (N.D. Fla. June 8, 2011) (finding bad faith where spoliator consciously chose to permit video evidence of alleged shoplifting to be destroyed over time by failing to download it, knowing that legal claims relevant to video were forthcoming); *Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1281 (M.D. Fla. 2009) (finding bad faith where spoliators failed to direct employees to preserve evidence and, in at least one case, were directly responsible for spoliation by failing to sequester weapons used in incident and instead sending them back to manufacturer for disassembly). There is no way to cure the prejudice. The subject tigers were moved from Dade City Wild Things at a significant moment in this litigation. It is now impossible for PETA to observe the tigers as they existed eight months ago.

Accordingly, the defendants acted willfully and in bad faith when removing this crucial evidence.

### iii. Entry of Default Judgment and Dismissal of the Counterclaims are the Appropriate Sanctions.

Just as with Rule 37 sanctions, this court's inherent authority to sanction a party's spoliation of evidence by granting default judgment is a sanction of "last resort" and is appropriate only where lesser sanctions are not adequate. *Malautea*, 987 F.2d 1536, 1542. Here, the defendants' repeated outrageous actions, chronicled in the above sections, warrants the ultimate sanction of entry of default judgment and dismissal of the counterclaims against PETA.

As already addressed in the Rule 37 sanctions section above, the undersigned recommends entry of a default judgment, and dismissal of related counterclaims, as no lesser sanction will suffice. In addition to the lesser sanctions listed in Rule 37, a lesser sanction for spoliation also

includes an adverse inference.  However, a simple adverse inference instruction is not a viable option in this non-jury case.  Even if it was a viable option, an adverse inference instruction is an ineffective counter to the defendants' egregious conduct unless it is crafted so broadly that it has the effect of a judgment in favor PETA—albeit after further delay and greater prejudice to PETA than the recommended award of a default judgment now.

Indeed, the defendants' actions are at least as flagrant as those in *Flury v. Daimler Chrysler*, in which the Eleventh Circuit directed that the district court dismiss the plaintiff's action and enter a judgment in favor of the defendant, as a sanction for spoliation.  *Flury*, 427 F.3d at 947.  In that case, the plaintiff knew that the defendant sought to examine the vehicle that later became the subject of a products liability action.  *Id.* at 945.  Despite this, the plaintiff sold the vehicle for salvage without notifying to the defendant.  *Id.*  In the instant case, the defendants knew that PETA wanted to examine the tigers as they existed at Dade City Wild Things during the scheduled site inspection.  The defendants knew that litigation was ongoing and that the condition of the tigers was central to the dispute.  Knowing all these things, the defendants deliberately removed the evidence that was necessary for PETA to prove its prima facie case.

Following the rationale of *Flury*, the undersigned recommends the entry of a default judgment and dismissal of related counterclaims is an appropriate sanction.

## C.     Contempt

Because the undersigned recommends the ultimate sanction of a default judgment as well as an award of associated reasonable attorneys' fees and expenses incurred by PETA over the last eight months at issue, the undersigned recommends that there is no need to pile on contempt proceedings against Mrs. Stearns, Randall Stearns and Kenneth Stearns.  As a separate matter,

although it is clear that Kenneth Stearns acted in concert with the defendants in the violation of the July Discovery Orders, as well as the spoliation of evidence, the exercise of imposing sanctions on Kenneth Stearns would serve no additional purpose.  Moreover, Kenneth Stearns will be affected by the imposition of the recommended sanctions because Dade City Wild Things is a family business.

## IV.    CONCLUSION

"What above all else is eroding public confidence in the Nation's judicial system is the perception that litigation is just a game . . .."  *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 903 (2009) (Scalia, J., dissenting).  The defendants and Kenneth Stearns' shameless removal of the tigers in this action in the days immediately before a court-ordered inspection deprived PETA of crucial evidence and demonstrated a complete disregard for the rule of law.  Such outrageous conduct warrants severe sanctions.

Accordingly, and for the foregoing reasons, it is **RECOMMENDED** that:

(1)    PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) be **GRANTED in part**, as follows:

(a)    Enter a default judgment against Dade City Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., Kathryn P. Stearns, and Randall E. Stearns;

(b)    Dismiss Dade City Wild Things, Inc., and Stearns Zoological Rescue & Rehab Center, Inc.'s counterclaims against PETA;

(c)    Award PETA its reasonable attorneys' fees and expenses incurred as a result of the defendants' failure to comply with the July Discovery Orders; and

(2)      PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) be **DENIED as moot** in light of the other sanctions recommended in this Report and Recommendation.

**ENTERED** in Tampa, Florida this 2nd day of March, 2018.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record
District Judge

30