### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PEOPLE FOR THE ETHICAL TREATMENT
OF ANIMALS, INC.,

      Plaintiff,

v.                                         Case No. 8:16-cv-2899-CEH-AAS

DADE CITY'S WILD THINGS, INC., STEARNS
ZOOLOGICAL RESCUE & REHAB CENTER,
INC. D/B/A DADE CITY'S WILD THINGS,
KATHRYN P. STEARNS, AND RANDALL E.
STEARNS,

      Defendants.

_____/

### DEFENDANTS' MOTION TO DISMISS
### PLAINTIFF'S SECOND AMENDED COMPLAINT

    Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7), Defendants Dade

City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., d/b/a Dade City's

Wild Things, Kathryn P. Stearns, and Randall E. Stearns (collectively, "Defendants" or

"DCWT"), by and through undersigned counsel, hereby move to dismiss Plaintiff People for the

Ethical Treatment of Animals, Inc.'s ("Plaintiff's," or "PETA's") Second Amended Complaint

(Doc. 256) for failure to state a claim upon which relief can be granted and for failure to join

necessary parties.

### INTRODUCTION

    The Second Amended Complaint (Doc. 256) brings claims against DCWT for alleged

violations of the Endangered Species Act ("ESA"), 16 U.S.C. §1531 *et seq.* The "harms" alleged

by PETA in the Second Amended Complaint fall into two categories:

First, with respect to the pre-transport care of tigers at DCWT, PETA alleges "harms" include pinching, cuddling, and kissing of tigers (*id*. ¶¶ 50, 58), as well as subjecting tigers to "risks" of greater harms such as sickness or pneumonia (*id*. ¶ 53, 76.)  As discussed more fully below, these claims fail as a matter of law because PETA fails to allege an injury-in-fact sufficient for standing, and because PETA fails to allege an actionable "harm" under the Eleventh Circuit's *Seaquarium II* standard.

Second, PETA alleges that DCWT is responsible for harms that purportedly arose when the tigers were transported across state lines from July 14-16, 2017. (*Id*. ¶¶ 89-92.) For example, PETA attributes the birth and death of three tiger cubs during this trip to the allegedly poor conditions the tigers endured during transit. (*Id*. ¶ 92.)  However, as discussed below, these claims fail as a matter of law.  PETA has not alleged a case or controversy because PETA has not alleged a causal connection between the "harms" purportedly incurred and conduct undertaken by DCWT.  Further, PETA cannot bring an ESA claim for the transport incident because the conditions of transport are governed by the Animal Welfare Act ("AWA"), rather than the ESA.  Lastly, PETA's complaint is deficient because PETA has failed to join necessary parties as required by Federal Rule of Civil Procedure 19.

PETA's Second Amended Complaint should be dismissed in its entirety with prejudice.

## FACTS

DCWT operates a zoo in Dade City, Florida, and at one time bred and housed tigers. (Doc. 38 ¶ 8.)  On October 12, 2016, PETA filed a citizen suit against DCWT for alleged violations of the ESA. (Doc. 1.)  PETA alleged that DCWT had committed an impermissible "take" under the ESA. (*See id.*) The behavior complained of by PETA included "cuddling," "pinching," "grabbing," "stress," "discomfort," and denying animals "the ability to make choices."  (*See id.*)  On April 19, 2017 PETA filed a First Amended Complaint.  (Doc. 37.)

On June 26 and 27, 2017, while the suit was ongoing, third-parties Joe Maldonado and Greg Woody contacted DCWT and arranged to transport the DCWT tigers to another location. (K. Stearns Depo, Doc. 235-7 at p. 158:1-5.)  DCWT's tigers were relocated over a span of two days, from July 14 to July 16, 2017.  (Doc. 236 p. 22.) The tigers were in Woody's custody while in transit. (*Id.*; Doc. 236 pp. 19, 23.) PETA has alleged that a pregnant female tiger gave birth during transit, and three of the newborn cubs died. (Doc. 256 ¶¶ 89, 92.)[1]

