UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

    Plaintiff,

v.                                                   Case No: 8:16-cv-2899-T-36AAS

DADE CITY'S WILD THINGS, INC.,
STEARNS ZOOLOGICAL RESCUE &
REHAB CENTER, INC., KATHRYN P.
STEARNS and RANDALL E. STEARNS,

    Defendants.
_____/

# **O R D E R**

This cause comes before the Court upon the Report and Recommendation ("R&R") filed by Magistrate Judge Amanda Arnold Sansone on October 10, 2018 (Doc. 269). In the R&R, the Magistrate Judge recommends that the Court deny Defendants' Motion to Dismiss PETA's Second Amended Complaint. Defendants timely filed an Objection to the R&R (Doc. 270), to which PETA responded (Doc. 271). Upon consideration of the R&R and the parties' filings, the Court will overrule Defendants' Objection, adopt, confirm, and approve in all respects the R&R, and deny Defendants' Motion to Dismiss.

    **I.    BACKGROUND**

The background of this case is set forth in detail in previous orders. Relevant to this Order, People for the Ethical Treatment of Animals, Inc. ("PETA"), an animal rights group, sued Dade City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., Kathryn P. Stearns, and Randall E. Stearns ("Defendants") for alleged violations of the Endangered Species Act, 16

U.S.C. § 1531, *et seq.* (the "ESA")[1] in connection with Defendants' operation of a family-run zoo in Dade City, Florida that houses tigers and tiger cubs. Doc. 1; Doc. 37; Doc. 256. Following protracted litigation, including Defendants' noncompliance with the Magistrate Judge's discovery orders and related ensuing events,[2] PETA filed a Motion for Leave to File Second Amended Complaint to add new factual allegations and to incorporate the legal standard under the ESA as refined by the Eleventh Circuit's opinion in *PETA v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018), *adhered to on denial of reh'g*, 905 F.3d 1307 (11th Cir. 2018). Doc. 238. The Court granted PETA's motion, and PETA filed its Second Amended Complaint. Doc. 254; Doc. 256.

Defendants filed a Motion to Dismiss PETA's Second Amended Complaint and PETA filed a response in opposition. Doc. 265; Doc. 268. Upon this Court's referral, the Magistrate Judge entered the R&R recommending that the Court deny Defendants' Motion to Dismiss. Doc. 266; Doc. 269. Defendants filed an Objection, and PETA responded. Doc. 270; Doc. 271.

## II. LEGAL STANDARD

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the Report and Recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). Upon review, the district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72. The

---

[1] The ESA prohibits the "take" of any endangered species. 16 U.S.C. § 1538(a)(1)(B). "Take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).
[2] *See* Doc. 230 for additional background.

district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III. DISCUSSION

#### A. Clearly Erroneous Review

The vast majority of Defendants' Objection is a verbatim reproduction of the Motion to Dismiss. *Compare* Doc. 265 *with* Doc. 270. But, "[w]here an objecting party . . . simply reiterates his original arguments, the court reviews the Report and Recommendation only for clear error." *Johnson v. Thomas*, No. 4:12-cv-1899-KOB-JEO, 2015 WL 1512088, at *3 (N.D. Ala. Mar. 31, 2015) (internal quotation marks omitted). *Accord Silvers v. Verbata, Inc.*, No. 5:17-cv-169-OC-34PRL, 2018 WL 1992204, at *1 (M.D. Fla. Apr. 27, 2018) ("If no specific objections to findings of facts are filed, the district court is not required to conduct a *de novo* review of those findings." (citing *Garvey v. Vaughn*, 993 F.2d 776, 779, n. 9 (11th Cir. 1993))); *Kharod v. City of Atlanta*,

No. 1:11-cv-01104-CC-AJB, 2014 WL 11517843, at *1 (N.D. Ga. Jan. 27, 2014) (stating that "a party who 'simply reiterates his original arguments' has not met the specificity requirement" of 28 U.S.C. § 636(b)(1)(C) (quoting *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009))). Thus, the Court reviews the R&R for clear error.

