**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PEOPLE FOR THE ETHICAL**
**TREATMENT OF ANIMALS, INC.,**

     **Plaintiff,**

**v.**                                                      **Case No: 8:16-cv-2899-T-36AAS**

**DADE CITY'S WILD THINGS, INC.,**
**STEARNS ZOOLOGICAL RESCUE &**
**REHAB CENTER, INC. D/B/A DADE**
**CITY'S WILD THINGS, KATHRYN P.**
**STEARNS, AND RANDALL E. STERNS,**

     **Defendants.**

_____/

## AMENDED REPORT AND RECOMMENDATION

People for the Ethical Treatment of Animals, Inc. (PETA) requests the court impose sanctions on Dade City's Wild Things, Inc, Stearns Zoological Rescue & Rehab Center, Inc. d/b/a Dade City's Wild Things (collectively, Dade City's Wild Things), Kathryn Stearns, and Randall Stearns for violating the July 12, 2017 Order (Doc. 63) and July 14, 2017 Order (Doc. 69) (collectively, the July Discovery Orders), and for spoliation of evidence.[1]  (Doc. 76).  PETA also seeks an order to show cause why

---

[1] Throughout this amended report and recommendation, Mrs. Stearns, Randall Stearns, and Dade City's Wild Things will be referred to collectively as the defendants.  Otherwise, Mrs. Stearns, Randall Stearns, and Kenneth Stearns will be referenced individually by name, and collectively as "the Stearns."

1

Kathryn Stearns, Randall Stearns, and non-party Kenneth Stearns should not be held in civil and criminal contempt.  (Docs. 76, 97).

## I.    RELEVANT PROCEDURAL BACKGROUND

### A.    Procedural History Relevant to the July Discovery Orders

Mrs. Stearns and Randall Stearns (who is Mrs. Stearns and Kenneth Stearns' son) operate a zoo in Dade City, Florida, under the name of Dade City's Wild Things. (Doc. 38, ¶ 2).  Mrs. Stearns is the director and registered agent for the relevant corporate entity, Stearns Zoology Rescue and Rehab Center, Inc. d/b/a Dade City's Wild Things.  (Doc. 37-1).  Randall Stearns is the president and director of the relevant corporate entities.  (*Id.*).  PETA, an animal rights group, alleges the defendants violated the Endangered Species Act, 16 U.S.C. § 1538 (ESA), by prematurely separating tiger cubs from their mothers, forcing the cubs to swim with the public for profit, and inadequately housing and caring for the tigers.  (Doc. 37, ¶ 3).  The defendants answered PETA's complaint and brought counterclaims against PETA. (Doc. 38).

On June 7, 2017, PETA served the defendants' then-counsel, William Cook, with a request to conduct a site inspection at Dade City's Wild Things.  (Doc. 56-1). On June 30, 2017, PETA moved to compel entry upon land to conduct a site inspection of Dade City's Wild Things.[2]  (Doc. 56).  According to PETA's motion, Shiva—the sole

---

[2] The site inspection included: (1) observing the tiger cubs during public encounters, both on land and in the pool, (2) observing the tigers interact with their trainers, both

tiger cub used for "swim encounters" at that time—would become too large for swim encounters after July, so time was of the essence. (*Id.* at p. 2). The site inspection was originally scheduled to occur on July 11, 2017, but PETA agreed to reschedule the inspection for July 20, 2017, to not interfere with Dade City's Wild Things' "kids camp." (*Id.* at pp. 1–2). When pressed to confirm a date, the defendants refused to permit a site inspection without a court order. (*Id.* at p. 2). PETA's July 30th motion requested the court compel the defendants to permit PETA to conduct a site inspection at Dade City's Wild Things on July 20, 2017. (*Id.* at p. 3).

On July 3, 3017, Mr. Cook sought to withdraw from representing the defendants due to "irreconcilable differences." (Doc. 57, p. 1). The court held a hearing on PETA's motion to compel the site inspection and Mr. Cook's motion to withdraw. (Doc. 64). The court overruled defendants' objections to the site inspection and ordered the site inspection occur at Dade City's Wild Things during normal business hours on July 20, 2017. (Doc. 63, pp. 1–2). The court denied without prejudice Mr. Cook's motion to withdraw and instructed Mr. Cook to refile the motion after completion of the site inspection. (*Id* at p. 2).

---

on land and in the pool, (3) observing the tigers interact without trainer involvement, (4) observing the physical condition of the tigers, (5) observing the tigers during meal time, (6) observing the tigers when shifted to off-exhibit areas, (7) observing the tigers when their enclosures are being cleaned, (8) measuring the size of the enclosures where the tigers are held, (9) observing areas associated with maintenance of the facility pool, and (10) taking water samples from the pool where tiger swims occur. (Doc. 56-1).

On July 14, 2017, after receiving information that the Stearns were removing all the tigers from Dade City's Wild Things, PETA filed an emergency motion for an order preserving the tigers in their current state and location to ensure PETA would have access to the tigers during the July 20th site inspection. (Doc. 67). That same day, the court granted PETA's emergency motion and ordered the defendants to keep their "twenty-two tigers on [Dade City's Wild Things'] property and shall not transfer, transport, relocate or in any way harm its twenty-two tigers absent further order of the Court." (Doc. 69, p. 4). The order also stated that "transfer of the tigers [] would amount to a direct violation of the Court's July 12, 2017 Order mandating that the site inspection go forward on July 20, 2017." (*Id.* at p. 2). Given that the motion was granted on an emergency basis and so the court could consider the matter further with the benefit of the defendants' response, the court set a hearing on July 26, 2017. (*Id.*)

From July 14 through July 16, 2017, the Stearns relocated all their tigers, including Shiva, in direct violation of the court's order. The Stearns moved most of the tigers to Greater Wynnewood Exotic Animal Park (Wynnewood), in Wynnewood, Oklahoma. Following the tiger transfer, Mr. Cook renewed his motion to withdraw as counsel for the defendants. (Doc. 70). The court added the motion to the hearing on July 26, 2017. (Doc. 74).

On July 20, 2017, when PETA's site inspection team arrived at Dade City's Wild Things for the court ordered site inspection, the Stearns denied them access to

the facility.  PETA moved for sanctions against the defendants for failure to comply with the July Discovery Orders, including the July 12th order compelling and setting the site inspection at Dade City's Wild Things (Doc. 63) and the July 14th order prohibiting the removal of the tigers (Doc. 69).  (Doc. 76).

The parties appeared for a hearing on July 26, 2017.  (Doc. 78).  At the hearing, the court directed PETA to coordinate with its site inspection team to select a date for the site inspection.  (Doc. 81).  The court directed the United States Marshal Service to be present at the rescheduled site inspection to ensure compliance by the Stearns and for any necessary peace-keeping measures.  (*Id.*).  Mr. Cook's motion to withdraw was granted as to Mrs. Stearns and Randall Stearns but was denied without prejudice for Dade City's Wild Things, until after completion of the site inspection.  (*Id.*).

PETA's site inspection of Dade City's Wild Things, although without tigers, occurred on August 4, 2017.  (Doc. 83).  On August 10, 2017, Mr. Cook filed a third motion to withdraw as counsel.  (Doc. 90).  The court granted the motion and directed Dade City's Wild Things to obtain new counsel by August 25, 2017.  (Doc. 92).  On August 24, 2017, attorneys James A. Wardell and Chip Purcell appeared on behalf of the defendants.  (Docs. 93, 94).

On September 6, 2017, PETA moved the court for an order for Kenneth Stearns (Mrs. Stearns' husband and Randall Stearns' father) to show cause why he should not be held in contempt for aiding and abetting the defendants' violation of the July

Discovery Orders.[3]   (Doc. 97).   The court scheduled an evidentiary hearing for November 29, 2017.[4] (Doc. 120).

