UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

     Plaintiff,

v.                                 Case No: 8:16-cv-2899-T-36AAS

DADE CITY'S WILD THINGS, INC.,
STEARNS ZOOLOGICAL RESCUE &
REHAB CENTER, INC., KATHRYN P.
STEARNS and RANDALL E. STEARNS,

     Defendants.
_____/

## ORDER

This cause comes before the Court upon the Amended Report and Recommendation filed by Magistrate Judge Amanda Arnold Sansone (Doc. 282). In the Amended Report and Recommendation, the Magistrate Judge recommends the Court grant, in part, Plaintiff People for the Ethical Treatment of Animals, Inc.'s ("PETA") Motion for Sanctions and Order to Show Cause Why Defendants[1] Should Not Be Held in Contempt (Doc. 76) as follows: (a) enter a default judgment against Defendants; (b) dismiss Defendants' Amended Counterclaims; (c) award PETA its reasonable attorneys' fees and expenses incurred as a result of Defendants' failure to comply with the July discovery orders, from the time of the initial discovery violation through the filing of the March 2018 Report and Recommendation (Doc. 230); and (d) deny PETA's request for an order to show cause why Kathryn Stearns and Randall Stearns should not be held in contempt. The

---

[1] Throughout this Order, the two corporate entities, Dade City's Wild Things, Inc. and Stearns Zoological Rescue & Rehab Center, Inc., will be referred to collectively as "DCWT." DCWT, Kathryn Stearns, and Randall Stearns will be referred to collectively as the "Defendants." Otherwise, Kathryn Stearns, Randall Stearns, and non-party Kenneth Stearns will be referred to individually by name, and collectively as "the Stearns."

Magistrate Judge further recommends the Court deny PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) based on the imposition of the other sanctions.

Defendants filed objections to the Amended Report and Recommendation (Doc. 285), to which PETA responded (Doc. 286). Upon consideration, the Court will overrule Defendants' objections and adopt, confirm, and approve the Amended Report and Recommendation in all respects.

## I.    BACKGROUND

This case began on October 12, 2016, when PETA, an animal rights group, sued Defendants for alleged violations of the Endangered Species Act, 16 U.S.C. §§ 1531, *et seq.* (the "ESA") in connection with the operation of DCWT, a family-run zoo in Dade City, Florida. Doc. 1; Doc. 37. PETA alleged that Defendants "take" tigers in violation of the ESA by prematurely separating tiger cubs from their mothers, forcing the cubs to swim with the public for profit, and inadequately housing and caring for the tigers. Doc. 1; Doc. 37. DCWT filed counterclaims against PETA for tortious interference, conversion, and fraud, in relation to a PETA "investigator" who allegedly obtained employment with DCWT to generate and disseminate internal information in preparation for the filing of this action. Doc. 38.

On June 7, 2017, PETA served Defendants' then-counsel with a request to conduct a site inspection at DCWT. *See* Doc. 56-1. Defendants refused the request, and on June 30, 2017, PETA filed a motion to compel entry upon land to conduct a site inspection of DCWT.[2] Doc. 56. PETA

---

[2] The motion sought to: (1) observe the tiger cubs during public encounters, both on land and in the pool, (2) observe the tigers interact with their trainers, both on land and in the pool, (3) observe all tigers interact without trainer interaction, (4) observe the physical condition of the tigers, (5) observe all tigers during meal time, (6) observe all tigers when shifted to off-exhibit areas, (7) observe all tigers when their enclosures are being cleaned, (8) measure the size of the enclosures where the tigers are held, (9) observe areas associated with maintenance of the facility pool, and (10) take water samples from the pool where tiger swims occur. Doc. 56-1.

alleged in its motion to compel that DCWT had indicated Shiva—the sole tiger cub used for "swim encounters" with the public at that time—would become too large for swim encounters after the end of July. *Id.*; Doc. 56-2. Therefore, PETA alleged, time was of the essence. *Id.*

On July 12, 2017, the Magistrate Judge held a hearing on PETA's motion to compel. Doc. 64. During the hearing, the Magistrate Judge questioned Kathryn Stearns about when tiger cub swim encounters would be ending. Doc. 64 at pp. 13-14. Kathryn Stearns suggested that Shiva, depending on her weight, may be used in swim encounters past the end of July. *Id.* at p. 13. Kathryn Stearns further represented that there were no time constraints for the site inspection because the tiger cub encounters would be ongoing.[3] *Id.* When the Magistrate Judge asked whether tiger cub swims would end at the end of July, Kathryn Stearns stated, "[n]o ma'am. I have never stated that." *Id.* at p. 13. Ultimately, the Magistrate Judge overruled Defendants' objections, granted the motion to compel, and ordered that the site inspection occur at DCWT during normal business hours on July 20, 2017. Doc. 63.

On July 14, 2017, after receiving information that the Stearns were in the process of removing their tigers from DCWT, PETA filed an emergency application for temporary restraining order and preliminary injunction or, in the alternative, emergency motion for an order prohibiting spoliation and preserving evidence. Doc. 67. The motion sought an order directing that the tigers be preserved in their current state and location to ensure PETA would have access to the tigers

---

[3] Specifically, Kathryn Stearns stated:

> We will continue to have cubs. I had lined up a second cub that will start when Shiva ends. This is my business, we have always done this and this is nothing new. We're just talking about one cub. I have pregnant females now. I mean, this is not something that's going to end and we're not going to do it anymore or we wouldn't be here in this lawsuit because that's the whole point of the lawsuit is they're wanting me to stop bringing babies and doing cub encounters. So I have no plans to stop that.

