UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

    Plaintiff,

v.                                         Case No.: 8:16-cv-2899-T-36AAS

DADE CITY'S WILD THINGS, INC.,
STEARNS ZOOLOGICAL RESCUE &
REHAB CENTER, INC. D/B/A DADE
CITY'S WILD THINGS, KATHRYN P.
STEARNS, AND RANDALL E.
STEARNS,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

People for the Ethical Treatment of Animals, Inc. (PETA) moves the court to enter a judgment ordering Dade City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., d/b/a Dade City's Wild Things, Kathryn Stearns, and Randy Stearns (collectively, DCWT) jointly and severally to pay PETA $814,232.98 for its attorney's fees and expenses incurred because of DCWT's failure to comply with the court's July 2017 discovery orders. (Doc. 314). DCWT opposes the amount of attorney's fees sought. (Doc. 330).

**I.   BACKGROUND**

DCWT violated the court's July 2017 discovery orders by transferring their tigers to various third parties and by refusing to permit PETA to conduct the court-

1

ordered site inspection. (*See* Docs. 63, 69). PETA moved for sanctions against the defendants for failure to comply with the July 2017 discovery orders. (Doc. 76). At an evidentiary hearing in February 2018, PETA relied on testimony from ten witnesses and extensive documentary evidence to prove that DCWT's willful and bad-faith misconduct warranted severe sanctions.[1] (*See* Docs. 205, 230, 304).

The undersigned recommended sanctions of a default judgment against DCWT and dismissal of DCWT's counterclaims. (Docs. 230, 282).[2] The district judge adopted the undersigned's recommendation and ordered DCWT to pay PETA its "reasonable attorneys' fees and expenses incurred as a result of [DCWT's] failure to comply with the July [2017] discovery orders from the time of the initial discovery violation through the filing of the March 2018 [Report and Recommendation]."[3] (Doc. 304, p. 27). PETA seeks $814,232.98 in attorney's fees and expenses. (Doc. 314). In response, DCWT contends that PETA should be awarded no more than $166,009.88 and the court should consider not awarding any fees. (Doc. 330).

---

[1] To obtain evidence for this hearing, PETA served numerous third-party subpoenas and ultimately had to file miscellaneous federal actions in Oklahoma and Illinois. *See PETA v. Greater Wynnewood Exotic Animal Park*, No. 5:17-cv-00145-f (W.D. Okla. Oct. 20, 2017) (motion to compel site inspection to view DCWT's nineteen tigers); *PETA v. Gregg Woody*, No. 3:17-mc-00056-NJR (S.D. Ill. Oct. 19, 2017) (motion to compel compliance with subpoena for phone records related to the Oklahoma tiger transport).

[2] The court amended its report and recommendation due to the parties' amended pleadings. (*See* Docs. 256, 273, 276).

[3] From July 13, 2017, through the March 2018 Report and Recommendation, there were 163 docket entries. (*See* Docs. 67-230).

## II.   ANALYSIS

PETA's request for $814,232.98 in attorney's fees and expenses breaks down as follows:

| Firm | Fees | Expenses | Total |
| --- | --- | --- | --- |
| Zuckerman Spaeder LLP | $562,748.82 | $58,991.88 | $621,740.70 |
| PETA Foundation | $130,604.40 | $19,588.51 | $150,192.91[4] |
| Ryan Whaley Coldiron Jantzen Peters Weber PLLC | $8,587.00 | $181.11 | $8,768.11 |
| Barnes & Thornburg LLP | $27,666.00 | $752.76 | $28,418.76 |
| **Subtotal** | **$729,606.22** | **$79,514.26** | **$809,120.48** |
| April 3, 2018 Order re Fees | $5,112.50 | | $5,112.50[5] |
| **TOTAL** | **$734,718.72** | **$79,514.26** | **$814,232.98** |

(Doc. 314, Ex. 5).

On April 3, 2018, the court awarded PETA $5,112.50 for its reasonable fees incurred in connection with its motion to compel documents related to the tiger transfer. (Doc. 250). Although PETA represents that those fees have not been paid, the previous award will not be included in the fee award recommended in this report.