On January 12, 2018, the Eleventh Circuit issued a binding decision holding that a "take" under the ESA requires a "threat of serious harm."  *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018) (*Seaquarium II*).  PETA was the plaintiff in that action.  *See id.*  On February 20, 2018, DCWT filed a motion for judgment on the pleadings, arguing that PETA's complaint failed to show the threat of "serious harm" required under the *Seaquarium II* ruling.  (Doc. 217.) Following DCWT's motion for judgment on the pleadings, PETA moved for leave to file a second amended complaint.  (Doc. 238.)  PETA stated that it sought amendment to "address information obtained" and to "harmonize the existing

[1] The transport incident was followed by voluminous discovery by PETA and a two-day evidentiary hearing about the events that took place from July 14-16, 2017. (Docs. 120, 171, 219-220.)

allegations . . . to conform with the Eleventh Circuit's recently-articulated 'threat of serious harm' standard." (*Id.* pp. 5, 2-3.) On June 6, 2018, the Court issued an order granting PETA leave to file an amended pleading and denying DCWT's motion for judgment on the pleadings as moot. (Doc. 254.) On June 7, 2018, PETA filed its Second Amended Complaint. (Doc. 256.) On June 15, 2018, DCWT moved the Court for a brief extension of time to respond to PETA's Second Amended Complaint. (Doc. 259.) This request was granted on June 19, 2018. (Doc. 261.)

## MEMORANDUM OF LAW

### I.   ARGUMENT

#### A.   Legal Standard

A complaint cannot survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it does not state a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all material allegations in a complaint must be accepted as true, to withstand a motion to dismiss, allegations "must be enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted). It is necessary for the plaintiff to demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. Plaintiffs are obligated "to provide the 'grounds' of [] 'entitlement to relief,'" a duty that "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A deficient complaint is appropriately dismissed with prejudice when a more carefully drafted

complaint would not state a claim for relief. *See Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1213 (11th Cir. 2013); *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 679 (11th Cir. 2014) ("The Appellants had multiple opportunities to amend the claim for injunctive relief, and we find it implausible that additional facts could yield a claim for which relief could be granted.").

Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a pleading where necessary parties have not been or cannot be joined. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011). Rule 12(b)(7) governs situations where complete relief cannot be granted in the absence of the necessary parties, or where a necessary party's absence may prejudice their interest, or the interests of the parties named in the suit. *See id.* When considering a motion to dismiss under Rule 12(b)(7), the court must decide whether an absent party is necessary, and if so, whether it is possible to join the absent party in the action or whether – if joinder is not feasible – the action should be dismissed. *See* Fed. R. Civ. Pro. 19(a); *BFI Waste Sys. of N. Am., Inc. v. Broward Cty., Fla.*, 209 F.R.D. 509, 514 (S.D. Fla. 2002).

## B.     PETA's Pre-Transfer Claims Fail as a Matter of Law

PETA's claims against DCWT for conduct that occurred prior to the July 2017 tiger transfer must fail. PETA lacks standing because it alleges only *de minimis* or speculative injuries. Further, the injuries alleged do not meet the standard for "harm" to state a claim under the ESA.

### i.  PETA Lacks Standing to Bring Claims Under the ESA

PETA's Second Amended Complaint must be dismissed as to the pre-transfer claims. PETA lacks standing to bring a claim under the ESA because it does not allege any concrete harms. Article III of the United States Constitution limits the jurisdiction of federal courts to

consideration of "cases" and "controversies." U.S. Const. Art. III § 2. To establish that a justiciable case or controversy exists, a plaintiff is required to allege "the triad of injury-in-fact, causation, and redressability." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). The requirements of standing bind both courts and the parties before them. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) ("[W]e are obliged to consider standing *sua sponte* even if the parties have not raised the issue.") Indeed, the question of standing is so integral that it may be raised at any time by parties or the Court. *See Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999).