Upon review of the R&R and the parties' submissions, the Court cannot conclude that the R&R is clearly erroneous. Rather, the R&R thoroughly addresses each of Defendants' contentions in the Motion to Dismiss, explaining through detailed analysis why each of Defendants' arguments are without merit and why the Motion to Dismiss is subject to denial.

The R&R first addresses Defendants' contention that PETA lacks standing. Defendants argue PETA lacks standing because the alleged injuries are *de minimis*, speculative, and not caused by Defendants. The R&R explains that Defendants conflate PETA's alleged injury with the alleged injuries to the tigers. For purposes of standing, PETA's alleged injury is the frustration of its organizational mission and need to divert its resources due to Defendants' conduct. Moreover, the R&R explains, contrary to Defendants' contention, PETA *does* allege that Defendants are responsible for the injury; thus, PETA sufficiently alleges a casual connection between its injury and Defendants' conduct. Based on this, as well as additional discussion of each element of standing, the R&R concludes that PETA has standing to asserts its claims against Defendants. That conclusion is supported by law and the allegations in the Second Amended Complaint, and is not clearly erroneous.

Next, the R&R addresses Defendants' argument that PETA does not state a claim for ESA violations under the "threat of serious harm" standard as articulated in the Eleventh Circuit's decision in *Miami Seaquarium*. The Magistrate Judge provides a detailed discussion of *Miami Seaquarium*, including the district court's opinion, the Eleventh Circuit's decision affirming that

4

opinion, and the Eleventh Circuit's decision denying rehearing. Because *Miami Seaquarium* is relevant to the Court's analysis here and *infra*, the Court briefly summarizes the pertinent details of that case.

*Miami Seaquarium* involved PETA's ESA challenge concerning the conditions of a captive endangered killer whale, Lolita, at the Miami Seaquarium's facility. 189 F. Supp. 3d 1327 (S.D. Fla. 2016); 879 F.3d at 1144. The district court granted summary judgment in favor of Miami Seaquarium, concluding that PETA lacked evidence to show that the complained-of conditions "gravely threaten[ed] Lolita's existence." 189 F. Supp. 3d at 1354. The Eleventh Circuit affirmed, holding that "harm" or "harassment" under the ESA "is only actionable if it poses a threat of serious harm." 879 F.3d at 1150. In *Miami Seaquarium*, Lolita's injuries—physical and psychological injury caused by inability to engage in normal swimming and diving behaviors, psychological injury caused by the absence of a socially compatible companion, physical injury and stress caused by other cetaceans' behavior, an eye condition, blisters and wrinkles from sun exposure, antibiotic and other medical treatment, general unhealthiness such as kidney impairment, abnormal behavior such as listless floating, teeth wear, and conditions likely to reduce lifespan—failed to meet this standard when the undisputed evidence was considered. 879 F.3d at 1144, n. 2; 905 F.3d at 1309.

A petition for panel rehearing was filed, and the Eleventh Circuit issued an opinion denying rehearing. 905 F.3d at 1307-08. The opinion denying rehearing adhered to the Eleventh Circuit's previous decision and reiterated that "harm" or "harassment" under the ESA are not actionable "unless they meet a threshold level of severity—any actionable 'harm' must be serious and any actionable 'harass[ment]' must pose the threat of serious harm." *Id.* at 1310. The Eleventh Circuit further noted that although it had determined that Lolita's conditions did not rise to the level of a

5

threat of serious harm, the circumstances in *Miami Seaquarium* were "unique" and the outcome should not "t[ie] the hands of future courts in cases involving younger, healthier animals who may be faced with different circumstances." *Id.* at 1309. Moreover, the Eleventh Circuit declined to define the contours of the "threat of serious harm" standard, instead "allowing district courts the flexibility to apply that rule to future circumstances with which they are presented." *Id.*

As the R&R noted, an important distinction between *Miami Seaquarium* and this case is that here, the Court is asked to resolve a motion to dismiss. Unlike at the summary judgment stage, a district court reviewing a motion to dismiss assesses only the four corners of the complaint to determine whether the plaintiff properly states a claim. Thus, unlike in *Miami Seaquarium*, where the district court reviewed evidence concerning Lolita's injuries, including their cause and effect, the Court here only reviews the allegations in the Second Amended Complaint, assumed true, to assess whether PETA states a plausible claim.