On October 26, 2017, PETA moved the court to compel the production of Mr. Cook's documents and to enforce a subpoena for Mr. Cook's testimony about the defendants' violation of the July Discovery Orders.   (Doc. 131).   The defendants objected to PETA obtaining any discovery from Mr. Cook, and argued their communications with him were protected by attorney-client privilege.   (Docs. 141, 142).   The court granted PETA's motion to compel and concluded the defendants waived their privilege for a limited timeframe when they placed documents and communications with Mr. Cook at issue by asserting his legal advice as their defense to violating the July Discovery Orders.   (Doc. 145).

On November 14, 2017, the defendants objected to the order requiring limited discovery from Mr. Cook.   (Doc. 154).   The court stayed the evidentiary hearing and Mr. Cook's discovery obligations pending resolution of the defendants' objections. (Doc. 159).   On January 10, 2018, the court overruled the defendants' objections and required Mr. Cook to produce the communications and testify to what occurred during the time of the violations.   (Doc. 170).

---

[3] PETA also moved for an order for Wynnewood to show cause why it should not be held in contempt for aiding and abetting the defendants' violation of the July Discovery Orders (Doc. 95), but later withdrew the motion.  (Doc. 152).

[4] This was the earliest date counsel, the parties, and the non-parties collectively were available for the hearing.  (*See* Doc. 120, p. 2).

On January 12, 2018, attorneys Wardell and Purcell moved to withdraw as counsel for the defendants and Kenneth Stearns, citing "irreconcilable differences." (Doc. 173, p. 1). The court set a hearing on the motion for January 24, 2018 and ordered the defendants and Kenneth Stearns to appear at the hearing. (Doc. 178). The defendants and Kenneth Stearns did not appear as ordered. (Doc. 182). The court telephoned the Stearns and directed them to be physically present at a continued hearing the next day, January 25, 2018. (Doc. 181).

On January 25, 2018, counsel for the parties, the defendants, and Kenneth Stearns appeared for the continued hearing. (Doc. 184). The court granted attorneys Wardell and Purcell's motion to withdraw and gave corporate defendant Stearns Zoology Rescue and Rehab Center, Inc. d/b/a Dade City's Wild Things until February 9, 2018 to obtain new counsel. (Doc. 185, pp. 1–2). The court also ordered that the defendants provide various outstanding discovery responses, including documents missing from their initial document production.[5] (*Id*. at pp. 23).

The court rescheduled the evidentiary hearing on PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) and PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns

---

[5] In all, PETA claimed it received only thirty-three pages of documents from the defendants, and most of the production was unrelated to this action. (*See* Doc. 188, pp. 40–41). Notably, the defendants' production did not include the requested and discoverable emails and text messages presented at the evidentiary hearing and received from other sources. (*See* Doc. 163-1).

Should Not Be Held in Contempt (Doc. 97) for February 21 and 22, 2018.  (Doc. 185, p. 4).  On February 9, 2018, the defendants requested—and were permitted—an extension of time to obtain counsel, until February 14, 2018.  (Docs. 197, 198).  On February 14, 2018, attorneys Gus Centrone and Brian Shrader appeared on behalf of Dade City's Wild Things and the Stearns.  (Docs. 201, 202).  On February 20, 2018, one day before the evidentiary hearing, the defendants moved for judgment on the pleadings.  (Doc. 217).

An evidentiary hearing on PETA's motions for sanctions and for an order to show cause was held on February 21 and 22, 2018.  (Docs. 219, 220).  During the two-day hearing, the undersigned heard testimony from witnesses and received evidence related to the discovery violations.  (Docs. 219, 220).

A March 2, 2018 report and recommendation (March 2018 R&R) recommended the court enter default judgment against the defendants and dismiss the defendants' counterclaims against PETA.  (Doc. 230, p. 29).  The March 2018 R&R also recommended the court award PETA its reasonable attorney's fees and expenses incurred as a result of the defendants' failure to comply with the July Discovery Orders.  (*Id.*).  The March 2018 R&R recommended the court not impose contempt proceedings on the Stearns.  (*Id.* at pp. 28-29, 30).  The defendants objected to the March 2018 R&R (Doc. 236) and PETA's responded to the objections (Doc. 245).

### B.      PETA's Second Amended Complaint

On March 19, 2018, PETA moved to file a second amended complaint to include new evidence obtained after filing the amended complaint and following the clarified standard stated in *PETA, Inc. v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018) (holding that the harm or harassment of an endangered species is only actionable as a take in violation of the ESA if it poses a threat of serious harm), denial of rehearing, No. 16-14814, 2018 WL 4903081 (11th Cir. Oct. 9, 2018)).  (Doc. 238).  PETA also requested a stay of all case management deadlines pending a ruling on the motions for sanctions.  (Doc. 253).

On March 30, 2018, the court deferred consideration of the March 2018 R&R and deferred ruling on PETA's motions for sanctions, pending resolution of the defendants' motion for judgment on the pleadings and PETA's motion for leave to file a second amended complaint.  (Doc. 249).

On June 6, 2018, the court granted PETA's request to file a second amended complaint and denied the defendants' motion for judgment on the pleading as moot. (Doc. 254).  The court also granted a stay of all case management deadlines pending resolution of PETA's motions for sanctions and for an order to show cause.  (Doc. 257).

The next day, PETA filed its second amended complaint.  (Doc. 256).  The court directed the parties to submit separate memoranda addressing the impact of PETA's second amended complaint on the findings and conclusions in the March 2018 R&R. (Doc. 258).  The parties timely filed their respective memoranda.  (Docs. 263, 264).

9

On July 23, 2018, the defendants moved to dismiss PETA's second amended complaint on grounds that PETA lacked standing, failed to state a claim under the ESA, brought preempted claims, and failed to join necessary parties. (Doc. 265). PETA opposed the defendants' motion. (Doc. 268). The defendants' motion to dismiss was referred for a report and recommendation on the appropriate disposition. (Doc. 266).

An October 10, 2018 report and recommendation (October 2018 R&R) recommended concluding that PETA's second amended complaint adequately alleged standing, stated an ESA claim that is not preempted by the AWA, and did not fail to join necessary parties. (Doc. 269). The October 2018 R&R thus recommended the defendants' motion to dismiss PETA's second amended complaint be denied. (*Id.*). The defendants objected to the October 2018 R&R and PETA responded to the objections. (Docs. 270, 271). The court overruled the defendants' objections and adopted the report and recommendation in all respects. (Doc. 272).

## C.    Defendants' Answer and Counterclaims

On January 1, 2019, the defendants answered PETA's second amended complaint and raised three new counterclaims. (Doc. 273). The defendants originally brought counterclaims for tortious interference with business and contractual relationships, conversion, and fraud. (Doc. 17). The original counterclaims centered on allegations that PETA caused one of its employees to become an employee of Dade

City's Wild Things and collect internal information, video footage, and photography for PETA's use in bringing its action.  (*Id.* at pp. 14–17).

In amending its counterclaims, Dade City's Wild Things repackaged its claims as fraud in the inducement; fraud; constructive fraud; unlawful recording of conversations in violation of section 934.10, Florida Statutes; tortious interference with business and contractual relationships; and conversion.  (Doc. 273, p. 17–22). Though the causes of action have expanded in number, they have not expanded in the scope of PETA's conduct for which it seeks damages.  The counterclaims continue to center on the conduct of PETA's employee hired by Dade City's Wild Things.

PETA sought to strike the defendants' amended counterclaims and demand for jury trial because they were not timely raised.  (Doc. 274).  The court denied PETA's motion to strike concluding it was appropriate for the defendants to respond anew to PETA's second amended complaint.  (Doc. 281).

The pleadings are closed and PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) and PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) are ripe for a renewed review.