Doc. 64 at pp. 13-14.

during the July 20, 2017 site inspection. *Id.* The Magistrate Judge granted PETA's emergency motion on the same day, ordering that Defendants "shall keep its twenty-two tigers on [DCWT's] property and shall not transfer, transport, relocate or in any way harm its twenty-two tigers absent further order of the Court." Doc. 69. The order further stated that "Defendants' transfer of the tigers . . . would amount to a direct violation of the Court's July 12, 2017 [o]rder mandating that the site inspection go forward on July 20, 2017." *Id.*[4]

Between July 14, 2017 and July 16, 2017, the Stearns relocated all of their tigers, including Shiva. The facts surrounding the tigers' transfer are found in the Amended Report and Recommendation ("Amended R&R") at pages 13 to 25, which the Court, finding no error, adopts and incorporates herein by reference.[5]

On July 20, 2017, when PETA's site inspection team arrived at DCWT for the court ordered site inspection, the Stearns denied them access to the facility. Doc. 79 at pp. 8-10. The parties appeared before the Magistrate Judge for a hearing on July 26, 2017. Doc. 78; Doc. 79. At the hearing, the Magistrate Judge directed that the site inspection occur without delay and directed the United States Marshal Service to be present at the rescheduled site inspection to ensure compliance by the Stearns and for any necessary peace-keeping measures. Doc. 81. PETA's site inspection of DCWT, albeit without tigers, occurred on August 4, 2017. Doc. 83.

PETA filed the Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt based on Defendants' failure to comply with the July discovery orders. Doc. 76. In that motion, PETA requested the Court enter a default judgment against Defendants, dismiss DCWT's counterclaims against PETA with prejudice, award PETA its reasonable

---

[4] The Court refers to the July 12 and July 14 orders of the Magistrate Judge collectively as the "July discovery orders."
[5] As discussed in more detail *infra*, the Court finds no error with respect to the Magistrate Judge's findings of fact. Therefore, the Court adopts the factual findings as set forth in the Amended R&R.

expenses, including attorney's fees and costs, enter an order to show cause against Defendants for why they should not be held in contempt, and order the tigers transported to a sanctuary. *Id.* Subsequently, on September 6, 2017, PETA filed the Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt for aiding and abetting Defendants' violation of the July discovery orders. Doc. 97.[6] In addition, the motion requested the court enter an order requiring Kenneth Stearns to pay PETA's reasonable expenses, including attorney's fees and costs. *Id.*

The Magistrate Judge considered the sanctions motions at a two-day evidentiary hearing on February 21, 2018 and February 22, 2018.[7] During the two-day hearing, the Magistrate Judge heard testimony from witnesses and received evidence related to the alleged discovery violations. Doc. 219; Doc. 220. On March 2, 2018, the Magistrate Judge issued a report and recommendation (the "R&R"), setting forth findings of fact based on the evidence entered in the record at the evidentiary hearing and making a recommendation to the District Court that it sanction Defendants by entering default judgment against Defendants in favor of PETA, dismissing Defendants' counterclaims, and awarding PETA reasonable attorneys' fees and costs. Doc. 230. Defendants filed objections to the R&R on March 16, 2018, and PETA filed a response on March 23, 2018.

On March 30, 2018, the Court entered an order deferring ruling on the R&R based on the pendency of two other motions which were filed between the time the Magistrate Judge scheduled the two-day evidentiary hearing and the time the R&R became ripe for review. On February 20, 2018, one day before the Magistrate Judge began the two-day evidentiary hearing, Defendants filed a motion for judgment on the pleadings, arguing that PETA's operative complaint failed to

---

[6] The Court refers to the two motions for sanctions collectively as the "sanctions motions."
[7] The court had originally scheduled an evidentiary hearing on these motions for November 2017. However, the hearing was delayed to allow discovery and to resolve objections. *See* Doc. 159.

state a claim in light of the "serious harm" standard newly articulated by the Eleventh Circuit in *PETA, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1148, 1150 (11th Cir. 2018). And on March 19, 2018, PETA filed a motion for leave to file a second amended complaint to add allegations about the tigers' transfer. Doc. 238.

Given the two pending motions related to the pleadings, the Court questioned whether it would be procedurally proper to accept the recommendation of default judgment. Doc. 230. Therefore, the Court deferred ruling on the R&R and the sanctions motions until it ruled on the Defendants' motion for judgment on the pleadings and PETA's motion for leave to amend. *Id.*

Subsequently, the Court granted PETA's motion for leave to amend, and PETA filed its Second Amended Complaint on June 7, 2018. Doc. 254; Doc. 256. Defendants then filed a motion to dismiss PETA's Second Amended Complaint. Doc. 265. The Court denied Defendants' motion to dismiss. Doc. 269; Doc. 270; Doc. 271; Doc. 272. Defendants filed an answer and affirmative defenses, along with its Amended Counterclaims. Doc. 273. PETA then moved to strike Defendants' Amended Counterclaims. Doc. 274. The Magistrate Judge denied PETA's motion to strike. Doc. 281.

Once the pleadings were closed, on July 30, 2019, the Magistrate Judge filed the Amended R&R now before the Court. Like the R&R, the Amended R&R includes findings of fact based on the evidence entered in the record at the two-day evidentiary hearing and recommends sanctions in the form of default judgment against Defendants, dismissal of Defendants' counterclaims, and an award of reasonable attorneys' fees and costs to PETA. Doc. 282. The Magistrate Judge based sanctions on both Rule 37 and the Court's inherent authority.