---

[4] The totals represented in PETA's motion for the PETA foundation are slightly incorrect. (Doc. 314, p. 10). The correct breakdown is attached as an exhibit to PETA's motion and represented here. (*See* Doc. 314, Ex. 5).

[5] PETA's motion contained a typographic error, which is corrected here. (*See* Doc. 314, p. 10).

3

The $5,112.50 is already owed by DCWT. (*Id.*). Thus, PETA seeks an additional **$729,606.22** in attorney's fees, **$79,514.26** in expenses, totaling **$809,120.48** incurred because of DCWT's failure to comply with the July 2017 discovery orders through the filing of the March 2018 Report and Recommendation.

### A. Reasonable Attorney's Fees

The initial burden of proof that the fee is reasonable falls on PETA, which must submit evidence of the reasonableness of the number of hours expended and the hourly rate claimed. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). The starting point for setting an attorney's fee is to determine the "lodestar" figure: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Norman*, 836 F.2d at 1299. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Gaines v. Dougherty Cty. Bd. of Edu.*, 775 F.2d 1565, 1571 (11th Cir. 1985).

These factors are subsumed in the calculation of the lodestar:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of any professional relationship with the client; and (12) awards in similar cases.

4

*Norman*, 836 F.2d 1292 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

The reasonableness of the rate charged is determined by its congruity with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The going rate in the community is the most critical factor in setting the fee rate. *Martin v. Uni. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990).

A fee applicant may meet the burden to show the reasonable rate by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299. The court may also use its own expertise and judgment to assess the value of an attorney's services. *Id.* at 1303; *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cty.*, 278 F. Supp. 2d 1301, 1310 (M.D. Fla. 2003).

The courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). If reducing fees, courts may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve

5

auditing perfection." *Id.*

This report addresses the reasonableness of the hourly rates charged and then addresses the reasonableness of the time entries.

### 1. Reasonable Hourly Rate

PETA seeks these hourly rates:

| Timekeeper | Firm | Location | Admission Date | Rate |
|---|---|---|---|---|
| Marcos Hasbun (Attorney) | Zuckerman Spaeder LLP | Tampa, FL | 1998 | $475, reduced in January 2018 to $460 |
| Justin Cochran (Attorney) | Zuckerman Spaeder LLP | Tampa, FL | 2010 | $325, reduced in January 2018 to $315 |
| Bobbie Camp (Paralegal) | | Tampa, FL | N/A | $265 |
| Jenni James (Attorney) | PETA Foundation | Remote (CA) | 2012 | $270 |
| Chance Pearson (Attorney) | Ryan Whaley Coldiron Jantzen Peters Weber PLLC | Oklahoma City, OK | 2008 | $200 |
| Paul Olszowka (Attorney) | Barnes & Thornburg LLP | Chicago, IL | 1996 | $570 |

(Doc. 314, Exs. 1-4).

The court may decide a reasonable rate based on its own expertise and judgment. *Norman*, 836 F.2d at 1303-04. The court looks to the skills, experience, and reputation of the attorneys to determine what comparable lawyers charge for similar services in this locality. "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the

place where the case is filed.'" *Barnes*, 168 F.3d at 437; *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994). Thus, the relevant legal market for this case is Tampa, Florida. The relevant market for the two miscellaneous federal actions is the respective federal districts in Oklahoma and Illinois.

DCWT states that "[t]he hourly rates sought by PETA are reasonable with one exception," paralegal Bobbi Camp. (Doc. 330, pp. 3-4). PETA seeks an hourly rate of $265 for Ms. Camp. Although Ms. Camp is experienced, that rate is above the market rate of paralegals in Tampa. According to the Florida Bar's 2018 Economics and Law Office Management Survey published in March 2019, $125 is the median hourly rate for paralegals,[6] which is reasonable. *See HealthPlan Servs., Inc. v. Dixit*, No. 8:18-CV-2608-T-23AAS, 2019 WL 7041837, at *4 (M.D. Fla. Dec. 20, 2019) (applying an hourly rate of $125 for an experienced paralegal in Tampa, Florida). Thus, Ms. Camp's hourly rate should be reduced to $125.