The ESA contains a "citizen suit" provision that enables "any person" to "commence a civil suit on his own behalf [] to enjoin any person ... who is alleged to be in violation of any provision of this chapter." 16 U.S.C. § 1540(g). Although the citizen suit provision frames the issue of standing in a distinct light, it does not unbind the strictures of standing altogether. A plaintiff without an injury-in-fact lacks Article III standing, and therefore, a plaintiff is obligated to allege "a harm suffered by plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1003 (11th Cir. 2004); *see also NRDC v. Nat'l Park Serv.*, 250 F. Supp. 3d 1260, 1309 (M.D. Fla. 2017) (discussing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000). The injury-in-fact requirement is <u>not</u> automatically satisfied "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). There must be a concrete harm. *NRDC*, 250 F. Supp. 3d at 1309. Here, PETA alleges no concrete harm as a result of actions traceable to DCWT.

PETA's Second Amended Complaint was brought under the citizen suit provision of the ESA.  (Doc. 256 ¶ 1.) The pre-transfer claims raised in the Second Amended Complaint allege that DCWT committed injuries by, among other things:

- Cuddling tigers (Doc. 256 ¶ 50);
- Touching, hugging, and kissing tigers (*id.*);
- Pinching cubs' ears and noses (*id.* ¶ 58);
- Limiting the animals' ability to make choices (*id.* ¶ 46);
- Permitting tigers to swim with humans (*id.* ¶¶ 50-51);
- Subjecting tiger cubs to the <u>*risk*</u> of pneumonia or drowning (*id.* ¶ 53);
- Subjecting tigers to the <u>*risk*</u> of acute and chronic medical issues (*id.*);
- Subjecting tigers to the <u>*risk*</u> of injury or illness (*id.* ¶ 76);
- Subjecting tigers to the <u>*risk*</u> of "chronic stress" (*id.* ¶ 65); and
- Impairing tigers "normal behavioral patterns" (*id.* ¶ 67).

These alleged injuries are too conjectural to confer standing.  This case is directly comparable to *NRDC v. Nat'l Park Service. NDRC* concerned a challenge to the National Park Service's plan to conduct oil and gas surveys in a Florida preserve.  Among other claims, plaintiffs brought suit under the ESA for potentially adverse effects that surveying would have upon protected bat species. *NRDC*, 250 F. Supp. 3d at 1309. The harm alleged by plaintiffs consisted of a "purported interest in the Florida bonneted bat [that would] be imminently injured due to any of the agency's actions." *Id.* The Court found these injuries too speculative to meet the injury-in-fact requirements of Article III and determined that a concrete harm had not been pled. *Id.* at 1309-1310.

Here, as in *NDRC*, there is no allegation of perceptible or concrete harm. The injuries purportedly sustained by the tigers due to DCWT's actions are *de minimis*: holding, kissing, pinching, cuddling. (Doc. 256 ¶¶ 50, 56.) When PETA does attempt to allege a serious harm regarding its pre-transfer claims, it frames such harms in speculative language, stating only that DCWT's tigers *risk* injury – as it must, because DCWT's tigers have not drowned, contracted pneumonia, suffered from chronic stress, or displayed acute and chronic medical issues. (*Id.* ¶¶

7

53, 65, 76.)  Further, despite PETA's apparent belief to the contrary, "frustration" of PETA's

mission is not enough, in itself, to constitute a concrete injury-in-fact.  (*Id.* ¶¶ 96-97.)  *See Equal*

*Access for All, Inc. v. Hughes Resort, Inc.*, 2005 WL 2001740, at *7 (N.D. Fla. Aug. 10, 2005)

("[A]n organization does not possess standing simply because it has an ideological or abstract

social interest that is adversely affected by the challenged action.") (quoting *Clark v. Burger*

*King Corp.*, 255 F. Supp. 2d 334, 344 (D.N.J. 2003).  Like the bat enthusiasts in *NDRC*, here, a

purported interest in the welfare of a species is not enough. PETA's pre-transfer claims do not

allege an injury-in-fact, and therefore, PETA lacks standing to bring a claim under the ESA.

PETA's pre-transfer claims should accordingly be dismissed with prejudice.