As the R&R found, PETA's allegations of serious harm or the threat of serious harm are supported by examples. The most obvious example is PETA's allegation that Defendants caused the death of three tiger cubs. Doc. 256 at ¶¶ 89, 92. Additional allegations lend further support to PETA's assertion that the tigers were allegedly subject to serious harm or the threat of serious harm. *E.g.*, Doc. 256 at ¶¶ 30, 32, 34, 36, 45, 47, 53-54, 58-59, 71, 73-74, 90. Contrary to Defendants' argument, PETA's Second Amended Complaint is not merely conclusory, and the Magistrate Judge did not clearly err in recommending that Defendants' Motion to Dismiss be denied.

Next, the R&R rejects Defendants' contention that the Animal Welfare Act ("AWA") preempts PETA's ESA claims. The R&R's conclusion that the AWA does not preempt the ESA is supported by case law, including *Miami Seaquarium*, as well as allegations in the Second

Amended Complaint. The Court cannot conclude that the Magistrate Judge's determination in this respect is clearly erroneous.

Lastly, the R&R rejects Defendants' argument that PETA failed to join necessary or indispensable parties—Greg Woody ("Woody") and Joe Maldonado ("Maldonado")—under Federal Rule of Civil Procedure 19(a). Defendants argue that Woody and Maldonado are necessary parties because they arranged for the transport of the tigers, an event which is connected to PETA's allegations concerning the tiger cubs' deaths. But, as the R&R explains, neither Woody nor Maldonado are an impediment to the Court according relief to the existing parties; neither Woody nor Maldonado have claimed an interest in the action; Defendants did not identify what interests Woody or Maldonado would have in the action; and Defendants do not describe a situation whereby resolving this action would result in a risk of double, multiple, or inconsistent obligations. The Magistrate Judges' conclusion that PETA has not failed to join necessary or indispensable parties, based on the Federal Rules of Civil Procedure and Eleventh Circuit precedent, is not clearly erroneous.

### B. *De Novo* Review

The only discussion that Defendants provide in the Objection that is not a verbatim reproduction of the Motion to Dismiss concerns the Eleventh Circuit's opinion denying rehearing in *Miami Seaquarium*. That opinion was released after Defendants filed their Motion to Dismiss, but before the Magistrate Judge entered the R&R. 905 F.3d 1307; Doc. 269. Although the parties did not have the opportunity to brief the Eleventh Circuit's opinion denying rehearing, the Magistrate Judge considered the decision, as discussed *supra*, in making her recommendation. Doc. 269 at p. 11. According to Defendants, however, the Magistrate Judge misinterpreted or

ignored portions of the *Miami Seaquarium* decision denying rehearing, thus wrongly recommending that Defendants' Motion to Dismiss be denied.

Defendants insert their new discussion—approximately five paragraphs—between the arguments originally presented in the Motion to Dismiss. Although it is not clear that Defendants' few additional paragraphs should be considered specific objections given that they are made a part of Defendants' reiterated arguments, the Court will nonetheless construe them as objections, in the interest of thoroughness, and will review the corresponding portions of the R&R *de novo*.