### D.    The Effect of PETA's Second Amended Complaint and Defendants' Answer and Counterclaims on the March 2018 R&R

PETA's second amended complaint includes four paragraphs drawn from the evidence presented during the February 2018 evidentiary hearing.  (*See* Doc. 256, ¶¶

89–92).  PETA's second amended complaint also addresses the Eleventh Circuit's recently articulated "threat of serious harm" standard, applicable to captive animals protected under the ESA.  *See Seaquarium*, 879 F.3d at 1150.  Under that standard, the court assesses the degree of harm or harassment a captive animal suffers to determine whether the animal has been subjected to a "threat of serious harm" more than "de minimis" and which falls below industry standards of care.  *Id.*  PETA's second amended complaint clarified the descriptions of the treatment of the tigers to allege that the defendants' conduct "seriously harmed" or posed a threat of serious harm to the tigers.  (*See* Doc. 256, ¶¶ 3, 30, 32, 34, 36, 37, 40, 45, 49, 53, 65, 67, 68, 71, 73, 76, 78–79, 83–85, 87).

Pleadings may be amended both before and after trial to conform to the evidence.  *See* Fed. R. Civ. P. 15(b), *see also Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 757–58 (11th Cir. 1985) (holding a plaintiff can "amend its complaint at the close of trial to conform to the evidence").  When recommending sanctions in the March 2018 R&R, the undersigned considered the facts underlying the allegations subsequently raised in PETA's second amended complaint.  PETA's second amended complaint does not alter the defendants' misconduct or excuse them from sanctions simply because PETA amended its complaint to conform to the evidence and the law.  *See, e.g., Willy v. Coastal Corp.*, 503 U.S. 131, 137–39 (1992) (holding sanctions "designed to punish a party who has already violated the court's rules" may be imposed even when later finds it lacks jurisdiction).

12

PETA's second amended complaint tracks the evidence presented at the evidentiary hearing and was thoroughly considered in assessing the appropriate sanctions for the defendants' violation of the July Discovery Orders and spoliation of evidence.

## II.    RELEVANT FACTUAL BACKGROUND

As of **June 26, 2017**, Dade City's Wild Things owned twenty-four tigers, including tiger cub Shiva.  At 1:56 p.m., Mr. Cook emailed Mrs. Stearns and attached PETA's formal Rule 34(a)(2), Fed. R. Civ. P., request to conduct a site inspection of Dade City's Wild Things.  (Pl. Exh. 49, Cook Depo. at Exh. 1).  Mrs. Stearns testified that she receives emails sent to either her business or personal email addresses through her iPhone (#813-717-2555), which she carries with her.  (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 43–45).  Mr. Cook testified that it was his practice to send all email correspondence to Mrs. Stearns at both of her email addresses.  (Pl. Exh. 49, Cook Depo. at p. 12).  Mr. Cook understood that Mrs. Stearns shared all case related information with her son, Randall Stearns.  (Pl. Exh. 49, Cook Depo. at p. 15).

After receiving notice that PETA requested a site inspection of Dade City's Wild Things, Mrs. Stearns immediately called Joseph Maldonado a/k/a Joe Schreibvogel, the entertainment and marketing director for Wynnewood, and asked

him if Wynnewood would take eight of Dade City's Wild Things' tigers.[6]  (Pl. Exh. 4, Maldonado Depo. at pp. 78–79).

At 7:20 p.m., Mrs. Stearns sent a text message to Susan Nassivera, a volunteer with Endangered Animal Rescue Sanctuary (EARS) in Citra, Florida, and asked her if she knew anyone willing to take any of Dade City's Wild Things' tigers.  (Pl. Exh. 6, Nassivera Depo. at Exh. 2).  As the reason for relocating the tigers, Mrs. Stearns text messaged to Ms. Nassivera: "Trying to lower tiger inventory due to peta lawsuit. … They might get [to come] tour my zoo.  If so trying to limit what [they] see."  (*Id.* at pp. 1–3).  Ms. Nassivera testified that Mrs. Stearns "was placing tigers because PETA was coming in for an inspection" and there would be less to see.  (Pl. Exh. 6, Nassivera Depo. at pp. 36, 61).  This was also confirmed in various Facebook video posts where Kenneth Stearns stated the tigers were relocated so they could not be inspected by PETA.[7]  (Pl. Exhs. 38, 39).

The next day, on **June 27, 2017**, Mrs. Stearns returned Mr. Cook's email notifying her of the site inspection, through her iPhone, with a list of objections to the site inspection.  (Pl. Exh. 50, Mrs. Stearns' Depo, Exh 13).  Mrs. Stearns' email does

---

[6] Mrs. Stearns testified that Mr. Maldonado reached out to her to ask for tigers.  (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 56).  This testimony is not credible and directly contrary to Mr. Maldonado's testimony that Wynnewood already had more than 200 hundred tigers and it was Mrs. Stearns who reached out to him for placement of Dade City's Wild Things' tigers.  (Pl. Exh. 4, Maldonado Depo. at p. 24).

[7] For example, Kenneth Stearns stated, "now you see why I moved those tigers," and "with no tigers, how they gonna prove tiger abuse?"  (Pl. Exh. 38-3, 39).

14

not mention her plans to relocate the tigers.  That same day, after a hearing before United Stated District Judge Charlene E. Honeywell on PETA's motion to dismiss the defendants' counterclaims, Mr. Cook met with Mrs. Stearns at the courthouse to discuss PETA's site inspection request.  (Pl. Exh. 49, Cook Depo. at pp. 19–20).  During this discussion, Mrs. Stearns said nothing to Mr. Cook about her ongoing efforts to relocate the tigers before the site inspection.  (*Id*. at p. 22).

On **June 30, 2017**, Mrs. Stearns emailed Mr. Cook with more objections to PETA's request for site inspection, and other issues.  (Pl. Ex. 50, Mrs. Stearns Depo. at Ex. 25).  Mrs. Stearns also stated she needed "time to discuss [the site inspection request] clearly with Randy (Randall Stearns) and get his thoughts and opinions." (*Id*.).  Again, Mrs. Stearns never mentioned her pending plans to relocate the tigers at Dade City's Wild Things.

On **July 9, 2017**, Robert Engesser, on behalf of Dade City's Wild Things, contacted Deborah Warrick, the founder, and owner of St. Augustine Wild Reserve, and inquired if Ms. Warrick was interested in accepting tigers from Dade City's Wild Things.  (Doc. 76, Exh. 3, D. Warrick Decl. at ¶ 4).  At 11:14 a.m., Mrs. Stearns sent a text message to Ms. Nassivera asking, "Any luck on the tigers[?]"  (Pl. Exh. 6, Nassivera Depo. at Ex. 2, p. 4).

On **July 12, 2017**, the court held a hearing on PETA's motion to compel site inspection.  (Doc. 62).  Mrs. Stearns, who was physically present at the hearing, misled the undersigned to believe there were no time constraints for the site

inspection because the tiger encounters would not be ending in the near term. (Doc. 64, pp. 13–14). Mrs. Stearns said nothing about her contemporaneous efforts and plans to remove all the tigers from Dade City's Wild Things. Mrs. Stearns testified she did not tell the undersigned about her plans because it "didn't come up," so there was "never a reason to tell the court." (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 86–88, 181). That same day, at 4:12 p.m., the court granted PETA's motion to compel and ordered the site inspection (which included the inspection and observation of tigers) occur during normal business hours on July 20, 2017. (Doc. 63).