Defendants filed their objections (the "Objections") to the Amended R&R on August 27, 2019. Doc. 285. PETA's response followed on September 10, 2019. Doc. 286.

## II.    LEGAL STANDARD

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the Report and Recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc.*, 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed. R. Civ. P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id.*

Federal courts have authority to impose a variety of sanctions under Federal Rule of Civil Procedure 37(b). Under that Rule, a court may sanction a party who "fails to obey an order to provide or permit discovery" by:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Instead of or in addition to the sanctions listed in subsections (i) through (vii), the court must order the disobedient party or the party failing to act, the attorney advising that party, or both, "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ P. 37(b)(2)(C), 37(d)(3).

Although dismissal of a recalcitrant party's claim is permitted, dismissal with prejudice is "the most severe Rule 37 sanction" and not favored. *Mene v. Marriott Inter., Inc.*, 238 Fed. Appx. 579, 582 (11th Cir. 2007). However, dismissal with prejudice is appropriate when less drastic remedies have been ineffective or when a party "demonstrates a flagrant disregard for the court and the discovery process." *Id.* (affirming dismissal as sanction under Rule 37 where party had twice disobeyed court orders to appear for depositions and consistently disregarded court-imposed deadlines). Default judgment is also considered a "severe sanction," appropriate only when a district court had made "a finding of willful bad faith failure to comply" and determined that "lesser sanctions are not sufficient." *Rasmussen v. Central Fla. Council Boy Scouts of Am., Inc.*, 412 Fed. Appx. 230, 232 (11th Cir. 2011).

District courts also have inherent authority to impose sanctions upon parties who abuse the judicial process or who perpetrate a fraud upon the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). A fraud upon the court occurs when a party knowingly sets "in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Jackson v. Comberg*, No. 8:05-cv-1713-T-24TMAP, 2006 WL 8440091, at *2 (M.D. Fla. Aug. 25, 2006) (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). A district court may impose sanctions pursuant to its inherent authority

where a party destroys or conceals evidence or commits perjury. *Flury*, 427 F.3d at 944-45 (discussing the imposition of sanctions for spoliation of evidence); *Qantum Commc'ns Corp. v. Star Broad., Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007) ("[T]he inherent powers doctrine is most often invoked where a party commits perjury or destroys or doctors evidence."). Moreover, several federal courts have held that "the need for sanctions is heightened when the misconduct relates to the pivotal or 'linchpin' issue in the case." *Qantum Commc'ns Corp.*, 473 F. Supp. 2d at 1269.

A court's inherent power to sanction is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Chambers*, 501 U.S. at 43). A district court may exercise its inherent power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (quotation marks and citations omitted). The purpose of the court's inherent power to sanction is twofold: (1) "to vindicate judicial authority without resorting to a contempt of court sanction" and (2) "to make the prevailing party whole." *Id.* (citing *Chambers*, 501 U.S. at 46).

"The key to unlocking a court's inherent power" is a finding of subjective bad faith or conduct "so egregious that it could only be committed in bad faith." *Purchasing Power, LLC*, 851 F.3d at 1223-25. Bad faith is demonstrated by a party's "delaying or disrupting the litigation or hampering enforcement of a court order," among other things. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009).

To make findings supporting sanctions, a court must comply with the "mandates of due process, requiring fair notice and an opportunity to be heard." *Hernandez v. Acosta Tractors Inc.*,

898 F.3d 1301, 1306 (11th Cir. 2018) (quotation marks and citations omitted). Further, inherent power "must be exercised with restraint and discretion" and should not be used as a penalty for mere protracted litigation. *Purchasing Power, LLC*, 851 F.3d at 1225. Rather, sanctions fashioned pursuant to a court's inherent authority are remedies for "rectifying disobedience." *Id.* Such sanctions may include attorney's fees and costs. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765-66 (1980). Dismissal of a party's pleading or striking of its defenses is a "heavy punishment, appropriate only as a last resort." *Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306 (quotation marks and citations omitted). Nonetheless, dismissal and striking may be appropriate where lesser sanctions would not suffice to deter conduct or ensure the disobedient party's compliance. *Id.*

## III.    DISCUSSION

Defendants' Objections raise well over a dozen separate arguments. Many of the arguments take issue with insignificant details of fact, raise issues previously addressed by the Court, or lack merit. Defendants' attempt to kill the Amended R&R by a thousand paper cuts fails. The Amended R&R relies upon significant record evidence, properly admitted and not reasonably contested, showing Defendants schemed to remove and transfer their tigers with the knowledge that PETA had a legal right to observe the tigers at DCWT as part of the civil discovery process. The Court agrees with the Magistrate Judge: Defendants' and Kenneth Stearns' actions demonstrated a complete disregard for the rule of law. Severe sanctions are warranted.

### A. Defendants' Objections to the Magistrate Judge's Factual Findings are Overruled

As discussed *supra*, in February 2018, the Magistrate Judge presided over a two-day evidentiary hearing and prepared findings of fact in connection with PETA's sanctions motions. Doc. 282 at pp. 8, 13-25. Defendants argue the Magistrate Judge's factual findings are flawed

because they rely on faulty evidence. The evidence Defendants take issue with are the Declaration of Deborah Warrick, deposition testimony of Joseph Maldonado, and the Stearns' cellular phone call logs. The Court discusses each of Defendants' arguments within the context of each disputed item of evidence in turn.