According to the billing records, Ms. Camp billed 430.3 hours at rate of $265 per hour, totaling $114,029.50. (*See* Doc. 314, Exs. 1-A, 1-B, 1-C, 1-E, 1-F, 1-G, 1-H, 1-I). Applying the $125 hourly rate, recovery for Ms. Camp should be reduced to $53,787.50. Stated another way, PETA's attorney's fees award should be reduced by $60,242.00.

---

[6] The Florida Bar, Results of 2018 Economics and Law Office Management Survey (March 2019), https://www-media.floridabar.org/uploads/2019/03/2018-Economics-Survey-Report-Final.pdf.

7

### 2. Reasonable Hours and Time Entries

Next, the lodestar analysis requires the court to determine the reasonable number of hours the moving party's attorneys expended. *Rowe*, 472 So. 2d at 1150. To prevail on its request for attorney's fees, the moving party should present accurate records that detail the work the attorneys performed. *Id.* Inadequate documentation may reduce the fees requested. *Id.*; *Hensley*, 461 U.S. at 433. The court may also reduce hours it finds excessive or unnecessary. *Rowe*, 472 So. 2d at 1150.

If the moving party sufficiently supports an attorney's fees request, the burden shifts to the opposing party to specify which hours should be reduced. Conclusory objections and generalized statements are not given much weight. *Gray v. Lockheed Aeronautical Sys.*, Co., 125 F.3d 1387, 1389 (11th Cir. 1997) (citation omitted). Hours to which the opposing party fails to object with specificity are accepted as reasonable. *Scelta v. Delicatessen Support Serv., Inc.*, 203 F. Supp. 2d 1328, 1333-34 (M.D. Fla. May 13, 2002) (citations omitted). And the court must review the billing log to determine whether the work was unnecessary, excessive, redundant, or included improper billing for clerical work performed by attorneys. *See Barnes*, 168 F.3d at 428.

DCWT objects to the recovery of $130,604.40 in attorney's fees for PETA's in-house counsel. (Doc. 330, pp. 2-3). DCWT also argues the fees PETA seeks are excessive and criticizes the billing records for being partially or completely redacted.

8

(*Id.* at pp. 4-7). DCWT further argues that the court should reduce or eliminate the fee award because of the severity of the sanctions already imposed. (*Id.* at pp. 7-9).

Considering the recovery of attorney's fees for PETA's in-house counsel, courts are reluctant to award these fees where counsel acted only as a liaison between the client and the outside counsel. *See, e.g.*, *Burger King Corp. v. Mason*, 710 F.2d 1480, 1498 (11th Cir. 1983) ("Attorney's fees for the services of in-house counsel are not recoverable . . .. Cases from other jurisdictions awarding fees for the services of in-house counsel who actively tried the case are not factually similar to this case when in-house counsel acted primarily as a liaison between the client and outside counsel who had complete responsibility for the conduct of the case."); *VP Gables, LLC v. Cobalt Grp., Inc.*, 597 F. Supp. 2d 1326, 1330 (S.D. Fla. 2009) (holding that the defendant may recover fees for the work performed by in-house counsel substantially involved in the litigation); *Dictiomatic, Inc. v. United States Fid. & Guar. Co.*, No. 93-2123-Civ-Paine, 94-1692-Civ-Paine, 2000 WL 33115333, *4 (S.D. Fla. May 2, 2000) (holding that attorney's fees for services of in-house counsel who act mainly as liaisons between the client and outside counsel are not recoverable).

PETA's in-house counsel did not sign motions or responses, did not present evidence or argument at hearings, and did not otherwise formally appear before the court. Consequently, PETA's in-house counsel's attorney's fees are not recoverable and should not be included in the fee award. Thus, PETA's attorney's fees award should be further reduced by $130,604.40.

In addition, PETA's extensive billing records contain hundreds of redacted time entries. (*See* Doc. 314, Exs. 1-A, 1-B, 1-C, 1-E, 1-F, 1-G, 1-H, 1-I). Many of these time entries, due to the heavy redactions, do not meaningfully describe how the time was spent. By way of example, these entries include various telephone calls, emails, meetings, document reviews, and research "regarding [redaction]," with no further context concerning the purpose for the billed work. (*Id.*).