> ### ii.   PETA Fails to Allege that DCWT's Actions Meet the Level of "Harm" Required for a "Take" Under *Seaquarium II*

Like its First Amended Complaint, PETA's Second Amended Complaint does not meet

the standard for "harm" articulated by the Eleventh Circuit in *Seaquarium II*.  When addressing

pre-transfer actions, the allegations in PETA's latest pleading are identical[2] to the allegations in

its prior complaint.  A red-lined copy of Plaintiff's Second Amended Complaint highlighting the

differences between the prior and current complaints are attached as **Exhibit A**.

The ESA makes it unlawful to "take" protected fish and wildlife species within the

United States.  16 U.S.C. § 1538(a)(1)(B). To "take" is defined as "to harass, harm, pursue, hunt,

shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id*. §

1532(19). In construing the definition of "take," the Eleventh Circuit concluded that "harm" and

---

[2]  With respect to the claims not involving the July 2017 transfer of tigers, the Second Amended Complaint is virtually identical to the First Amended Complaint. The key difference is that PETA has peppered conclusory phrases like "poses a threat of serious harm," through the Second Amended Complaint. (Doc. 256, ¶¶ 3, 30, 32, 36, 37, 45, 53, 65, 67, 76, 78, 79, 83, 84, 85; Ex. A.)

"harass" must be read to refer to conduct that poses a serious threat. *Seaquarium II*, 879 F.3d at 1147. The Eleventh Circuit expressly rejected the notion that "*de minimis* annoyances" to endangered animals could be actionable harassment, noting that: "any continual annoyance, trouble, or vexation could, for example, be actionable 'harass[ment].'" *Id*. at 1150. Instead, the Eleventh Circuit found that a more stringent standard was both warranted and in keeping with the ESA's goal of conservation as a "broad means aimed at preventing a specific end: extinction." *Id*. at 1148. The Eleventh Circuit concluded that "[u]nder the ESA, "harm" or "harass[ment]" is only actionable if it poses a threat of serious harm." *Id*. (emphasis added.)

*Seaquarium II* involved a dispute about the treatment and housing of an orca whale, Lolita. PETA brought suit against Miami Seaquarium, alleging that Miami Seaquarium had committed an unlawful "take," in violation of the ESA, by harming or harassing Lolita.  In support of this allegation, PETA provided a litany of allegations similar to those asserted against DCWT:

- Physical and psychological injury caused by Lolita's inability to engage in normal swimming and diving behaviors in her tank;
- Psychological injury attributable to the absence of a socially compatible companion;
- Rakes inflicted when Lolita's tank companions scraped her with their teeth while swimming past her;
- Stress caused by Lolita's tank companions' aggressive behavior;
- Stress caused by Lolita's tank companions' inappropriate sexual behavior;
- "Surfer's eye," a condition caused by exposure to UV radiation for which Lolita requires twice-daily eye drops;
- Blisters and wrinkles potentially caused by sun exposure;
- Treatment with medications not used on wild orca;
- General unhealthiness such as a mild kidney impairment, a high number of bacteria, past treatment for respiratory infections, and a potential recurring lung condition;
- Behavior such as listless floating, lying motionless near her tank's inflow valve, and pattern swimming;
- Significant wear in six teeth;
- A tooth that has been drilled multiple times;
- Captivity conditions likely to reduce Lolita's lifespan.

*Seaquarium II*, 879 F.3d at 1145 n.4. After reviewing these alleged injuries and interpreting the language of the ESA, the Eleventh Circuit concluded that the alleged injuries did not establish the existence of a "threat of serious harm" necessary for a "take" to occur under the ESA. The *de minimis* injuries that Miami Seaquarium allegedly inflicted on Lolita were not found to pose a threat of serious harm.