### 1. PETA Plausibly Alleges ESA Violations

First, Defendants argue that the Magistrate Judge ignored the Eleventh Circuit's discussion of certain specific injuries in *Miami Seaquarium* that "plainly failed" to meet the "threat of serious harm" standard. 905 F.3d at 1309. Apparently, Defendants believe that the injuries to Lolita in *Miami Seaquarium* are comparable to the alleged injures to the tigers described in the Second Amended Complaint, and, for that reason, cannot survive Defendants' Motion to Dismiss. Defendants' argument references the following portion of the *Miami Seaquarium* opinion denying rehearing:

> In any event, some injuries noted by Appellants would, **given the record evidence,** plainly fail to meet the "threat of serious harm" standard. For example, Appellants cite the "rakes" inflicted when the Pacific white-sided dolphins with whom Lolita shares her tank scrape her with their teeth. But cetaceans, including orcas and dolphins, undisputedly rake each other in the wild. And Appellants' own expert rated Lolita's rakes as a three to four on a scale from one to ten, with ten being the most raked orca observed in the wild and one being the least raked orca observed in the wild. So, not only is Lolita suffering fewer rakes than the average wild orca, she is receiving care to make sure her rakes heal. **Given that evidence,** Lolita's rakes are not serious enough to illustrate that the conditions of her captivity amount to "harm" or "harass[ment]" in violation of the ESA.

*Id.* (emphasis added).

The Court rejects Defendants' comparison of the facts of *Miami Seaquarium* to the facts of this case. Importantly, the Eleventh Circuit in *Miami Seaquarium* did not determine that certain injuries could never rise to the level of a threat of serious harm;[3] rather, the Eleventh Circuit held that, *given the evidence*, Lolita's injuries did not rise to the level of a threat of serious harm. Again, as discussed in the R&R and *supra*, the procedural posture of this case is critical. In *Miami Seaquarium*, the district court, and the Eleventh Circuit on review, analyzed the available and undisputed evidence provided in connection with a summary judgment motion. Here, the Court does not review any available evidence because the focus of the Motion to Dismiss is on the four corners of the Second Amended Complaint.

PETA provides various examples of the ways in which it says Defendants' conduct created serious harm or a threat of serious harm to the tigers. Upon *de novo* review, the Court agrees with the Magistrate Judge that PETA's allegations are sufficient to withstand Defendants' Motion to Dismiss.

### 2. *The AWA Does Not Prevent PETA From Stating Plausible ESA Claims*

Defendants also argue that the R&R incorrectly determines that the AWA does not preempt the ESA. Defendants contend that pursuant to the Eleventh Circuit's discussion of the relationship between the AWA and ESA in *Miami Seaquarium*, a plaintiff cannot be allowed to sue where a defendant's conduct complies with AWA regulations.

Defendants misconstrue *Miami Seaquarium*'s discussion of the two laws. *Miami Seaquarium* noted only that the ESA *could* effectively nullify the AWA *if* "harass" and "harm" were interpreted more broadly than how the Eleventh Circuit interpreted the terms in that case—

---

[3] Even if the Eleventh Circuit had decided that the injuries described in *Miami Seaquarium* could never reach the level of a threat of serious harm, that would not affect the plausibility of the Second Amended Complaint, which alleges different injuries than those described in *Miami Seaquarium*.

9

*i.e.*, if the terms were given their dictionary definitions. 879 F.3d at 1150. But the Court does not interpret "harass" or "harm" any more broadly than the Eleventh Circuit in *Miami Seaquarium*. To the contrary, the Magistrate Judge and this Court have explicitly followed the Eleventh Circuit's directive that "harass" or "harm" are only actionable where such "poses a threat of serious harm." *Id.*

Finally, even if Defendants' assertion—that a plaintiff cannot sue a defendant who complies with the AWA—were correct, Defendants' argument would fail here. That is because PETA's Second Amended Complaint includes allegations that Defendants *did not* comply with the AWA. Doc. 256 at ¶¶ 40, 48, 67, 76, 86, 89. Thus, Defendants' final contention is meritless. Upon *de novo* review, the Court finds that PETA plausibly states a claim for ESA violations.

**Accordingly, it is ORDERED**:

1. Defendants' Objection to the Magistrate Judge's Report and Recommendation (Doc. 270) is **OVERRULED.**

2. The Report and Recommendation of the Magistrate Judge (Doc. 269) is **adopted, confirmed, and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

3. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 265) is **DENIED.**

**DONE AND ORDERED** in Tampa, Florida on January 17, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any