Immediately following the hearing,[8] Mrs. Stearns called Randall Stearns and Kenneth Stearns. (Pl. Exh. 55, Stearns' Telephone Records at p. 7). Mrs. Stearns also called Mr. Maldonado and asked him if Wynnewood would take twenty-two tigers. (*Id.*; Pl. Exh. 4, Maldonado Depo. at p. 215). Mrs. Stearns told Mr. Maldonado she had to "get [the tigers] out by the weekend." (*Id.* at p. 293). This is confirmed in a text message from Mr. Maldonado to Jeff Lowe, the CEO of Wynnewood, where Mr. Maldonado asked Mr. Lowe if Wynnewood would take Dade City's Wild Things' tigers because "PETA won in court today." (Pl. Exh. 4, Maldonado Depo. at Exh. 3). Mr. Lowe agreed.[9] (*Id.*).

---

[8] The hearing began at 1:59 p.m. and concluded at 2:55 p.m. (Doc. 62).

[9] Wynnewood solicited donations through gofundme.com to support the incoming tigers from a "private zoo [] forced to give up 22 tigers." (Pl. Exh. 4, Maldonado Depo. at Exh. 6).

16

Mrs. Stearns also called Mr. Cook and asked him what would happen "hypothetically" if she removed all the tigers from Dade City's Wild Things. (Pl. Exh. 49, Cook Depo. at p. 56).  Mr. Cook informed Mrs. Stearns that, "PETA likely would take the position that the tigers are evidence in the case and [] they would probably file a motion for sanctions if that happened." (*Id.* at pp. 56–57).  Mr. Cook testified he did not think Mrs. Stearns would move the tigers. (*Id.* at pp. 22–23).  And during this conversation, Mrs. Stearns told Mr. Cook that Shiva was getting too big for public swim encounters. (*Id.* at pp. 63–64).  Yet when the undersigned asked Mrs. Stearns earlier that afternoon if swim encounters would be ending soon, Mrs. Stearns stated, "no, ma'am." (Doc. 64, p. 13).

The next day, **July 13, 2017**, Mrs. Stearns transferred ownership of twenty-three tigers from the corporate entity to her husband Kenneth Stearns.[10] (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 4).  Ms. Nassivera traveled to Dade City's Wild Things to pick up two white tigers to transport to EARS. (Pl. Exh. 6, Nassivera Depo. at p. 35).  Randall Stearns helped Ms. Nassivera load the tigers. (*Id.* at p. 57).  Kenneth Stearns followed Ms. Nassivera back to EARS to help unload the tigers. (*Id.* at Exh. 2, p. 8).  During this time, Kenneth Stearns told Ms. Nassivera he and Mrs. Stearns are "ready to go to jail" and "they aren't backing down." (*Id.* at p. 14).  Ms. Nassivera

---

[10] This transfer may have occurred on July 12th.  The numerical date on the transfer document resembles both a number twelve and thirteen. (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 4).

sent a text message to Gail Bowen, the manager of EARS, and told her she did not

see Mrs. Stearns while she was at Dade City's Wild Things because "they are keeping

close to the vest … so [we] won't have to lie if asked." (*Id.* at pp. 13–14). When

delivering the two tigers to EARS, Kenneth Stearns told Ms. Bowen he may need to

bring more tigers to EARS because PETA was going to inspect Dade City's Wild

Things. (Pl. Exh. 1, Bowen Depo. at pp. 49–50).

> At 12:40 p.m., Mrs. Stearns sent the following email to Ms. Warrick:
>
> Calling to discuss the placement of a few tigers – I am shipping out and
> wanted to see which tigers you want so that I can keep those for you –
> please let me know which ones and then we can discuss a delivery date
> as well – please call me asap . . . I need to have this confirmed today if
> at all possible.

(Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 32). Mrs. Stearns also contacted veterinarian

Dawn Miller, DVM, and told her the Stearns had "lost the case with PETA" and "the

judge ordered that the tigers be moved [from Dade City's Wild Things] by Tuesday

[July 18]." (Pl. Exh. 5, Miller Depo. at pp. 49, 51). Mrs. Stearns asked Dr. Miller to

inspect the tigers for transport to Wynnewood. (*Id.* at 51). At 1:40 p.m., Mrs. Stearns

emailed Dr. Miller with the list of tigers for Dr. Miller to inspect. (Pl. Exh. 5, Miller

Depo. at Ex. 7).

At 4:31 p.m., Mr. Cook emailed Mrs. Stearns and advised her he received notice

from PETA that the Stearns were trying to relocate their tigers and warned Mrs.

Stearns that moving the tigers would violate the court's order, subjecting the Stearns

to sanctions for disposing of evidence. (Pl. Exh. 49, Cook Depo. at Exh. 12). At 9:37

18

p.m., Mrs. Stearns followed up with Ms. Warrick by email to ask if she would take two male tigers.[11] (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 32).

The next day, **July 14, 2017**, Mrs. Stearns transferred tiger cub Shiva (the only tiger cub being used for the public swim encounters) to Anne Kelly at Hernando Primate Sanctuary in Brooksville, Florida. (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 59). At 7:31 a.m., Mrs. Stearns sent a text message to Ms. Nassivera telling her the paperwork for the white tigers delivered to EARS the day before should be put in Kenneth Stearns' name. (Pl. Exh. 6, Nassivera Depo. at Exh. 2, p. 4).

Meanwhile, Dr. Miller attempted to travel to Dade City's Wild Things to inspect tigers for transport but was delayed by traffic for three hours because of an accident on the highway. (Pl. Exh. 5, Miller Depo. at p. 50). Dr. Miller testified that she became exhausted from the heat during the delay and had to return home. (*Id.* at p. 61).

Mrs. Stearns contacted veterinarian David Murphy, DVM, and told him it was an "emergency" and asked him to assist in the sedation and loading of Dade City's Wild Things' tigers. (Doc. 224, February 21, 2017 Hearing Transcript at p. 31). Dr. Murphy testified Mrs. Stearns told him it was urgent because she was "under a court

---

[11] Despite Mrs. Stearns having personally reached out to Ms. Warrick on at least two occasions asking whether she would take any tigers, Mrs. Stearns testified that it was Ms. Warrick who text messaged her about "wanting the tigers." (Pl. Exh. 50, Mrs. Stearns Depo. at p. 193-98; Exh. 32). Ultimately, Ms. Warrick received no tigers from Dade City's Wild Things. (Doc. 76, Exh. 3, D. Warrick Decl. at ¶¶ 11–12).

19

order" to move the tigers by Tuesday, July 18.  (*Id.*).  This is verified in Dr. Murphy's clinical notes.  (Pl. Exh. 31).

Mrs. Stearns testified she told neither Dr. Murphy nor Dr. Miller that she was under a court order to remove the tigers.  (Pl. Exh. 50, Mrs. Stearns Depo. at pp. 230, 232).  Mrs. Stearns' testimony is not credible, considering both Dr. Miller and Dr. Murphy testified that they had not spoken to one another and both testified Mrs. Stearns told them she was under a court order to remove the tigers.  (Pl. Exh. 5, Miller Depo. at p. 92; Doc. 224, February 21, 2017 Hearing Transcript at p. 31).

At about 1:00 p.m., on July 14, 2017, Dr. Murphy arrived at Dade City's Wild Things, and Randall Stearns greeted him at the gate and let him onto the property. (Doc. 224, February 21, 2017 Hearing Transcript at pp. 33–34).  Mrs. Stearns and Kenneth Stearns were also there.  (*Id.* at p. 34).  Mrs. Stearns testified that she was "in bed with pain pills and sick" from July 14th to July 16th, but Dr. Murphy stated Mrs. Stearns was up walking around and did not appear sick.  (Pl. Exh. 50, Mrs. Stearns Depo. at p. 185; *Id.* at p. 35).  In addition, Mrs. Stearns testified the tigers were removed because of a tornado that went through and "wipe[d] out half the zoo." (Pl. Exh. 50, Mrs. Stearns Depo. at p. 53).  Yet Dr. Murphy testified he saw no damage and the enclosures appeared to be in good working order.  (February 21, 2017 Hearing Transcript at pp. 40–41).