### 1. The Warrick Declaration

Defendants argue the Magistrate Judge erred on pages 19 and 23 of the R&R by basing her factual findings upon doc. 76-3, the Declaration of Deborah Warrick ("Warrick Declaration"), because Warrick "had reason to lie." Doc. 285 at p. 23. Pages 19 and 23 of the R&R make the following factual findings based on the Warrick Declaration: (1) Warrick did not receive tigers from DCWT and (2) the F-150 truck that hauled a trailer containing tigers "reportedly had a Florida tag numbered Y76GNJ." Doc. 282 at pp. 19, 23 (citing Warrick Declaration at ¶¶ 11-12, 21).

As an initial matter, it is unclear why Defendants attempt to dispute the factual finding that Warrick ultimately did not receive tigers since that fact has little relevance. More obvious is Defendants' issue with the factual finding that the truck hauling tigers to Wynnewood, Oklahoma had a Florida license plate number Y76GNJ, as other evidence in the record links that license plate to Kathryn Stearns. Doc. 76 at Exh. 8.

Regardless of their reasons for disputing the factual findings, Defendants do not elaborate on their assertion that Warrick had "reason to lie," instead citing only to excerpts of two deposition testimony transcripts. Doc. 285 at p. 23 (citing Doc. 235-1, Deposition of Gail Bowen, at pp. 108, 144-45; Doc. 235-6, Deposition of Susan Nassivera, at pp. 99-100). But none of the deposition testimony transcript excerpts contradict the statements in the Warrick Declaration. Nor do they

provide sufficient information from which to infer that Warrick concocted two specific lies about her non-receipt of tigers and her receipt of information about the truck license plate number.

No information in the record cited by Defendants suggests the Magistrate Judge erred in crediting evidence from Warrick that she received no tigers and that the truck carrying tigers to Wynnewood, Oklahoma had a license plate number Y76GNJ. The Magistrate Judge did not err in relying on the Warrick Declaration as cited in the Amended R&R.

Even if the Warrick Declaration were deemed not credible, however, there would be no reason for the Magistrate Judge to change the ultimate findings of fact. Additional evidence besides the Warrick Declaration supports the factual findings that Warrick did not receive tigers and that the F-150 truck had a Florida tag numbered Y76GNJ. Stated differently, the Magistrate Judge could have relied on different record evidence to support the same factual findings. *See, e.g.*, doc. 244-5 (form from Gail Bowen listing a tiger delivery license plate as Y76GNJ). Defendants fail to make a meritorious argument as to the Warrick Declaration.

## 2. *Joseph Maldonado's Deposition Testimony*

Defendants also argue the Magistrate Judge erred in basing her factual findings upon the testimony of Joseph Maldonado ("Maldonado"). Doc. 285 at p. 18. According to Defendants, the Amended R&R "fails to properly weigh Maldonado's credibility considering facts that arose after the [two-day evidentiary] hearing." *Id.* Those facts, according to Defendants, include that Maldonado was later found "guilty on two counts of hiring someone to murder a woman in Florida, as well as multiple counts for violations of the Lacey Act and the ESA." *Id.*

Defendants do not explain how these later developments bear on Maldonado's credibility with respect to this case. Defendants fail to cite any case law in support of their request that the Court reject the Magistrate Judge's credibility findings of a fact witness based on later, unrelated

occurrences involving the witness. There is no reason to conclude the Magistrate Judge erred in relying on Maldonado's testimony as cited in the Amended R&R.

### 3. Cellular Phone Call Logs

Defendants also argue the Magistrate Judge relied on inadmissible phone call logs in her findings of fact. Doc. 285 at p. 19. According to Defendants, Kathryn Stearns' "informal" phone call logs, obtained by Kathryn Stearns from Verizon's website—rather than by subpoena to Verizon—are inadmissible hearsay and should have been excluded. *Id.* Defendants argue the phone call logs do not have "guarantees of trustworthiness" as required under Federal Rule of Evidence 807(a)'s residual exception because the Magistrate Judge failed to make sufficient findings under Rule 807(a) and there was no explanation of what the call logs meant. *Id.*

Defendants point specifically to page 16 of the R&R which makes a finding based on the phone call logs that, immediately following the July 12 hearing on PETA's motion to compel a site inspection of DCWT, Kathryn Stearns called Randall Stearns and Kenneth Stearns. Doc. 285 at p. 20. According to Defendants, the Magistrate Judge's finding about the timing of Kathryn Stearns' phone call(s), based on the phone call logs, was "crucial." *Id.*

But the Court agrees with PETA—ultimately, it does not matter exactly when Kathryn Stearns called her husband and son. Doc. 286 at p. 4. Indeed, it does not even matter that Kathryn Stearns called them that day. Much other record evidence supports the Magistrate Judge's factual finding that Randall Stearns and Kenneth Stearns knew PETA was entitled to a site inspection and that the tigers were to remain in place at DCWT but nonetheless assisted Kathryn Stearns in the removal and transfer of tigers from DCWT to other facilities. Doc. 282 at pp. 13-14, 17-18, 20-22. The same is true of other parts of the phone call logs showing to whom and at what time Kathryn

Stearns may have made telephone calls; the Court may instead rely on the wealth of other evidence detailing conversations between Kathryn Stearns and others regarding the transfer of tigers.

In any event, the Magistrate Judge did not err in deciding the phone call logs were admissible pursuant to the residual exception under Rule 807 and, in turn, did not err in admitting the records at the evidentiary hearing and citing to those records in her factual findings. Doc. 225 at p. 47. Under Rule 807(a), a hearsay statement not admissible under Rule 803 or 804 is nonetheless admissible when

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a)(1)-(2). "[W]hen it comes to trustworthiness, its primary concern is that of the declarant." *Rivers v. U.S.*, 777 F.3d 1306, 1314 (11th Cir. 2015). *See also* Advisory Committee Notes to 2019 Amendments, Rule 807.