When the subject of work performed is redacted, the court has insufficient information to determine whether the time spent on the task was reasonable. *Travelers Home & Marine Ins. Co. v. Calhoun*, No. 5:13-cv-251-Oc-22PRL, 2014 WL 1328968, at *2-4 (M.D. Fla. April 2, 2014). The court cannot determine whether an activity or the time spent on that activity is reasonable if it does not know the details about the work performed. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1197 (11th Cir. 2002) ("We caution, however, that where a significant number of entries are severely redacted or it appears that fee counsel has failed to use billing judgment, it may be an abuse of discretion to award fees based on the redacted entries."); *A.L. ex rel. P.L.B. v. Jackson Cty. Sch. Bd.*, No. 5:12-CV-299-RS-EMT, 2014 WL 2155223, at *7 (N.D. Fla. May 22, 2014) ("[T]he court cannot determine the propriety of awarding fees for the redacted activities because the nature of those activities is unknown"). Thus, the time billed in the heavily redacted entries should not be fully compensated.

10

Review of the other time entries indicates many of the attorney's fees PETA seeks are excessive, redundant, and unnecessary. PETA's counsel spent 2,390.77 hours litigating this discovery dispute. Within PETA's billing records, counsel spent (and billed for) countless hours meeting and conferring with one another to discuss this action, sometimes several times per day. (*See* Doc. 314, Exs. 1-A, 1-B, 1-C, 1-E, 1-F, 1-G, 1-H, 1-I). For example, on October 2, 2017, attorneys billed for five separate conferences with each other, totaling over 3 hours. (*See* Doc. 314, Ex. 1-D, pp. 5 & 13). In addition, multiple attorneys spent numerous hours preparing for the same depositions. (*See* Doc. 314, Ex. 1-C).

Considering the redacted billing records and the otherwise excessive and redundant billing, the court recommends a 33% reduction in PETA's attorney's fees award. *See Hepsen v. J.C. Christensen & Assocs., Inc.*, 394 F. App'x 597, 600 (11th Cir. 2010) (affirming reduction of fees by 50% across the board due to "a number of examples of redundant, excessive, or vague entries"); *Hiscox Dedicated Corporate Member, Ltd. v. Matrix Group Ltd., Inc.*, No. 8:09-CV-2465-T-33AEP, 2012 WL 2226441, at *5 (M.D. Fla. June, 15, 2012) (reducing fee application by 20% for vague and generic time entries).

\* \* \* \*

Applying the recommended deductions, PETA's request for $734,718.72 should be reduced by $5,122.50 to exclude already awarded fees, by $60,242.00 for excessive paralegal fees, and by $130,604.40 for unrecoverable in house-counsel fees, for a new

11

total of $538,749.82. Then, applying the recommended 33% deduction, the $538,749.82 should be further reduced by $177,787.40 to a recovery of **$360,962.42**, which is reasonable compensation for the work performed.

### B. Reasonable Expenses

DCWT did not object to the expenses requested by PETA in the amount of $79,514.26. Because DCWT did not object and PETA shows the costs are reasonable, PETA should be awarded its requested expenses. *See HealthPlan Servs., Inc.*, 2019 WL 7041837, at *5. However, in-house counsel expenses in the amount of $19,588.51 should be excluded for the same reasons this report excludes recovery for in-house counsel's fees. Thus, PETA should be awarded its expenses in the amount of **$59,925.75.**

### III. CONCLUSION

It is **RECOMMENDED** that PETA's motion for reasonable attorney's fees and expenses (Doc. 314) be **GRANTED in part and DENIED in part.** PETA should be awarded its reasonable attorney's fees of **$360,962.42** and expenses of **$59,925.75**, for a total amount of **$420,888.17**, against Dade City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., d/b/a Dade City's Wild Things, Kathryn Stearns, and Randy Stearns, jointly and severally.

**ENTERED** in Tampa, Florida on May 28, 2020.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

**NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.