Here, PETA continues to insist that DCWT violated the ESA, but only alleges *de minimis* psychological or physical injuries to tigers. DCWT's purportedly violative pre-transfer conduct includes:

- Cuddling the tigers (Doc. 256 ¶ 50);
- Petting the tigers (*id.*);
- Picking up the tigers (*id.*);
- Holding the tigers (*id.*);
- Touching, hugging, and kissing the tigers (*id.*);
- Allowing guests to put toys in cubs' faces (*id.*);
- Allowing guests to grab cubs' faces (*id.*);
- Permitting tigers to swim with humans, sometimes multiple times a day (*id.* ¶¶ 50-51);
- Scheduling back-to-back encounters for tiger (*id.* ¶ 51);
- Subjecting tiger cubs to the <u>*risk*</u> of pneumonia or drowning (*id.* ¶ 53);
- Pinching cubs' ears and noses (*id.* ¶ 58);
- Forcefully flipping cubs on their side (*id.* ¶ 59);
- "[R]epeatedly pick[ing] up a cub and [holding] her in front of the guests (*id.* ¶ 61);
- Subjecting tigers to the <u>*risk*</u> of "chronic stress" (*id.* ¶ 65); and
- Impairing tigers "normal behavioral patterns" (*id.* ¶ 67).

These alleged harms fail to meet the "serious harm" standard set forth by the Eleventh Circuit in *Seaquarium II*. Nor do PETA's allegations further the purposes of the ESA. Cuddling of tigers will not cause extinction. The mere risk of pneumonia will not bring about an end to the species. Holding a tiger in front of guests will not erase tigers from existence. Indeed, PETA claims the potential harm caused by DCWT is about the risk of over-population – the opposite of extinction. Doc. 256, ¶¶ 97, 99, 101, 102.

10

Each and every pre-transfer "harm" articulated by PETA against DCWT is *de minimis*, from the allegation that plastic "enrichment items" in enclosures *could* cause harm to tigers (Doc. 256 ¶ 70) to the assertion that DCWT deprives animals of "the ability to make choices." (*Id*. ¶ 46.)  Notably, when PETA does address more serious pre-transfer threats than petting and pinching, such threats are uniformly speculative. For example, PETA does not plead that DCWT's tigers <u>actually suffered</u> from pneumonia, drowning, chronic stress, or infectious diseases.  (*Id*. ¶ 35.)  Instead, PETA alleges that DCWT has violated the ESA by exposing tigers to the *risk* of such events.  (*Id*.) These purported harms are far too attenuated to be actionable.

As the Eleventh Circuit noted, taken to extremes such as those PETA proposes, "it is not difficult to imagine that captivity, however humane, could often be challenged as continually annoying, troublesome, or vexatious . . ." *Seaquarium II*, 879 F.3d at 1150. None of PETA's pre-transfer allegations "indicate a serious threat," and indeed, none raise the right to relief "above the speculative level." *Speaker*, 623 F.3d at 1380.  PETA's claims remain deficient under the standards articulated in *Seaquarium II*.  PETA does not adequately allege that a "take" occurred or that DCWT's tigers were posed with a "threat of serious harm." Nor can amendment cure these deficiencies – PETA has amended its complaint twice but persists in failing to state a claim for relief.  (*See* Docs. 37, 256); *see Ziemba*, 256 F.3d at 1213; *Arthur*, 569 F. App'x at 679. Because it does not plead a claim upon which relief should be granted, PETA's Second Amended Complaint must be dismissed with prejudice.

###### C.     PETA's Claims Regarding the Transport Incident Fail as a Matter of Law

PETA's claims regarding the tiger transport in July 2017 must also fail.  PETA does not

allege facts tracing the complained-of conduct to DCWT and therefore does not sufficiently

allege a case or controversy.   Moreover, under *Seaquarium II*, an alleged ESA violation cannot

stand if other regulatory schemes are complied with.  Further, the Second Amended Complaint is

deficient for failing to name the necessary parties who actually transported the tigers.