Dr. Murphy testified that the tigers were loaded into an aluminum double-decker trailer, meant for transporting cattle or hoof stock, which was "potentially

20

dangerous" for transporting tigers. (*Id.* at pp. 38–40).  Dr. Murphy stated that he had assisted in sedating and loading tigers twenty-five to fifty times before but had never seen tigers transported in that fashion.  (*Id.* at p. 38).  The trailer's openings were large enough for the tigers to stick their paws out.  (*Id.* at p. 40).  Also, there were no water receptacles on the trailer.   (*Id.*).   Dr. Murphy expressed his concerns to Kenneth Stearns, who told Dr. Murphy he was "comfortable with the procedure." (*Id.* at pp. 39–40).  Dr. Murphy's concerns and Kenneth Stearns' reaction were referenced in Dr. Murphy's clinical notes.  (Pl. Exh. 31).

At 1:14 p.m., Mr. Cook emailed Mrs. Stearns and advised her that PETA moved to prohibit the relocation of the tigers from Dade City's Wild Things and, if granted, the Stearns would violate a court order.  (Pl. Exh. 49, Cook Depo. at Exh. 12).   At 4:46 p.m., the court granted PETA's motion and prohibited the relocation of the tigers. (Doc. 69).  At 5:43 p.m., Mr. Cook emailed Mrs. Stearns and advised her that PETA's motion was granted, and she was prohibited from moving the tigers.  (Pl. Exh. 49, Cook Depo., Exh. 15).  Dr. Murphy, who was not informed of the order, continued with the sedation and loading of the tigers until after 9:00 p.m.  (Doc. 224, February 21, 2017 Hearing Transcript at p. 42).

The next day, on **July 15, 2017**, at 6:25 a.m., Mrs. Stearns sent a text message to Dr. Murphy requesting his estimated time of arrival.  (Pl. Exh. 50, Mrs. Stearns Depo. at Exh. 36).  At about 7:00 a.m., Dr. Murphy arrived at Dade City's Wild Things

21

and finished the tiger sedation and loading.[12]  (Doc. 224, February 21, 2017 Hearing Transcript at p. 42).

At around 4:00 p.m., Kenneth Stearns arrived at EARS with twenty-one tigers from Dade City's Wild Things.  (Pl. Exh. 6, Nassivera Depo. at pp. 42, 45).  Ms. Bowen testified that the tigers appeared to be hot and there were no water receptacles in the trailer.  (Id. at pp. 55–56).  Ms. Bowen asked two of her employees to spray water into the trailer.  (*Id.* at 55).

Kenneth Stearns delivered two more tigers to EARS but did not have time to unload them because he was in a hurry, so Kenneth Stearns left the two tigers in a trailer to unload the following day.  (Pl. Exh. 1, Bowen Depo. at 59).  Kenneth Stearns instructed Ms. Bowen to list himself as the donor on the transfer paperwork.  (*Id.* at p. 41).  Kenneth Stearns took the remaining nineteen tigers to a parking lot of a Gainesville shopping center for Dr. Miller to examine and issue the health certificates needed to leave the state of Florida.  (Pl. Exh. 5, Miller Depo. at p. 25).

On **July 16, 2017**, at 9:30 a.m., Mrs. Stearns sent a text message to Ms. Nassivera, advising her that Kenneth Stearns was on his way to EARS to help unload

---

[12] On September 23, 2017, Mrs. Stearns sent Dr. Murphy a text message asking him "who mentioned I had court order to move the tigers."  (Pl. Exh. 33).  Dr. Murphy testified that he laughed when he received Mrs. Stearns' text message because "she knows why we were moving those tigers, because she told me that she was under a court order to move those tigers by Tuesday [July 18], and so that's the only reason, you know, that I jumped in there and helped like that."  (Doc. 224, February 21, 2017 Hearing Transcript at p. 48).

22

the two tigers he left there the day before.  (Pl. Exh. 50, Mrs. Stearns' Depo. at Exh. 35, p. 5).  At 12:32 p.m., Mrs. Stearns sent another text message to Ms. Nassivera advising her that Kenneth Stearns was five minutes away.  (*Id.* at p. 6).

At around 5:00 p.m., and after traveling about 12,000 miles for eighteen hours in the summer heat, the aluminum trailer carrying nineteen tigers arrived at Wynnewood.[13]  (Pl. Exh. 4, Maldonado Depo.at p. 94; Exh. 10).  The tigers were in "bad shape" upon arrival.  (Pl. Exh. 4, Maldonado Depo. at p. 308).  The tigers suffered from open sores, infected toenails, and fungal infections.  (*Id.* at p. 264).  Sadly, one pregnant female tiger delivered three cubs during the trip and all three cubs died.[14] (*Id.* at p. 154).

---

[13] Mrs. Stearns testified Mr. Maldonado arranged the transportation.  (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 115).  This testimony is not credible as Mr. Maldonado credibly testified Mrs. Stearns arranged the transportation, which he confirmed in a text message to Mr. Lowe.  (Pl. Exh. 4, Maldonado Depo. at Exh. 3).  In addition, the F-150 that hauled the trailer containing the tigers reportedly had a Florida tag numbered Y76GNJ.  (Doc. 76, Exh. 3, Decl. D. Warrick at ¶ 21).  Mrs. Stearns has a Ford F-150 registered in her name bearing that same Florida tag number.  (Doc. 76, Exh. 8, Decl. of J. Orr at ¶ 6).

[14] Mrs. Stearns knew at least one of the tigers was pregnant, but she never told this to either Dr. Miller or Dr. Murphy.  (Doc. 224, February 21, 2017 Hearing Transcript at p. 42; Pl. Exh. 5, Miller Depo. at p. 18; Pl. Exh. 50, Mrs. Stearns Depo. at p. 86).  The dead tiger cubs were captured on a live Facebook feed.  (Pl. Exh. 4, Maldonado Depo. at Exh. 11).  In response to the video, a commenter posted, "Obviously the care was subpar because she shouldn't have been moved without them being aware of her situation."  (*Id.*).  Mr. Maldonado replied, "Court ordered them to be … That's what I'm so mad about."  (*Id.*).

On the morning of **July 17, 2017**, Mr. Maldonado learned of the court order prohibiting the removal of the tigers from Dade City's Wild Things.  (*Id.* at p. 1221–22).  Mr. Maldonado immediately called Mrs. Stearns to ask her about the order, and Mrs. Stearns replied that the tigers were already on the road when the order was entered.  (*Id.* at p. 123).  Contrary to Mrs. Stearns' assertions, the tigers were still at Dade City's Wild Things when the court's order was entered and did not leave for Wynnewood until after the remainder of the tigers were loaded the following afternoon.

At 10:36 p.m., Mrs. Stearns emailed Mr. Cook and told him, "I am just seeing these emails"—the emails relating to the court order prohibiting the removal of the tigers.  (Pl. Exh. 49, Cook Depo., Exh. 16).  Mrs. Stearns made this statement to Mr. Cook despite having discussed the court order earlier in the day with Mr. Maldanado.  Also, despite that between July 13th and 16th Mrs. Stearns used her iPhone to send and receive at least seven emails, at least twenty-one text messages, and place and receive at least 178 phone calls that lasted a total of 9.5 hours.  (Pl. Exh. 55).

On **July 19, 2017**, the day before the scheduled site inspection, Mrs. Stearns emailed Mr. Cook and advised him there was no longer anything for PETA to inspect because Dade City's Wild Things no longer had tigers.   (Pl. Exh. 49, Cook Depo. at Exh. 17).  Mr. Cook responded and advised Mrs. Stearns she did not have the authority to cancel the site inspection, and that prohibiting the site inspection would violate the court's order.  (*Id.* at Exh. 18).