Here, the phone call logs are supported by sufficient guarantees of trustworthiness, after considering the totality of the circumstances and corroborating evidence. First, the phone call logs, according to statements from Kathryn Stearns to the Magistrate Judge, came from Verizon, the Stearns' wireless telephone carrier. Doc. 225 at pp. 46-47. Verizon provided the records to Kathryn Stearns upon request as a customer of Verizon, and Kathryn Stearns provided the records to PETA. *Id.* Because Verizon, the declarant, had no reason to produce a false copy of a customer's phone call logs kept in the course of its business, the phone call logs themselves maintain guarantees of trustworthiness. Second, other record evidence corroborates the material in the phone call logs on which the Magistrate Judge relies, specifically, calls between Kathryn Stearns and others regarding the tigers' transfer. The Amended R&R discusses statements from a number of witnesses, all who

testify or aver to various telephone discussions between themselves and Kathryn Stearns during the relevant time period in July. *See, e.g.*, Doc. 282 at pp. 13-14, 16-17.

Finally, the phone call logs are more probative on the point for which they were offered than any other evidence that PETA could obtain at the time through reasonable efforts because of the limited time frame in which the parties had to collect evidence before the evidentiary hearing and because of Defendants' apparent lack of cooperation at times during the discovery process. *See* Doc. 185; Doc. 190; Doc. 209.

Defendants also argue the phone call logs should not have been admitted because Defendants were not provided adequate notice under Rule 807(b) of PETA's intent to use them. Doc. 285 at p. 20, n.13. To the contrary, as the Magistrate Judge explained, Defendants had notice because (1) the phone call logs were provided by Defendants and (2) PETA listed them on its exhibit list in advance of the hearing. Doc. 225 at pp. 47-48.

After the evidentiary hearing, PETA obtained phone call logs directly from Verizon pursuant to a subpoena. Defendants allege those records, attached to their Objections, contradict the informal phone call logs and the Magistrate Judge's findings of fact. Doc. 285 at p. 20. Defendants home in on precise times, length of calls, and "who called who first." *Id.* While zeroing in on those details, Defendants ignore other important details that informed the Magistrate Judge's factual findings, including text messages and witness testimony. None of Defendants' nitpicking of the phone records changes the material aspects of the Magistrate Judge's factual findings: Kathryn Stearns communicated with various people between June and July to arrange the transfer of Defendants' tigers.

The Court has conducted a clearly erroneous review of the factual findings of the Magistrate Judge which were not objected to. In addition, the Court has conducted a *de novo*

review of the factual findings which Defendants object to. Finding no error, the Court overrules Defendants' Objections as to the facts and adopts and incorporates by reference the Magistrate Judge's factual findings in the R&R at pages 13 through 25.

**B. Defendants' Additional Objections are Overruled**

*1. Bond Requirement*

Defendants argue the Magistrate Judge "erred by granting PETA's 'Emergency Application' without requiring that PETA post a bond." Doc. 285 at p. 23. Defendants are, apparently, referring to PETA's July 14, 2017 emergency application for temporary restraining order and preliminary injunction or, in the alternative, emergency motion for an order prohibiting spoliation and preserving evidence and the Magistrate Judge's order of the same date directing that Defendants shall keep its tigers on DCWT's property. Doc. 67; Doc. 69. Defendants' argument is without merit. As this Court has already discussed, the Magistrate Judge construed PETA's July 14, 2017 "motion as a request for entry of a preservation order" and granted the motion as such. Doc. 69 at p. 2; Doc. 170 at p. 9. The Magistrate Judge's order was not a temporary restraining order or a preliminary injunction. Defendants' argument about bond is misplaced.

*2. Insufficient Evidence About Defendants' Conduct*

Defendants make a variety of arguments concerning the sufficiency of the evidence as it relates to Defendants' conduct concerning the tigers' transfer. The Court addresses each argument in turn.

*i. The Stearns' knowledge of the July 14, 2017 order*

Defendants argue there is no evidence Kathryn Stearns knew before July 17, 2017, or before the tigers were transferred, about the July 14, 2017 order directing Defendants to keep the tigers on DCWT's property. Doc. 258 at p. 22. Defendants further argue there is no evidence of

when Kenneth Stearns knew of the July 14, 2017 order, and no evidence that Randall Stearns had knowledge of the July 14, 2017 order. *Id.* at pp. 22-23.

The Court agrees with the Magistrate Judge that Kathryn Stearns' statement that she did not know about the July 14, 2017 order before July 17, 2017 is not credible. *See* Doc. 282 at pp. 14, 20, 23, 25 (finding Kathryn Stearns' version of events not credible). The evidence cited by the Magistrate Judge shows Kathryn Stearns' then-attorney sent Kathryn Stearns two e-mails on July 14, 2017, one informing her about PETA's motion and the other informing her about the order granting the motion. Doc. 282 at p. 21. Kathryn Stearns claims to have not seen her attorney's e-mail until July 17, 2017; however additional evidence suggests otherwise. Doc. 282 at pp. 13, 21, 24. Record evidence relied on by the Magistrate Judge also advocates the conclusion that Kenneth Stearns and Randall Stearns were aware of the July 14, 2017 order before the tigers' move was complete. *See id.* at pp. 13, 15-17, 20-23 (discussing Kathryn Stearns' comments that she would share information with Kenneth Stearns and Randall Stearns and discussing the pair's role in moving the tigers).