###### i.   PETA Fails to Allege a Case or Controversy Regarding the July 2017 Transport Incident

PETA's newly-added allegations regarding the July 2017 transport of the tigers fail

because they do not present this Court with a justiciable case or controversy. To present a "case"

or "controversy" in accordance with Article III of the Constitution, a plaintiff must satisfy the

"irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560.  This requires: (1) an

injury-in-fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly

traceable to the defendant's challenged conduct; and (3) that the injury is likely to be redressed

by a favorable decision. *Id.* at 560-61 (emphasis added); *see also Dermer v. Miami-Dade Cnty.*,

599 F.3d 1217, 1220 (11th Cir. 2010).  Each element must be sufficiently alleged to establish

standing. *Lujan*, 504 U.S. at 560-61.  PETA's Second Amended Complaint is deficient because

PETA does not allege that the injury suffered by the tigers during transport is fairly traceable to

DCWT.

PETA has alleged that tigers were transported in the summer of 2017. (Doc. 256 ¶ 89.)

PETA has alleged that three tiger cubs were born and perished in transit. (*Id.*) However, an

allegation of injury is not sufficient in itself to provide standing.  *Apfel*, 194 F.3d at 1230. The

allegation that transport of the tigers "subjected the tigers to a serious risk of harm and caused

them to suffer psychological and physical injuries including extreme and prolonged distress,

dehydration, and . . . actual death" is not enough for standing because it does not allege what conduct DCWT allegedly undertook. (Doc. 256 ¶ 89.)

To allege a case or controversy, PETA must present "a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and <u>not</u> . . . the result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)). A bare allegation that a harm occurred does not create a justiciable case or controversy for this Court – more is needed. Before the court may reach the merits of the claim, PETA must also allege that the harm is fairly traceable to DCWT's conduct.  *See Allen v. Wright*, 468 U.S. 737, 751 (1984). PETA does not do so.

PETA does not (and cannot) allege that DCWT was responsible for the nature or conditions of transport.[3]   Nor does PETA allege that DCWT was responsible for the alleged "improper husbandry" of the animals.   (Doc. 256 ¶ 90).  Indeed, PETA has not even alleged that the conditions of transport were not in compliance with government regulations or that DCWT was responsible for such conditions or non-compliance.  The Second Amended Complaint must be dismissed, as no case or controversy is alleged.

PETA's deficient claim is comparable to the claims in *Alabama v. United States Army Corps of Eng'rs,* 441 F. Supp. 2d 1123, 1132 (N.D. Ala. 2006), where the district court found that the State of Florida lacked standing to bring an ESA claim. The court readily acknowledged that an injury had occurred: protected mussels in the Apalachicola River basin were dying due to alterations in the water flow of the basin. *Id*. However, the court also found that the plaintiff did

---

[3] When the tigers left DCWT's custody, they were in good condition and were loaded safely, as verified by the veterinarians who helped sedate and load the tigers. (*See* Doc. 224, p. 40; Miller Depo, Doc. 235-5 at p. 48:22-52:9; Nassivera Depo, Doc. 235-6 at p.101:4-8).

not demonstrate "but for" causation between the defendants' actions and the harm alleged, and therefore lacked standing to bring the claim. *Id.*; *see also Cold Mountain v. Garber,* 375 F.3d 884, 890 (9th Cir. 2004) (affirming summary judgment where plaintiffs failed to establish a causal link between the challenged activity and the alleged 'taking'); *Loggerhead Turtle v. County Council of Volusia County, Fla.,* 92 F. Supp. 2d 1296, 1308 (M.D. Fla. 2000) (plaintiff failed to establish that the challenged ordinance caused takings of baby sea turtles under the ESA: "The true violators, the persons responsible for illuminating the beaches, are not before this Court.").

Like the plaintiffs in *Alabama*, here, PETA does not adequately connect DCWT's alleged conduct and the alleged injuries suffered by the tigers in transport. *See Fla. Ass'n*, 194 F.3d at 1230-31 (allegations lacked a sufficient connection between complained-of behavior and complained-of harm, plaintiffs therefore lacked standing). PETA's claims related to the transport incident must therefore be dismissed because PETA fails to allege a justiciable case or controversy.