24

Even so, on **July 20, 2017**, when PETA's site inspection team arrived at Dade City's Wild Things, there was a sign on the door stating the facility was closed "due to PETA death threats." (Pl. Exh, 50, Ms. Stearns' Depo. at Exh. 11).  Mrs. Stearns testified she does not know why the zoo was closed because she was bedridden.[15]  (Pl. Exh, 50, Ms. Stearns' Depo. at pp. 101, 131).  However, Kenneth Stearns testified Mrs. Stearns is the only person with authority to close Dade City's Wild Things.  (Doc. 225, February 22, 2017 Hearing Transcript at p. 52).

Mrs. Stearns testified she thought the site inspection was cancelled because Shiva was too big to swim, so there was no reason to have the inspection.  (Pl. Exh. 50, Mrs. Stearns' Depo. at p. 103).  This testimony conflicts with Mrs. Stearns and Kenneth Stearns' own admissions they were relocating the tigers so there would be nothing for PETA to inspect.  (Pl. Exh. 6, Nassivera Depo. at Exhs. 1-3; Pl. Exhs. 37–1, 38–3, 39).   In addition, even without tigers, the facility was still subject to inspection.  (*See* Doc. 56-1).

PETA contacted Mr. Cook, who emailed Mrs. Stearns and advised her yet again that prohibiting PETA's access to the facility violated the court's order and asked her to reconsider her actions.   (Pl. Exh. 49, Cook Depo. at Exh. 19).  She did not, and PETA's site inspection team eventually left the premises.

---

[15] Despite the testimony about Mrs. Stearns' activity during the tiger relocation, Mrs. Stearns claimed to be bedridden from a surgery that occurred almost two months prior. (Pl. Exh, 50, Ms, Stearns' Depo. at p. 54).

## III.   ANALYSIS

PETA requests sanctions against the defendants for violating the July Discovery Orders and spoliation of evidence.   PETA seeks (1) entry of a default judgment; (2) dismissal of the defendants' counterclaims; and (3) payment of PETA's reasonable expenses, including attorneys' fees and expenses, caused by violating the July Discovery Orders.   (Doc. 76).   PETA also moves for orders for Mrs. Stearns, Randall Stearns, and Kenneth Stearns to show cause why each should not be held in contempt.   (Docs. 76, 97).   "It is beyond peradventure that all federal courts have the power, by statute, by rule, and by common law, to impose sanctions against recalcitrant lawyers and parties litigant." *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir. 1985).   Here, there are two paths to sanctions: Rule 37 sanctions and spoliation sanctions.

### A.   Rule 37 Sanctions

A district court has broad authority under Rule 37 to control discovery. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997).   "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to [ensure] the integrity of the discovery process." *Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982).

Federal Rule of Civil Procedure 37(b) authorizes the court to impose such sanctions "as are just" against a party that disobeys a discovery order.   Fed. R. Civ. P. 37(b)(2).   The Rule lists the following possible sanctions:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

***(v) dismissing the action or proceeding in whole or in part;***

***(vi) rendering a default judgment against the disobedient party***; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) (emphasis added).  "Instead of or in addition to [such sanctions], the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

Although default judgment is a sanction of "last resort," such a heavy sanction is appropriate when the disobedient party's noncompliance with a discovery order is willful, flagrant, or in bad faith.  *Malautea v. Suzuki Motor, Co., Ltd.*, 987 F.3d 1536, 1542 (11th Cir. 1993); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (citations omitted).  The disobedient party's noncompliance with the discovery order cannot be caused by simple negligence, a

misunderstanding, or the inability to comply with the discovery order. *Malautea*, 987 F.3d at 1542. Also, the district court must determine that available less drastic sanctions would not be effective in ensuring compliance with the court's orders. *Id.* But when the noncompliant party demonstrates "a flagrant disregard for the court and the discovery process," the "severe" sanctions of default and dismissal are not an abuse of discretion. *Aztec Steel Co.*, 691 F.2d at 481.

### 1.      Conduct was Willful, Flagrant, and in Bad Faith

Without question, the defendants and Kenneth Stearns willfully acted in bad faith and in flagrant disregard for the discovery process essential to this federal cause of action. Right after receiving PETA's request for a site inspection, the Stearns began a calculated and deliberately deceptive process of disposing of their twenty-four tigers designed to frustrate the site inspection and eliminate evidence. Rather than halting this deceptive plan when the court ruled against them on July 12th and ordered the site inspection for July 20th, the defendants and Kenneth Stearns instead expedited their plans to remove the tigers under their theory that: "With no tigers, how they gonna prove tiger abuse?" (Pl. Exh. 38). In the process, the Stearns lied to the veterinarians caring for their animals, lied to their attorney, lied to the recipients of the tigers, and lied to the court. The breadth of the defendants' deceit is confounding and, thankfully, this brazen misconduct is rare in the judicial system.

While Mrs. Stearns took the lead in this egregious behavior and disregard for the judicial process, Randall Stearns is not without fault. He is a party to this action

28

and was on notice that PETA's lawsuit involved the housing and treatment of Dade City's Wild Things' tigers. Randall Stearns is listed as the president and director of Stearns Zoological Rescue & Rehab Center, Inc. and Dade City's Wild Things, Inc. (Doc. 37-1). He works as a volunteer at Dade City's Wild Things and is featured as the "tiger man" on Dade City's Wild Thing's website. *See* http://dadecitywildthings.com/dade-city-zoo-attractions/ (last visited July 30, 2019). Randall Stearns recorded at least some of Kenneth Stearns' videos, which included discussions of the case as well as removing the tigers from Dade City's Wild Things prior to the site inspection. (Pl. Ex. 51, Randall Stearns Depo. at p. 35). When discussing possible objections to the site inspection, Mrs. Stearns told Mr. Cook she needed "time to discuss this clearly with Randy [Randall Stearns] and get his thoughts and opinions." (Pl. Ex. 50, Mrs. Stearns Depo. at Ex. 25). After the hearing ordering the site inspection, Mrs. Stearns called Randall Stearns first. (Pl. Exh. 55, Stearns' Telephone Records at p. 7). Randall Stearns was also at Dade City's Wild Things on July 14, 2017, to greet Dr. Murphy and let him in when he arrived to sedate and load the tigers for transport. (Doc. 224, February 21, 2017 Hearing Transcript at pp. 33–34). He was also present when Ms. Nassivera arrived to facilitate removing two tigers from Dade City's Wild Things to transport them to EARS. (Pl. Exh. 6, Nassivera Depo. at p. 57). Randall Stearns acted in bad faith and with a disregard for the court's discovery order and the integrity of the discovery process.

29

Kenneth Stearns also acted in bad faith in heavily aiding in violating the July Discovery Orders. Although Kenneth Stearns is a non-party, Dade City's Wild Things is a family business and any sanctions imposed will affect that business. Thus, the undersigned will address Kenneth Stearns' bad-faith conduct. Knowing PETA was scheduled to conduct a site inspection at Dade City's Wild Things, Kenneth Stearns accepted a transfer of ownership of all Dade City's Wild Things' tigers into his name. (Pl. Exh, 50, Mrs. Stearns Depo. at Exh. 4). That same day, Kenneth Stearns assisted Ms. Nassivera in relocating two of Dade City's Wild Things' tigers to EARS. (Pl. Exh. 6, Nassivera Depo. at Exh. 2, p. 8). The next two days, Kenneth Stearns assisted Dr. Murphy in the sedation and loading of twenty-one tigers. Kenneth Stearns then delivered two more tigers to EARS and transported nineteen for inspection to travel outside the state of Florida, to Wynnewood. Kenneth Stearns took ownership and pride in his actions when posting on Facebook, making statements such as "now you see why I moved those tigers" and a reference to "outsmarting" PETA by removing the tigers. (Pl. Exh. 39, 37-1). Kenneth Stearns acted in bad faith and with a disregard for the court's July 12th discovery order and the integrity of the discovery process.