Even if it were conceivable that none of the Stearns knew the content of the July 14, 2017 order until after the tigers were moved, the facts remain that the Stearns knew litigation specific to the tigers' condition at DCWT was ongoing, knew of the Magistrate Judge's July 12, 2017 order granting a site inspection at DCWT, knew the purpose of the site inspection was to view the tigers at DCWT and, yet, made calculated efforts to intentionally thwart PETA's right to discovery. Doc. 282 at pp. 29-31 (citing a variety of evidence, including videos of Kenneth Stearns explaining that the tigers were moved so PETA could not view them and would be unable to prove its case). The Magistrate Judge did not err in relying on the available evidence to conclude the Stearns each acted in bad faith.

ii.   Evidence about events prior to July 12, 2017

Defendants argue that the Amended R&R "improperly relies on events that occurred before the July 12, 2017 order that are not relevant for purposes of imposing sanctions." Doc. 285 at p. 23. The Court previously addressed and rejected this argument under a clearly erroneous standard of review. Doc. 170 at pp. 9-10.

Reviewing the Magistrate Judge's decision again, now *de novo*, the Court again disagrees with Defendants. The Magistrate Judge's discussion of evidence about events prior to the date of the July 12, 2017 discovery order sets the stage for the events of that date and beyond. It also shows the Stearns' intentions, from the beginning, to thwart PETA's access to discovery; even as Kathryn Stearns told the Magistrate Judge she had no intention of stopping tiger cub swims, she was arranging for the transfer of tigers from DCWT to other facilities. Doc. 282 at pp. 13-16. The evidence of events before the July 12, 2017 order gives important detail about Kathryn Stearns' contact with her attorney, PETA's request for a site inspection, and Kathryn Stearns' intentions. Notwithstanding, the evidence concerning those events is minimal compared to the other record evidence and is not what the Magistrate Judge ultimately relied upon in forming the recommended sanctions.

iii.   Evidence about the tigers' transportation

Defendants argue that the Magistrate Judge's factual findings about the condition of the tigers transported on July 15 are irrelevant because the tigers were transported by an independent carrier, Greg Woody. Doc. 285 at p. 23. Defendants cite to four lines of Kathryn Stearns' deposition testimony in which she says she had contact with Greg Woody about transportation. *Id.* (citing Doc. 235-7 at 158:1-158:5). It is unclear what Defendants expect the Court to glean from that testimony; whatever it may be, it does not contradict the Magistrate Judge's findings. Even

assuming Defendants' intention is to assert that someone other than one of the Stearns drove some of the tigers away from DCWT, that does not change the fact that the Stearns played the initiating role in coordinating and executing the transfer of their tigers.

### 3. Prejudice to PETA Warranting Rule 37 Sanctions

Defendants argue Rule 37 sanctions are not warranted because the Amended R&R "does not articulate how PETA has been prejudiced by PETA's lack of access to the tigers in July 2017." Doc. 285 at pp. 12-13. This is inaccurate. The Magistrate Judge made specific findings about the prejudice PETA suffered due to Defendants' actions. Doc. 282 at pp. 30-32. The Court finds no error.

### 4. Sanctions for Spoliation Pursuant to the Court's Inherent Authority

Defendants' also argue sanctions for spoliation are not warranted under the Court's inherent authority. As an initial matter, even if Defendants were correct, the outcome would not change because sanctions are still warranted under Rule 37. Notwithstanding, the Court concludes the Magistrate Judge's alternative assessment of spoliation was correct. As such, the Court agrees with the Magistrate Judge that sanctions are also warranted under the Court's inherent authority.

#### i. Spoliation

Defendants argue that "zoos and living animals may not be spoliated," that the "tigers were not spoliated," and that the elements for spoliation sanctions have not been met. Doc. 285 at pp. 3-7. The Court rejects these arguments.

"[F]ederal law governs the imposition of spoliation sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). Spoliation is the "intentional destruction, mutilation, alteration, or concealment of evidence." *Optowave Co. v. Nikitin*, No. 6:05-CV-1083-ORL-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006). To find spoliation of evidence, a court

must consider "1) whether the evidence existed at one time, 2) whether the spoliator had a duty to preserve the evidence, and 3) whether the evidence was critical to an opposing party being able to prove its prima facie case or a defense." *Id.* at \*8.

Here, there is no question that the evidence—the tigers' presence at DCWT—existed at one time. There is also no question that Defendants had a duty to preserve evidence. Without disagreeing that they had such a general duty, Defendants argue about the scope or reasonableness of their duty to preserve the tigers at DCWT.

In summary, Defendants argue that it was not possible for them to preserve the tigers as PETA would have liked them to because the tigers and DCWT are not "inanimate objects capable of being preserved in a static state" and because alteration was a normal part of DCWT's business. Doc. 285 at p. 4. For example, Defendants argue, Defendants had no control over the tigers' aging or growth, nor did Defendants have control over the tornado that came through DCWT, damaging some of the facility. *Id.* at pp. 4-5 Defendants further argue that certain occurrences, such as veterinary care and transfer of tigers, was a routine occurrence at the facility. *Id.*

Defendants' arguments are unavailing. Neither the Court nor PETA expected Defendants to prevent a tornado or the tigers' aging. What PETA and the Court reasonably expected, however, was for Defendants to preserve what they knew they were required to preserve and what was in their control to preserve. Perhaps, as Defendants allege, purchasing and selling a few tigers at a time to other facilities was indeed a regular part of DCWT's business. But Defendants do not attempt an argument that the rushed disposition of all of Defendants' tigers over the course of a few days, for the express purpose of "limit[ing]" what PETA saw, was a regular part of DCWT's business. Doc. 282 at p. 14. DCWT's decision to begin "a calculated and deliberately deceptive process of disposing their twenty-four tigers designed to frustrate the site inspection and eliminate

evidence" was not within Defendants' normal course of business. It was, however, within their control. *Id.* at p. 28. Defendants made a deliberate choice to conceal, alter, and destroy evidence that the Court had ordered preserved. This is spoliation.