### ii.  PETA's Transport Claims Fail as a Matter of Law Because the Animal Welfare Act Governs the Conditions of Transport

Even if PETA had sufficiently alleged that DCWT were responsible for the harms incurred by the tigers during transport, PETA's claims regarding the transport would still fail as a matter of law.  Under *Seaquarium II*, when other regulations governing animal treatment apply and are complied with, there is no basis for a claim under the ESA.

In *Seaquarium II*, the Eleventh Circuit assessed the interaction between the ESA and the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 *et seq*. *Seaquarium II*, 879 F.3d at 1150.  The United States Department of Agriculture administers the AWA, and the regulations issued pursuant to the AWA.  (9 C.F.R. § 1.1 *et seq*.)  The AWA sets forth express standards for the

transportation and handling of animals, which include tigers used for exhibition purposes. 7

U.S.C. §§ 2143, 2132(g). The Court found that the AWA imposed upon Miami Seaquarium "a

set of detailed regulations governing the humane handling, care, treatment, and transportation of

marine mammals used for exhibition purposes." *Id*. The AWA – not the ESA – was found to

govern "many of the aspects of Lolita's activity," and the Court expressly declined to "nullify"

the AWA by interpreting "harm" and "harass" expansively:

> "If given their dictionary definitions, "harm" and "harass" would sweep so
> broadly as to deprive AWA compliance of practical significance . . . the
> interpretation PETA presses could nullify the AWA's regime of administrative
> enforcement." *Id*.

In other words, under *Seaquarium II* if conduct complies with AWA regulations, it

cannot simultaneously form the basis for an ESA violation. To hold otherwise would "nullify"

any "practical significance" of the AWA. *Id*. The absence or violation of other governing

schemes of administrative enforcement is necessary in order for the ESA to apply. *See id*.

(expressing desire to interpret the ESA in a manner that "avoid[s] abrogating" other "complex

regulatory scheme[s].").

Here, PETA has expressly admitted that the Animal Welfare Act governs the conditions of the

tiger transport in this matter. (Doc. 256 ¶ 89; *see also* K. Stearns Depo, Doc. 235-7, p. 228:11-

229:14 (confirming that the tigers were moved by a professional carrier licensed by the USDA);

J. Maldonado Depo, Doc. 235-4, p. 336:5-338:6 (same).) This is appropriate, as the AWA is

intended to "assure the humane treatment of animals during transportation in commerce." 7

U.S.C. § 2132; *see Animal Legal Def. Fund, Inc. v. Espy*, 29 F.3d 720, 722 (D.C. Cir. 1994)

("[T]he Act requires, inter alia, that the Secretary of Agriculture 'promulgate standards to govern

the humane handling, care, treatment, and transportation of animals by dealers, research

facilities, and exhibitors.'").

15

PETA cannot attempt to allege that the transport incident generated a "harm" under the ESA without alleging how the transport violated other regulatory schemes, including the AWA. Indeed, if the Second Amended Complaint's transport claims are allowed to stand, then any injury suffered by an endangered animal during transport would be a *per se* violation of the ESA, even if the requirements of all governing regulatory schemes were met.

Here, PETA has not (and cannot) allege that the transport did not comply with the AWA regulations governing the transport of tigers. PETA has likewise not alleged which AWA regulations were allegedly violated in the transport. Nor has PETA alleged that such non-compliance was caused by DCWT.

Because the AWA governs transport of the tigers, and because PETA has not alleged a violation of the AWA, the Second Amended Complaint must be dismissed for failure to state a claim under the ESA.

### iii.  PETA's Transport Claims Fail as a Matter of Law Because PETA Failed to Join Necessary Parties

The deficiencies in the Second Amended Complaint are all the more glaring because PETA has known since at least September 2017 that third parties were responsible for the transport incident. (J. Maldonado Depo, Doc. 235-4, p. 85:12-86:10; K. Stearns Depo, Doc. 235-7, p. 158:1-5; Doc. 236, pp. 19, 23.) The unique procedural posture of this case allowed PETA to conduct discovery about the transport incident before PETA filed its Second Amended Complaint.