### 2.    The Prejudice to PETA and the Court is Significant

This lawsuit challenges the defendants' treatment and housing of their tigers. (*See* Doc. 38). A site inspection is specifically authorized by Rule 34 of the Federal Rules of Civil Procedure. The tigers are central evidence to PETA's case, and

observing the tigers as they existed at Dade City's Wild Things is crucial.  For that reason, a July 12th order compelled the inspection of the tigers at Dade City's Wild Things no later than July 20th. The Stearns knew of the importance of PETA observing the tigers and went to great lengths to deprive PETA of that right. Because, as Kenneth Stearns stated, "With no tigers, how they gonna prove tiger abuse?"  (Pl. Exh. 38).  The prejudice to PETA is significant because the Stearns succeeded with their plans to deprive PETA of the ability to obtain the information and evidence essential to prove its claims.  The Stearns' relentless bad acts in flouting the July12th order compelling the inspection deprived PETA, the court, and the public of evidence needed for this case to be resolved on the merits.

Besides thwarting PETA's ability to discover facts necessary to prove its case, the Stearns' conduct caused PETA to incur extensive and unnecessary attorney's fees and expenses.  PETA incurred fees and expenses for the motion and hearings related to the rescheduling of the site inspection, the fees and expenses associated with all filings related to the defendants' relocation of the tigers, the fees and expenses associated with the failed July 2017 site inspection, and the fees and expenses related to the instant motions, the evidentiary hearing, and hours of related discovery, including many out-of-town depositions.

In addition to being deprived of necessary evidence in this case, the defendants' actions greatly affected the court's docket.  In the approximate eight months between the sanctionable conduct and the March 2018 R&R (Doc. 230), the parties filed over

31

170 filings relating to this discovery dispute and not to the merits of the case.  The time spent on those matters was time diverted from other litigants and cases.

### 3.   Imposing Lesser Sanctions Than Default Judgment Would Be Futile

PETA requests the court enter a default judgment against the defendants and dismiss the counterclaims against PETA with prejudice.  Given the egregious nature of the defendants' discovery violations and their flagrant disregard for the court's order and the judicial process, the undersigned agrees that the entry of default judgment is appropriate.  This harsh sanction is warranted under these facts.  Lesser sanctions will not suffice.

Rule 37(b)(2) provides for imposing lesser sanctions ranging from staying the proceedings until the disobedient party obeys the court's orders, taking the matters addressed in the order as established, or monetary sanctions designed to make the moving party whole.  Rule 37(b)(2), however, broadly applies to *any* failure to comply with a court order or failure to provide or permit discovery.  An offending party's non-compliance with an order could result from more defensible conduct ranging from an inability to comply with a discovery order to a misunderstanding to simple negligence.  It is incumbent on courts to calibrate carefully the appropriate sanctions with a disobedient party's conduct.

Here, the defendants and Kenneth Stearns' continuous, systematic, willful, flagrant, and bad faith disobedience of the July 2017 Discovery Orders instructs that

they will not comply with any lesser sanctions that the court can impose. The ongoing and pervasive nature of their unwillingness to follow court orders—especially after being put on notice several times by the court and the Stearns' then counsel William Cook that interfering with the site inspection was sanctionable conduct—leads the undersigned to conclude that any further attempts at ordering compliance with discovery-related directives, much less a sanctions order, would be futile.

It is also impractical, if not impossible, for lesser sanctions to cure the prejudice the defendants' actions have caused. The tigers have been moved at least once to three separate locations, and most tigers have been moved twice and now are at a sanctuary in Colorado. Even if the tigers could be returned to Dade City's Wild Things, they are unlikely in the condition they were in when the defendants and Kenneth Stearns removed them in July 2017.

"When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those lesser sanctions." *Malautea*, 987 F.2d at 1544; *see also Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988) (holding sanctions of default or dismissal are appropriate when less draconian sanctions will not cure the prejudice or otherwise ensure future compliance with discovery obligations); *Commodity Futures Trading Comm. v. Alpha Trade Group, S.A.*, 2012 WL 3984717, at *3 (M.D. Fla. Aug. 24, 2012) ("Faced with the evidence of 'flagrant disregard' of this Court's prior Orders, the Court has every reason to expect that an order of lesser sanctions would be similarly ignored.").

Thus, considering the defendants' willful, flagrant, deceitful, and prejudicial conduct, the undersigned recommends that entry of a default judgment is warranted. Lesser sanctions will not cure the prejudice, will not ensure compliance with court orders, and will not adequately punish the defendants' willful disobedience of the July Discovery Orders. Besides entry of a default judgment against the defendants, the undersigned also recommends that the defendants pay PETA's reasonable expenses, including attorneys' fees, related to the defendants' failure to comply with the July Discovery Orders. *See* Fed. R. Civ. P. 37(b)(2)(c).

## B.   Alternatively, Sanctions for Spoliation of Evidence

Alternatively, even if Rule 37 did not authorize these sanctions, the court can rely on its inherent authority to sanction litigation misconduct and impose sanctions against the defendants for spoliation of evidence central to this case. "Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence." *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006) (quoting Blacks Law Dictionary 1437 (8th Ed. 2004)). Generally, spoliation is established when the party seeking sanctions proves that (1) the missing evidence existed at one time; (2) the alleged spoliator had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its prima facie case or defense. *Id.*

The court has broad discretion to impose sanctions derived from its inherent power to manage its own affairs and to achieve the orderly and expeditious

34

disposition of cases. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).  "Factors to be considered when determining the seriousness of the sanctions to impose against a party for failure to preserve critical evidence in its custody vary according to (1) the willfulness or bad faith of the party responsible for the loss or destruction of the evidence; (2) the degree of prejudice sustained by the opposing party; and (3) what is required to cure the prejudice." *St. Cyr v. Flying J. Inc.*, 3:06-cv-13-33TEM, 2007 WL 1716365, at *4 (M.D. Fla. June 12, 2007).  In the Eleventh Circuit, the most severe sanctions (such as dismissal or default) should be exercised only when there is a showing of bad faith destruction and lesser sanctions will not suffice. *See Flury*, 427 F.3d at 944–45.

## 1.    The Removal of the Tigers Constituted Spoliation

Here, the unlawful spoliation of evidence occurred.  The tigers were present at Dade City's Wild Things when PETA filed this action.  From the face of the original complaint, the defendants' treatment of the tigers is central to this action.  The defendants not only knew of the pending litigation and their obligation to preserve the tigers, but also knew that the inspection of the tigers was imminent and yet intentionally spoliated that evidence by hurriedly removing the tigers in the days leading to the court-ordered inspection.  "[A] litigant . . . is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be

requested during discovery, and/or is the subject of a pending discovery request." *Optowave*, 2006 WL 3231422, at *7–8 (citation omitted).   Not only should the defendants have reasonably known that the presence of the tigers was important for the scheduled inspection, Mr. Cook repeatedly advised the defendants of their obligation to preserve this specific evidence.  (Pl. Exh. 49, Cook Depo. at p. 56, Exhs. 12, 15, 18).

### 2.     The Spoliation Was Willful and in Bad Faith

Bad faith is found "where a party tampers with, purposefully loses, or intentionally destroys relevant evidence."  E.*E.O.C. v. Suntrust Bank*, No. 8:12-cv-1325-T-33, 2014 WL 1364982, at *5 (M.D. Fla. Apr. 7, 2014).  When a party destroys evidence despite a clear obligation to preserve, bad faith must be found.   *E.g., Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1280–81 (M.D. Fla. 2009).