Defendants also argue the elements for spoliation sanctions have not been met because the Magistrate Judge relies on insufficient evidence to conclude a July 2017 site inspection was crucial to PETA's ability to prove its case and fails to consider that PETA may prove its claims through other means. The Court rejects these arguments as well.

Defendants suggest PETA could have viewed the tigers at DCWT before July 2017 when the facility was open to the public, or viewed DCWT sometime after July 2017 without the tigers. This is disingenuous. Indeed, PETA had initially attempted to arrange a site inspection without court intervention, but Defendants refused. Doc. 282 at pp. 2-3. After the court intervened and Defendants moved their tigers, Defendants still refused to grant PETA access to DCWT. *Id.* at p. 25. Moreover, Kathryn Stearns lied to the Court and to PETA about DCWT's intentions for future tiger cub swims, and Kathryn and Kenneth Stearns both commented to others that Defendants planned to take actions to limit PETA's access. *Id.* at pp. 14, 17. Until the Magistrate Judge ordered the United States Marshal Service to be present at a rescheduled inspection in August 2017, Defendants had no intention of allowing PETA access to DCWT, with or without tigers.

Defendants' additional suggestions that PETA could adequately obtain necessary discovery through its eventual inspections (1) of DCWT without tigers and (2) of the tigers in the new facilities to which they moved is likewise disingenuous. As the Magistrate Judge found, Defendants themselves well understood the cruciality of PETA inspecting DCWT with the tigers there. Doc. 282 at p. 28 (citing Kenneth Stearns' video stating "[w]ith no tigers, how they gonna prove tiger abuse?").

ii. Bad faith

Defendants also argue the Magistrate Judge erred in determining sanctions are warranted pursuant to the Court's inherent authority because she did not utilize a "clear and convincing evidence standard" in making her conclusions regarding Defendants' bad faith.

Defendants' argument is based on case law from the Southern District of Florida, which is not binding on this Court. Doc. 285 at p. 11. Indeed, Defendants concede the issue lacks discussion from the Eleventh Circuit. Thus, Defendant's assertion that the Magistrate Judge erred by not applying a standard used in another district court is without merit.

Notwithstanding, the record evidence supports a finding of bad faith by clear and convincing evidence. Defendants' actions, painstakingly discussed in the facts section of the Amended R&R, which the Court has adopted, provide clear and convincing evidence of bad faith. The Court rejects Defendants' argument.

5. *Due Process*

i. Randall Stearns' presence at the evidentiary hearings

Defendants argue the recommended sanctions in the Amended R&R violate Randall Stearns' due process rights because criminal contempt charges were sought and contemplated at the evidentiary hearing, Randall Stearns was not present at the evidentiary hearing, and the Magistrate Judge relied on deposition testimony from Randall Stearns which was taken at a time when he was not represented.

PETA responds that Randall Stearns' absence at the evidentiary hearings is not problematic because the Magistrate Judge did not initiate criminal contempt proceedings, Randall Stearns was fully represented by counsel at the evidentiary hearings, and Defendants fail to explain what might

have been different, or what other evidence may have been considered, had Randall Stearns been present.

The Court agrees with PETA. Although the Magistrate Judge did not rule out the possibility of a sanction of criminal contempt, the Magistrate Judge did not initiate criminal contempt proceedings during the evidentiary hearing. *See* doc. 225 at 17:8-17:21. Randall Stearns was represented by counsel throughout the two-day evidentiary hearing. Doc. 201; Doc. 202. Finally, Defendants have not represented what they would have accomplished with Randall Stearns' presence at the evidentiary hearing. Defendants' argument is unpersuasive.

ii.   Striking Defendants' pleading

Defendants argue the sanction of striking the Amended Counterclaims does not comply with the mandates of due process because the claims in the Amended Counterclaims are "substantially distinct from" PETA's claims. Doc. 285 at p. 15. As the Magistrate Judge discusses in the Amended R&R, "[t]o comply with the Due Process Clause, a court must impose sanctions that are both just and specifically related to the particular claim which was at issue in the order to provide discovery." *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1151 (11th Cir. 2006) (internal quotation marks omitted). When imposing sanctions, a district court must state the reasons why the sanctions are "specifically related" to the claim(s) at issue in the violated discovery order(s). *Id.* at 1152.

Defendants assert the following Amended Counterclaims against PETA: fraud in the inducement, fraud, constructive fraud, unlawful recording of conversations, tortious interference with business and contractual relationships, and conversion. Doc. 273 at ¶¶ 43-90. In the Amended Counterclaims, Defendants assert the basis for the Court's jurisdiction is 28 U.S.C. § 1367,

supplemental jurisdiction, because "the claims are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy." *Id.* at ¶ 5.

Given Defendants' jurisdictional statement, the Magistrate Judge found Defendants' current attempt to meaningfully distance the Amended Counterclaims from PETA's claims doubtful. While Defendant's jurisdictional statement is somewhat telling, the particular question for the Court at this juncture is whether Defendants' Amended Counterclaims are "specifically related" to the Magistrate Judge's July discovery orders compelling a site inspection of the tigers at DCWT and preserving evidence at DCWT. The Court finds that they are.