PETA is aware that Greg Woody – a third party not before this Court – transported the tigers in July 2017. (J. Maldonado Depo, Doc. 235-4, p. 85:12-86:10; K. Stearns Depo, Doc. 235-7, p. 158:1-5; Doc. 236, pp. 19, 23, Ex. B.) PETA is also aware that Joe Maldonado – a third party not before this Court – arranged that transportation. (Doc. 236, pp. 19, 23.) PETA is

16

aware that the transport incident is the result of the actions of these third parties, and that the "harms" it alleges the tigers suffered are not fairly traceable to DCWT. *Lujan*, 504 U.S. at 560-61.  PETA has obtained evidence of Woody's and Maldonado's roles from multiple sources.

Nonetheless, PETA's amended pleading brings a claim against DCWT alone for the transport incident. (Doc. 256 ¶¶ 89-92); *see Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (chastising plaintiff for failure to supplement the record after defendants provided evidence suggesting that the actions they allegedly took did not contribute to the complained-of injury). This supports the conclusion that the claim is not substantiated by "any information obtained prior to filing." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 278 (4th Cir. 2006).  Because the Second Amended Complaint fails to join the parties actually responsible for arranging and transporting the tigers, it is deficient as a matter of law and must be dismissed under Federal Rule of Civil Procedure 12(b)(7).

Dismissal under Rule 12(b)(7) is a two-part inquiry. The Court must first determine whether an absent party is a "required" party under Federal Rule of Civil Procedure 19. *Molinos*, 633 F.3d at 1334. In making this determination, "'pragmatic concerns, especially the effect on the parties and the litigation,' control." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003).  Here, absent Maldonado's and Woody's presence, the factual and legal issues underlying the transport incident cannot be adequately resolved.  PETA's claims regarding transport of the tigers necessarily involve Maldonado's and Woody's interests, and disposition of this action in their absence will likely impair or impede their ability to protect their interests.  (Doc. 256 ¶¶ 89-92.)  Their absence would be a grave detriment to the litigation, and therefore, they are necessary parties.

17

Because Maldonado and Woody are necessary parties, the Court must turn to the second part of the Rule 12(b)(7) inquiry and ask whether the litigation may continue in their absence. *See Focus on the Family*, 344 F.3d at 1279.  Here, because PETA's transport claims cannot stand in the absence of Maldonado and Woody – the third parties who were responsible for the conditions of transport complained-of by PETA – PETA's Second Amended Complaint must be dismissed, or alternatively, this Court should order Maldonado and Woody to be joined pursuant to Federal Rule of Civil Procedure 19(a). *See* Fed. R. Civ. Pro. 19(a) ("If the [party to be joined if feasible] has not been ... joined, the court shall order that the person be made a party."). Because Woody and Maldonado are necessary parties, and because PETA did not join them, the Second Amended Complaint is deficient as a matter of law.

## CONCLUSION

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7), we respectfully request that the Court dismiss PETA's entire Second Amended Complaint with prejudice.  In the alternative, if the Court finds some allegations should be dismissed and others should not, we respectfully request that the Court specify which allegations are legally sufficient to survive the motion to dismiss, dismiss the others with prejudice, and permit PETA an opportunity to amend the complaint to narrow the pleadings to those particular allegations.

Dated:  July 23, 2018                           Respectfully Submitted,

                                                **DUNLAP BENNETT & LUDWIG PLLC**
                                                612 W. Bay Street
                                                Tampa, FL. 33606
                                                Phone:  (813) 360-1529
                                                Fax:      (813) 336-0832


                                                **/s/ Gus M. Centrone**_____
                                                **GUS M. CENTRONE, ESQ.**
                                                Florida Bar No. 30151
                                                e-mail: gcentrone@dbllawyers.com
                                                **BRIAN L. SHRADER, ESQ.**
                                                Florida Bar No. 57251
                                                e-mail: bshrader@dbllawyers.com
                                                *Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2018, the above document was electronically filed

with the Clerk of Court by using the Court's Electronic Case Filing System, and relied upon the

system's automatic service of this document to all counsel of record.



                                                **/s/ Gus M. Centrone**_____
                                                Attorney