As already addressed above, the evidence shows the defendants' intentional removal of all of Dade City's Wild Things' tigers was willful and done in bad faith in flagrant disregard of its obligation to preserve the evidence to comply with the July Discovery Orders.  The prejudice to PETA is serious.  *See Britton v. Wal–Mart Stores East, L.P.*, No. 4:11-cv-32-RH/WCS, 2011 WL 3236189, at *13 (N.D. Fla. June 8, 2011) (finding bad faith when spoliator consciously permitted video evidence of alleged shoplifting to be destroyed over time by failing to download it, knowing that legal claims relevant to video were forthcoming); *Swofford v. Eslinger*, 671 F. Supp. 2d 1274, 1281 (M.D. Fla. 2009) (finding bad faith when spoliators failed to direct

employees to preserve evidence and, in at least one case, were directly responsible for spoliation by failing to sequester weapons used in incident and instead sending them back to manufacturer for disassembly).  There is no way to cure the prejudice.  The subject tigers were moved from Dade City's Wild Things at a significant moment in this litigation.  It is now impossible for PETA to observe the tigers as they existed.

### 3.    Entry of Default Judgment is the Appropriate Spoliation Sanction

The inherent authority to sanction a party's spoliation of evidence by granting default judgment is a sanction of "last resort" and is appropriate only where lesser sanctions are not adequate.  *Malautea*, 987 F.2d 1536, 1542.  Here, the defendants' repeated impermissible actions, chronicled in the above sections, warrants the ultimate sanction of entry of default judgment.

As already addressed in the Rule 37 sanctions section above, the undersigned recommends entry of a default judgment because no lesser sanction will suffice.  Although a lesser sanction for spoliation can instead be an adverse inference instruction to the jury, such an instruction is not a viable option in this non-jury case.  Even if it was an option, an adverse inference instruction is an ineffective counter to the defendants' egregious conduct unless it is crafted so broadly to have the effect of a judgment in favor of PETA—and after further delay and greater prejudice to PETA than the recommended award of a default judgment.

37

Indeed, the defendants' actions are at least as flagrant as those in *Flury v. Daimler Chrysler*, in which the Eleventh Circuit directed that the district court dismiss the plaintiff's action and enter a judgment for the defendant, as a sanction for spoliation. *Flury*, 427 F.3d at 947. There, the plaintiff knew the defendant sought to examine the vehicle that became the subject of a products liability action. *Id.* at 945. Despite this, the plaintiff sold the vehicle for salvage without notifying to the defendant. *Id.* Here, the defendants knew PETA wanted to examine the tigers as they existed at Dade City's Wild Things. The defendants knew litigation was ongoing and the condition of the tigers was central to the dispute. Knowing these things, the defendants deliberately removed the evidence necessary for PETA to prove its prima facie case.

Following the rationale of *Flury*, the undersigned recommends the entry of a default judgment against the defendants is an appropriate sanction.

## C.  Dismissal of Amended Counterclaims

The broad discretion of the district court to manage its affairs is governed by the most fundamental safeguard of fairness: the Due Process Clause of the Fifth Amendment. *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006) (citation omitted). "To comply with the Due Process Clause, a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* (citation and internal quotation omitted). In *Serra*, the Eleventh Circuit remanded an order striking a

defendant's affirmative defenses because "those defenses had no apparent relationship with the discovery abuse."  446 F.3d at 1152.  As addressed above, the discovery at issue was of central importance to PETA's claims and so Dade City's Wild Things flagrant, willful, and bad faith abuse of the discovery process warrants the most severe sanctions.  Thus, the relationship between Dade City's Wild Things' counterclaims and PETA's claims is of paramount importance in determining whether sanctions should also include dismissal of the defendants' amended counterclaims.

In their amended counterclaims, the defendants state the only basis for the court's jurisdiction is supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because "the claims are so related to the claims in the action within the Court's jurisdiction that they form part of the same case or controversy."  (Doc. 273, p. 11, ¶ 5).  The defendants take the position that the heart of their amended counterclaims is "identical" to the original counterclaims because "both are entirely about PETA, through its agent Jenna Jordan, using fraudulent and illegal tactics to use illicit information in bringing this action."  (Doc. 275, p. 2).  Yet, the defendants previously distanced their original counterclaims from PETA's original claims and even stated their "counterclaim bears ***no relation*** to the claims brought in PETA's complaint." (Doc. 236, p. 10) (emphasis in original).  The defendants cannot have it both ways: either their counterclaims form part of the same case or controversy of PETA's claims or they bear no relation to PETA's claims.

39

If the defendants' amended counterclaims form part of the same case or controversy of PETA's claims, the sanctions analysis above should apply with equal force to the defendants' amended counterclaims. And any due process concerns are alleviated because "sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to [ensure] the integrity of the discovery process." *Flury*, 427 F.3d at 944 (citation omitted). Importantly, dismissal of related counterclaims are appropriate "when a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities." *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976).

Otherwise, if, as the defendants previously maintained, the counterclaims bear no relation to the claims brought in PETA's complaint, then they are not part of the same "case or controversy" so supplemental jurisdiction under 28 U.S.C. § 1367 is lacking. If the court lacks supplemental jurisdiction over the counterclaims, then the court must have an independent basis to maintain federal jurisdiction. The defendants claim the court has original jurisdiction under 28 U.S.C. § 1332 over the six state law claims because the parties are diverse and the amount in controversy exceeds $75,000. (Doc. 273, p. 11, ¶¶ 1–4).

However, the damages the defendants seek are vague and do not appear to add up to the jurisdictional threshold. Therefore, if the court enters default judgment against the defendants but does not dismiss the defendants' amended counterclaims as part of the sanctions, the defendants should be directed to provide documentation

40

to support the amount in controversy requirements for subject matter jurisdiction under 28 U.S.C. § 1332.  *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse ... and the amount in controversy must exceed $ 75,000.").

### D.    Contempt

Because the undersigned recommends the ultimate sanction of a default judgment, dismissal of the counterclaims, and an award of associated reasonable attorneys' fees and expenses incurred by PETA, the undersigned recommends there is no need to pile on contempt proceedings against Mrs. Stearns, Randall Stearns, and Kenneth Stearns.  As a separate matter, although Kenneth Stearns acted with the defendants in violating the July Discovery Orders, and the spoliation of evidence, the exercise of imposing sanctions on Kenneth Stearns would serve no additional purpose.  Kenneth Stearns will be affected by the imposition of the recommended sanctions because Dade City's Wild Things is a family business.

## IV.    CONCLUSION

"What above all else is eroding public confidence in the Nation's judicial system is the perception that litigation is just a game . . .."  *Caperton v. A.T. Massey Coal Co., Inc.*¸556 U.S. 868, 903 (2009) (Scalia, J., dissenting).  The defendants and Kenneth Stearns' shameless removal of the tigers in the days right before a court-ordered

41

inspection deprived PETA of crucial evidence and demonstrated a complete disregard for the rule of law.  Such outrageous conduct warrants severe sanctions.

For these reasons, it is **RECOMMENDED** that:

(1)    PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) be **GRANTED in part and DENIED in part**:

        (a)    Enter a default judgment against the defendants;

        (b)    Dismiss the defendants' amended counterclaims;

        (c)    Award PETA its reasonable attorney's fees and expenses incurred as a result of the defendants' failure to comply with the July Discovery Orders, from the time of the initial discovery violation through the filing of the March 2018 R&R (Doc. 230); and

        (d)    Deny PETA's request for an order to show cause why Mrs. Stearns and Randall Stearns should not be held in contempt.

(2)    PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) be **DENIED**.

**ENTERED** in Tampa, Florida on July 30, 2019.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

42

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations.  28 U.S.C. § 636(b)(1)(C).  Under 28 U.S.C. Section 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unopposed factual findings and legal conclusions.

Copies to: Counsel of Record, District Judge