As the parties are familiar, the Magistrate Judge's July discovery orders involved PETA's requested site inspection at DCWT. Specifically, PETA undertook to observe the tiger cubs during public encounters, observe the tigers interact with trainers, observe the tigers interact among themselves, observe the tigers' physical condition, and observe the tigers in various other locations at DCWT. *See* doc. 56. The Magistrate Judge granted the motion to compel the site inspection, and then further ordered Defendants to keep their tigers on their property pursuant to the previous order mandating the site inspection proceed. Doc. 63; Doc. 69.

Defendants do not argue that the July discovery orders were not specifically related to PETA's claims. There is no doubt they were: PETA's claims and the discovery it sought directly put the DCWT tigers' condition at issue.

But, despite Defendants' arguments to the contrary, it is clear Defendants' Amended Counterclaims also put the tigers' conditions at issue. In the Amended Counterclaims, Defendants assert that PETA "manufacture[d] false claims" against DCWT and posted "highly edited photographs and video that purportedly depicted abusive treatment of DCWT animals." Doc. 273 at ¶¶ 17, 36. Defendants, then, suggest PETA's portrayal of the condition of DCWT's animals was

false. *See id.* Thus, the condition of the tigers of DCWT was of importance to both PETA's claims and Defendant's Amended Counterclaims. In the same vein, the DCWT tigers' condition was important to PETA's defenses to Defendants' Amended Counterclaims, because PETA "could have obtained [evidence] during the Court-ordered site inspection [that] would have corroborated the suffering of specific tigers" thus "allowing PETA to neutralize DCWT's claim that PETA 'manufactur[ed] false claims.'" Doc. 286 at p. 16. In addition, PETA may have been able to prove its defense that any customer "loss of goodwill," as asserted in Defendants' Amended Counterclaims, was "caused by customers who were unhappy to see that DCWT mistreated" the tigers, not by PETA's alleged false campaign against DCWT. *Id.*

The tigers' condition at DCWT is specifically related to not only PETA's claims, but also to Defendants' Amended Counterclaims and PETA's defenses to the Amended Counterclaims. The Magistrate Judge did not err in recommending that the Court dismiss Defendants' Amended Counterclaims as a sanction for their misconduct.

### 6. *Recommended Sanctions*

Defendants argue the recommended sanctions are extreme and inappropriate. The Court disagrees. In calibrating the recommended sanctions, the Magistrate Judge carefully considered Defendants' willful and bad faith conduct, the prejudice to PETA, and the futility of lesser sanctions. Doc. 282 at pp. 28-32. Having reviewed the record *de novo*, the Court agrees with the Magistrate Judge's assessment.

### C. **PETA is Entitled to Default Judgment in its Favor**

A plaintiff is entitled to a default judgment only if the complaint states a claim for relief. *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) (citing *Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). Allegations

in a complaint "must present a sufficient basis to support the default judgment on the issue of liability." *Magee v. Maesbury Homes, Inc.,* No. 6:11-cv-209-Orl-19DAB, 2011 WL 1457173 at *2 (M.D. Fla. Apr. 15, 2011) (citing *Eagle Hosp. Physicians, LLC v. SGR Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (reviewing whether the well-pleaded facts stated a claim where the district court ordered a default judgment pursuant to its inherent powers to sanction litigants)). "Regardless of the willfulness of a party's discovery violation, a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1371 n.41 (11th Cir. 1997).

PETA's Second Amended Complaint states a claim for relief and presents sufficient bases to support the entry of a default judgment.[8] *See* doc. 270; doc. 272. Therefore, the Court may enter default judgment in favor of PETA as a sanction for Defendant's misconduct.

**Accordingly, it is ORDERED:**

1.      Defendants' Objections to the Amended Report and Recommendation (Doc. 285) are **OVERRULED.**

2.      The Amended Report and Recommendation of the Magistrate Judge dated July 30, 2019 (Doc. 282) is **ADOPTED, CONFIRMED, AND APPROVED** in all respects. It is made a part of this Order for all purposes, including appellate review.

3.      PETA's Motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt (Doc. 76) is **GRANTED IN PART,** as follows:

> a.  PETA is entitled to default judgment in its favor. A final judgment and permanent injunction will be entered by separate order;
>
> b.  Defendants' Amended Counterclaims are **DISMISSED;**

---

[8] In its Amended Complaint (Doc. 256), PETA seeks declaratory and injunctive relief and reasonable attorneys' and expert fees and costs. No demand for monetary damages is made.

c. PETA is entitled to reasonable attorneys' fees and expenses incurred as a result of Defendants' failure to comply with the July discovery orders, from the time of the initial discovery violation through the filing of the March 2018 R&R. Within **FOURTEEN (14) DAYS** of the date of this Order, PETA shall file a memorandum, including affidavits and billing statements, to support an award of reasonable attorneys' fees and costs. Defendants shall respond to the memorandum within **FOURTEEN (14) DAYS** of its filing. The parties are directed to attempt to resolve the amount of reasonable attorneys' fees and costs within **SIXTY (60) DAYS** of the date of this Order and promptly advise the Court of such settlement. If the parties are unable to agree on a reasonable amount of attorneys' fees and costs, the Court will determine the amount on the parties' written submissions.

4. PETA's request for an Order To Show Cause Why Mrs. Stearns and Randall Stearns should not be held in contempt is **DENIED**.

5. PETA's Motion for an Order to Show Cause Why Non-Party Kenneth Stearns Should Not Be Held in Contempt (Doc. 97) is **DENIED.**

**DONE AND ORDERED** in Tampa, Florida on February 25, 2020.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any