UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEOPLE FOR THE ETHICAL
TREATMENT OF ANIMALS, INC.,

      Plaintiff,

v.                                      Case No: 8:16-cv-2899-T-36AAS

DADE CITY'S WILD THINGS, INC.,
STEARNS ZOOLOGICAL RESCUE &
REHAB CENTER, INC., KATHRYN P.
STEARNS and RANDALL E. STEARNS,

      Defendants.
_____/

## O R D E R

      This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Amanda Arnold Sansone [Doc. 336]—regarding Plaintiff's Motion for Reasonable Attorneys' Fees and Expenses [Doc. 314], Plaintiff's objections to the Report and Recommendation [Doc. 337], Defendant's objections [Doc. 338], and Plaintiff's response to Defendant's objections [Doc. 339]. Plaintiff seeks fees and expenses in the amount of $814,232.98 that it purportedly incurred as a result of Defendants' failure to comply with discovery orders in this case. [Doc. 314 at p. 1].   In her Report and Recommendation, the magistrate judge recommended that Plaintiff's motion for reasonable attorney's fees and expenses be granted-in-part and denied-in-part and that Plaintiff should be awarded its reasonable attorney's fees of $360,962.42 and expenses of $59,925.75, for a total amount of $420,888.17. [Doc. 336 at p. 12]. Both parties have raised various objections to the magistrate judge's recommendations. Upon review of the magistrate judge's recommendations and the arguments presented by the parties, and being otherwise duly advised in the cause, the Court will overrule Plaintiffs objections, sustain

Defendants' objections as to four specific expenses, and adopt, confirm, and approve the Report and Recommendation in all other respects.

## I.   BACKGROUND

### The Facts

This action dates to October 12, 2016, when Plaintiff—represented by Marcos E. Hasbun and Justin R. Cochran of Zuckerman Spaedar LLP—alleged that Defendants were engaged in ongoing violations of the Endangered Species Act, 16 U.S.C. § 1531 *et. seq.* [Doc. 1]. Among other things, the two-count Complaint alleged that Defendants did not possess a permit from the Secretary of the Interior to "take" endangered tigers under 16 U.S.C. § 1539(a)(1)(A). *Id.* ¶ 22. Additionally, the Complaint alleged that Defendants engaged in various harmful and harassing practices such as separating tiger cubs from their mothers to exploit them in profitable public encounters. *Id.* ¶ 28. Plaintiff sought injunctive relief restraining continued violations of the Act by Defendants and ordering them to relinquish possession of the tigers to a reputable sanctuary. *Id.* ¶¶ 108, 111.

As discovery in the case ensued, on July 12, 2017, the Court granted Plaintiff's Motion to Compel Entry Upon Land and Site Inspection and ordered that a site inspection of Defendants' zoo occur on July 20, 2017. [Doc. 63 at p. 1]. Two days later, Plaintiff filed an emergency application for a temporary restraining order and preliminary injunction to prohibit spoliation and preserve evidence, representing to the Court that it had "a well-informed basis to believe that after the Court entered its July 12, 2017 Order . . . [Defendants] made arrangements to transfer its tigers to a roadside zoo in Wynnewood, Oklahoma by Sunday, July 16, 2017." [Doc. 67 at p. 1]. The Court granted the motion that same day, ordering Defendants to keep its twenty-two tigers on its

property absent further order of the Court. [Doc. 69 at p. 4]. The Court also set the matter for a hearing on July 26, 2017 and ordered Defendants to file an expedited response. *Id.*

On July 25, 2017, Plaintiff moved for sanctions and an order to show cause why Defendants should not be held in contempt based on Defendants' "willful failure to obey this Court's July 12, 2017 Order . . . and July 14, 2017 Order . . . . and also based on [Defendants'] bad faith spoliation of the evidence central to this Endangered Species Act [] citizens-suit." [Doc. 76 at p. 1]. Among other things, Plaintiff indicated that Defendant had refused to grant it access to their property for the July 20, 2017 site inspection. *Id.* At the hearing the following day, as well as in filings, Plaintiff advised the Court that Defendants had relocated nineteen of their tigers to a third-party's facility in Oklahoma, and further represented to the Court that the third-party in Oklahoma either did not want to—or could not—continue to house these nineteen tigers. [Doc. 81 at p. 4]. By order dated July 28, 2017, the Court ordered that the site inspection of Defendants' zoo occur on August 4, 2017. [Doc. 83 at 1].

The litigation stemming from the Court's July discovery orders continued over several months as the Court described in great detail in previous orders. Eventually, the evidentiary hearing on the motion for sanctions was held on February 21 and 22, 2018, and the magistrate judge heard testimony from witnesses and received evidence related to the discovery violations. [Docs. 219, 220]. Among other things, the magistrate judge recommended that the Court grant-in-part Plaintiff's motion for Sanctions and Order to Show Cause Why Defendants Should Not Be Held in Contempt [Doc. 76] and award Plaintiff its reasonable attorneys' fees and expenses incurred as a result of the Defendants' failure to comply with the July Discovery Orders, from the time of the initial discovery violation through the filing of the March 2018 R&R. [Doc. 282 at p. 42].The Court adopted, confirmed, and approved the report and recommendation in all respects

and found that Plaintiff was "entitled to reasonable attorneys' fees and expenses incurred as a result of Defendants' failure to comply with the July discovery orders." [Doc. 304 at pp. 26-27].

### The Motion for Fees

Plaintiff filed its motion for fees on March 10, 2020. [Doc. 314]. There, it explained that it had incurred reasonable attorneys' fees and expenses of $814,232.98. *Id*. at p. 1. The breakdown of this amount was provided as follows:

| Firm | Fees | Expenses | Total |
|---|---|---|---|
| Zuckerman Spaeder LLP | $562,748.82 | $58,991.88 | $621,740.70 |
| PETA Foundation | $130,604.94 | $19,588.51 | $150,193.45 |
| Ryan Whaley Coldiron Jantzen Peters & Webber PLLC | $8587.00 | $181.11 | $8,768.11 |
| Barnes & Thornburg LLP | $27,666.00 | $752.76 | $28,418.76 |
| **Subtotal** | **$729,606.22** | **$79,514.26** | **$809,120.48** |
| April 3, 2018 Order re Fees | $5,112.50 | | $5,122.50 |
| **Grand Total** | **$734,718.72** | **$79,514.26** | **$814,232.98** |

*Id*. at p. 10.[1] The motion was supported by various declarations from the attorneys who worked on the case including lead-attorney Marcus Hasbun of Zuckerman Spaedar,[2] Plaintiff's house counsel Jenni James, Chance L. Pearson of Ryan Whaley Coldiron Jantzen Peters & Webber PLLC—the firm retained as local counsel in Oklahoma, and Paul Olszowka of Barnes & Thornburg LLP—the firm retained to handle the miscellaneous action in Illinois. [Docs. 314-1, 314-11, 314-12, 314-13]. Each declaration was accompanied by billing records for fees and expenses.

---

[1] The totals represented for the PETA foundation are slightly incorrect. *See* Doc. 314, p. 10. The correct breakdown is attached as an exhibit to the motion. *See* Doc. 314-5. Additionally, as the magistrate judge noted, the $5,112.50 is already owed by Defendants. [Doc. 250].

[2] For ease of reference, Zuckerman Spaedar and its attorney will be referred to as "outside counsel."

In their response to the motion, Defendants challenged various elements of the fee demand. [Doc. 330]. First, they argued that it was improper for Plaintiffs to seek fees for house counsel. *Id.* at p. 2. Second, they argued that the hourly rate for outside counsel's paralegal was not reasonable. *Id.* at p. 3-4. Third, Defendants argued that Plaintiffs' fees were unreasonable and excessive and specifically noted that hundreds of billed entries were redacted, and the time spent litigating the matter was "overkill." *Id.* at p. 4-7. In fact, Defendants suggested that the Court apply an across-the-board reduction of no less than 75% of the claimed fees and expenses. *Id.* at p. 7. Lastly, Defendants argued that the default judgment imposed against them was the most severe sanction possible and the Court should further reduce or eliminate the fee in light of this, as entry of the injunction forced them to shutter the business. *Id.* at pp. 7-9.

The magistrate judge considered the matter and issued a Report and Recommendation on May 28, 2020. [Doc. 336]. She recommended that the motion be granted-in-part and denied-in-part and that Plaintiff be awarded its reasonable attorneys' fees of $360,962.42 and expenses of $59,925.75, for a total amount of $420,888.17. *Id.* at p. 12. In doing so, she reduced the paralegal's hourly rate, excluded all fees and costs for house counsel, and applied an across-the-board reduction of 33% to attorney's fees to account for redactions and redundant excessive billing. *Id.* at pp. 4-12. Plaintiff has objected to the magistrate judge's recommendation that house counsel's fees and expenses be disallowed and that the fee award should be reduced by 33%. [Doc. 337 at pp. 6-20]. In their objection, Defendants argue that the Court should reduce the award by an additional $21,719.41 based on PETA's failure to justify six specific expenses. [Doc. 338 at pp. 2-3]. In response, Plaintiff argued that Defendants had not previously presented those arguments and the Court should exercise its discretion and decline to consider them. [Doc. 339 at p. 3-4].

Regardless, Plaintiff argued that the Court should reject Defendants' arguments as it had provided sufficient evidence to justify the award for each of the six expenses. *Id.* at pp. 4-14.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

## III.   DISCUSSION

### a.   *Reasonable Attorney's Fees*

i.   <u>Reduction of Bobby Camp's fees</u>

The magistrate judge determined that Bobby Camp's hourly rate should be reduced from $265 to $125, which is the median hourly rate for paralegals in Tampa, Florida–the relevant market in this case—and a reasonable hourly rate for Ms. Camp's services. [Doc. 336 at p. 7]. Plaintiff does not object to the rate reduction. [Doc. 337 at p. 4 at n. 4]. The Eleventh Circuit Court of Appeals has long held that "the 'going rate' in the community is in actuality the most critical factor in determining a reasonable fee." *Martin v. Univ. of S. Alabama*, 911 F.2d 604, 610 (11th Cir. 1990). The Court agrees that the recommended reduction is warranted based on the "going rate" for paralegals in Tampa, Florida. Plaintiff has also indicated that it is only seeking recovery for

404 hours and not the 430.3 hours billed by Ms. Camp. Accordingly, recovery for Ms. Camp's services is further reduced to $50,500.[3]

ii.   Reduction of fees for PETA's in-house counsel

The magistrate judge determined that Plaintiff's in-house counsel's attorney's fees in the amount of $130,60.40, are not recoverable as she did not sign motions or responses, did not present evidence or argument at hearings, and did not otherwise formally appear before the court and recommended that such fees should not be included in the fee award. [Doc. 336 at p. 9]. In its objection, Plaintiff contends that the recommendation is erroneous because it is based solely on counsel's failure to formally appear before the Court. [Doc. 337 at p. 7]. Instead, Plaintiff believes that a fee award is warranted as house counsel was substantially involved in the actual litigation of the case, focusing almost exclusively on this case from July 2017 to March 2018—during which time house counsel took the lead on research and drafting motions "whenever possible" and also researched and drafted substantive filings as necessary. *Id.* at pp. 7-11

The Court agrees with the magistrate judge that house counsel's fees are not recoverable in this case. The Eleventh Circuit has previously refused to award fees to house counsel where it determined that it was not necessary to indemnify plaintiff for the time spent by its house counsel as a result of the litigation. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1499 (11th Cir. 1983). In doing so, the appellate court reasoned, among other things, that plaintiff "did not have to pay out additional money for the services of its house counsel, so it cannot claim 'reimbursement' for this pro-rata share of its fixed corporate expense." *Id.* There is no evidence before the Court that Plaintiff had to pay out additional amounts for house counsel's work on this case. Additionally,

---

[3] This reflects a reduction of $3,287.50 to the award of $53,787.50 recommended in the Report and Recommendation.

having retained outside counsel, it is not apparent to the Court why house counsel was so heavily involved in the litigation—even expending more hours of work on certain projects than outside counsel.[4]

### iii.   Thirty-Three Percent Reduction

The Eleventh Circuit has long held that when a district court finds the number of hours claimed for attorneys' fees is unreasonably high, it may reduce the requested hours with an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). In applying an across the board cut, "it is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). The magistrate judge recommended an across the board reduction of 33% based on "the redacted billing records and the otherwise excessive and redundant billing." [Doc. 336 at p. 11]. The magistrate judge explained that "PETA's extensive billing records contain[ed] hundreds of redacted time entries," many of which did not meaning fully describe how the time was spent and precluded the Court from determining whether the time spent on the task was reasonable. *Id.* at p. 10. The magistrate judge also determined that many of the fees were "excessive, redundant, and unnecessary." *Id.* at p. 11.

Plaintiff objects to this recommendation, contending that a 33% reduction is substantial and serves as a windfall for Defendants, and presents various arguments as to why the reduction is not warranted or proper. [Doc. 337 at p. 14]. As to the redactions, Plaintiff argues that redactions were made for privileged matters and that because there was only one matter at issue during the

---

[4] For example, house counsel billed 89 hours working on the Emergency Motion for Preservation Order and Order to Show Cause why Joseph Maldonado, Jeffrey Lowe, and the Greater Wynnewood Exotic Animal Park Should not be held in Contempt [Doc. 95], Mr. Cochran billed 36.4 hours, and Mr. Hasbun billed 33.9 hours. [Doc. 314-11 at p. 7, Doc. 314-3 at pp. 6-8, 15-16].

relevant time period, sufficient context remained in the unredacted portions to demonstrate that PETA's counsel was not working on a separate matter. *Id.* Plaintiff also argues that the total number of hours is reasonable given the amount of work that was required to uncover Defendants' scheme; that it exercised billing judgment through various measures; and that the billing entries did not leave unexplained large chunks of time. *Id.* at pp. 15-17. Furthermore, to the extent reduction is warranted, Plaintiff believes the magistrate judge's 33% reduction is not supported and the Court should choose a far lower rate. *Id.* at pp. 15, 18.

Across-the-board reductions have been consistently approved by the Eleventh Circuit for a number of reasons. *See Eldredge v. EDCare Mgmt., Inc.*, 766 F. App'x 901, 911 (11th Cir. 2019) (affirming district court's 25% across-the-board reduction to the fees charged based on its conclusion that about one-quarter of the time entries were excessive given the "straight-forward tasks" involved); *Hamilton v. Sheridan Healthcorp, Inc.*, 700 F. App'x 883, 887 (11th Cir. 2017) (affirming across the board 40% reduction to account for excessive redaction, block billing, and the clerical nature of certain work); *Dial HD, Inc. v. ClearOne Commc'ns*, 536 F. App'x 927, 931 (11th Cir. 2013) (finding that the district court reasonably applied a 25% across-the-board reduction to the fees charged by one law firm based on its conclusion that the firm used block billing, making it difficult to ascertain how much time was spent on each task").

The magistrate judge correctly noted that the invoices were heavily redacted. For example, on the invoice dated August 2017, Mr. Hasbun billed 101.8 hours through July 31, 2017. [Doc. 314-2 at p. 2]. The descriptions for 66.8 hours of work are unredacted and the descriptions for the remaining hours are either partially or completely unredacted. Mr. Cochran billed 129.30 hours during the same period, only 49.2 of which are unredacted; 57.5 are partially redacted and the remaining hours are completely redacted. Ms. Camp billed 51.40 hours for this period and the

Court is privy to the complete description for only 29.9 hours of the work she performed. The following month, Mr. Hasbun billed a total of 83.3 hours and an unredacted description was provided for only 44.1 of these hours—just over a half. Mr. Cochran billed 117.8 hours during that period and the unredacted entries accounted for only 74.6 of these hours. Ms. Camp billed 51.9 hours for the period and the unredacted time entries totaled 33.3 hours.

The magistrate judge is also correct that there was excessive and redundant billing. For example, on July 14, 2017, Plaintiffs filed an emergency application for temporary restraining order and preliminary injunction and other relief regarding the preservation of evidence. [Doc. 67]. Based on the unredacted billing records provided to the Court, Mr. Cochran spent at least 17.9 hours working on the application and Mr. Hasbun spent 9.1 hours for a total of 27 hours—over a two day period—on the application which ultimately amounted to sixteen pages supported by an eight-page declaration from Mr. Hasbun, which was accompanied by various exhibits. [Doc. 67]. Mr. Cochran spent 6.7 hours drafting the application the day before it was filed, 1.6 hours reviewing case law addressing spoliation and preservation, and .5 hour reviewing and analyzing the local rules and case law addressing applications for injunctive relief. [Doc. 314-2 at p. 11]. That same day, Mr. Hasbun spent 0.4 hour reviewing the rules for temporary restraining order and 3.7 hours preparing his affidavit in support of the motion. *Id.* at p. 5. The following day, Mr. Cochran spent an additional 6.1 hours preparing the application and reviewing case law on the issue. *Id.* at p. 11. It appears that Mr. Hasbun then spent 5 hours reviewing, revising, editing, and finalizing the application and his supporting declaration, after which Mr. Cochran spent an additional 3 hours reviewing and revising the application following the edits by the legal team. *Id.* at pp. 5, 11.

The billing entries related to the twenty-five-page Emergency Motion for Preservation Order and Order to Show Cause why Joseph Maldonado, Jeffrey Lowe, and the Greater Wynnewood Exotic Animal Park Should not be held in Contempt [Doc. 95] further illustrates the excessive amount of time expended by counsel on this motion and the redundant or repetitive nature of some of the tasks that counsel performed. Mr. Cochran billed 36.4 hours, Mr. Hasbun billed 33.9 hours, and Ms. Camp billed 20.7 for a total of 179.7 hours.[5] [Doc. 314-3 at pp. 6-8, 15-16, 18-19]. The specific billing entries reflect that an inordinate amount of time was spent working on certain tasks and the attorneys apparently spent a lot of time going over the same tasks with respect to the preparation of the motion. It appears that house counsel prepared an initial draft of the motion.[6] Mr. Hasbun then spent 5.6 hours revising and editing the introduction and legal analysis section of the motion on April 22, 2018; 1.7 hours of further drafting of the legal analysis section on August 23; 5.4 hours of further revising and drafting on August 24; 2.5 hours reviewing, revising, and editing on April 25; 2 hours reviewing, revising, and editing on August 27; and 4.6 hours reviewing, revising, and editing this motion on August 28. [Doc. 314-3 at pp. 6-8]. Mr. Cochran also spent time reviewing and revising the motion including 3.5 hours on August 23; 3.8 hours on August 24; 2.5 hours on August 27; and several more hours that are reflected in entries that combine tasks.[7] *Id.* at pp. 15-16. Ms. Camp spent a combined 20.7 hours on various tasks

---

[5] House counsel spent 89 hours working on the motion. [Doc. 314-11 at p. 7]. But again, this time is not compensable for the reasons explained above.

[6] House counsel spent 8 hours outlining the motion, 13.5 hours drafting the statement of facts, and 24 hours drafting the contempt portion of the motion. [Doc. 314-11 at p. 7]. She then spent 12 hours incorporating edits and an additional 48 hours reviewing and revising the motion. *Id.*

[7] Specifically, Mr. Cochran spent 1.3 hours reviewing the motion and researching case law on August 16, 3.3 hours reviewing and revising the motion and analyzing case law on August 22, 6.4 hours reviewing and revising the motion and analyzing case law on August 25, and 7.5 hours reviewing, revising, and finalizing the motion and revising declaration regarding the same on

including reviewing the motion, cite checking, and preparing exhibits. *Id.* at pp. 18-19. Because of the duplicative efforts addressing certain tasks and the inordinate amount of time attending to these tasks, a reduction of fees is appropriate.

Additionally, as the magistrate judge correctly pointed out, counsel spent and billed for countless hours meeting and conferring with one another to discuss the action. The evidence before the Court amply supports this determination. For example, on September 12, 2017, Mr. Hasbun and Mr. Cochran both billed .9 hour for meeting with each other to strategize—the subject of which has been redacted. [Doc. 31-4 at pp. 6, 12]. On September 13, 2017, both Mr. Hasbun and Mr. Cochran billed .9 hour for a conference with outside counsel and two other participants about a redacted subject matter. *Id.* Mr. Cochran also billed an additional .2 hour that day for another conference call with Mr. Hasbun and another participant. *Id.* On September 14, 2017, Mr. Hasbun and Mr. Cochran each billed a total of 3.1 hours for three conference calls and two meetings with various participants about redacted subject matters. *Id.* at pp. 7, 13. Ms. Camp also billed for the time she spent on one of the conference calls that day. *Id.* at p. 18. Another round of conference calls and meeting ensued the following day September 15, 2017, involving essentially the same participants as the day before. *Id.* at pp. 7, 13. Again, Mr. Hasbun, Mr. Cochran, and Ms. Camp all billed for the times they spent conferencing on the respective issues. *Id.* at 7, 13, 18. These examples are only a few of the entries recorded for time spent conferencing and conferring on various issues—the subject of which was redacted by Plaintiffs in most if not all entries and support that a reduction is warranted in this case.

---

August 28. Because the entries combine at least two tasks, the Court is unable to specifically indicate how much time was spent on drafting the motion.

Therefore, the Court finds that an across the board reduction of fees of 33% is warranted considering the heavy redaction of billing records provided by Plaintiff, the excessive time spent on certain tasks by counsel, and the frequency with which counsel duplicated certain tasks in this case. The recommendation of the magistrate judge as to the award of attorneys' fees will be adopted by the Court and a deduction of $3,287.50 will be applied to the paralegal fees based on Plaintiff's indication that it is seeking fees for a lesser number of hours than the amount reflected in its motion for fees and costs and the magistrate judge's calculation. Plaintiff shall recover attorneys' fees in the amount of $358,759.76.

### b. *Reasonable Expenses*

"[T]he district court may tax as costs all reasonable expenses incurred during the course of litigation, with the exception of routine office overhead." *Maner v. Linkan LLC*, 602 F. App'x 489, 494 (11th Cir. 2015). The magistrate judge recommended that Plaintiff should be awarded its expenses in the amount of $59,925.75, as Defendants did not object and Plaintiff established that the costs were reasonable. [Doc. 336 at p. 12]. The magistrate judge, however, recommended that the Court disallow expenses incurred by house counsel. *Id.* Plaintiff objected to this recommendation, contending that the magistrate judge erroneously determined that the expenses were incurred by house counsel in her purported capacity as a client liaison. [Doc. 337 at p. 12]. Plaintiff further argued that the expenses were incurred by others and that all the expenses were incurred in pursuit of discovery related to Defendants' disposal of the tigers. *Id.* Defendants also filed an objection, positing that the Court should reduce any fee award by an additional $21,719.41 based on Plaintiff's failure to justify specific expenses. [Doc. 338 at pp. 2-3]. In response, Plaintiff contends that the Court should not consider these arguments as they were not presented to the magistrate judge. [Doc. 339 at p. 1-3]. Regardless, Plaintiff contends that house counsel's billing

records provided sufficient information to support its entitlement to its litigation expenses. *Id.* at pp. 4-5. Plaintiff further explained why it should recover for each specific expense identified by Defendants, pointing out that the expenses would not have been incurred except for Defendants' brazen misconduct and that the expenses were reasonable. *Id.* at pp. 5-14.

Plaintiff is correct that the Court is entirely free to disregard Defendants' argument as to specific expenses that were not previously challenged in Defendants' response to the motion for fees. "[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). However, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Having considered the particular expenses identified by Defendants, the evidence before the Court, and the arguments presented by the parties, the Court finds that Plaintiff has not met its burden of showing that all of the amounts were reasonable.

The Eleventh Circuit has long stated that "[t]he fee applicant bears the burden of establishing entitlement." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (addressing entitlement to fees). In determining whether expenses are reasonable, this Court has considered various factors, depending on the nature of the expense at issue. For instance, in *S.E.C. v. Kirkland*, No. 606CV183ORL28KRS, 2008 WL 3981434, at *3, 5 (M.D. Fla. Aug. 21, 2008), the Court identified the reasonable market rates in its assessment on awarding investigative fees and the reasonable commercial rates for copying. In addressing a similar issue in *Bby Sols., Inc. v. Livingstone*, No. 3:15-CV-1001-J-32JRK, 2016 WL 7666150, at *1 (M.D. Fla.

Apr. 5, 2016), this Court reasoned that "even if investigator costs[8] may be appropriate under the statute, Plaintiff fail[ed] to provide any basis for the court to determine that the specific requested amount is appropriate and reasonable." The Court further explained that "[s]uch a basis might include information about the time expended, the rate, and the qualifications of the investigator, as well as information about comparable rates for the locale and the type of work." *Id.*

Plaintiff has sought litigation expenses for the services provided by James Pratte, Elite Protection Services, Bolter & Carr Investigations, Inc., James Orr Investigations, LLC, Green's Veterinary Clinic, and Trial Exhibits, Inc. While the Court can glean information regarding the qualification of some of these service providers from the declarations filed in this case,[9] Plaintiff has not met its burden of showing that the amounts incurred for all of these expenses are

---

[8] The Court has previously explained that "[i]n the legal context, 'costs' are not synonymous with 'expenses.' " *United States v. Sleep Med. Ctr.*, No. 3:12-CV-1080-J-39PDB, 2016 WL 11567785, at *1 n.2 (M.D. Fla. Aug. 23, 2016), *report and recommendation adopted sub nom. United States ex rel. Nichols v. Sleep Med. Ctr.*, No. 3:12-CV-1080-J-39PDB, 2016 WL 11567770 (M.D. Fla. Dec. 6, 2016). "Costs are listed in 28 U.S.C. § 1920 and cover 'relatively minor, incidental expenses,' while expenses are 'borne by litigants for attorneys, experts, consultants, and investigators.' " *Id.* (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012)).

[9] For example, the declaration of Jay Pratte—which the Court assumes to be James Pratte—states in relevant part:

> I am an animal training, behavior and welfare consultant for the Association of Zoos and Aquariums (AZA), U.S. Department of Agriculture (USDA), and Global Federation of Animal Sanctuaries (GFAS), among others. I received a Bachelor of Science degree in zoology and behavioral psychology from the University of Alberta, and a Masters of Interdisciplinary Studies in zoo and aquarium leadership from George Mason University. I have 25 years of experience training big cats (including tigers) and numerous other wild animal species. This includes behavioral assessment, animal husbandry, public demonstrations and advanced medical care.

[Doc. 95-11 ¶ 1]. Likewise, James Orr indicated in his declaration that before starting his firm he "was a Special Agent with the Federal Bureau of Investigations for 27 years." [Doc. 95-7 ¶ 3].

reasonable.[10] For instance, the expense records provided to the Court reflect three different rates or charges for the services of both Mr. Pratte and Mr. Orr. The rates or charges for Mr. Pratte's services are $3,757.34, $582.40, and $3,248.17. [Docs. 314-4 at 24, 314-8 at 19, 314-2 at 23]. Mr. Orr's services are billed at rates of or indicate charges of $1,230.91, $235.40, and $753.28. [Doc. 314-4 at pp. 21, 24; 314-5 at p. 35]. Hence, it is not clear what hourly or per project rate is charged for their services and how their rates compare with that charged by others in their field and in the relevant market. Likewise, the Court does not have sufficient information to find that the $2,200 charged by Elite Protection Services is a reasonable amount for the protection services it offered to Plaintiff's attorneys and experts who were involved in removal of the tigers. The Court acknowledges the hazardous nature of the service provided, but there is no information as to the rates customarily charged by other security firms for similar services in the relevant market. Additionally, the Court is not able to say how many security personnel were on site with the crew or how long they remained there. Without any such information, the Court is unable to find that the amount charged is reasonable. Lastly, Plaintiff incurred the expense of $6,037.50 for technology support from Trial Exhibits, Inc. As with the other costs at issue, there is no indication as to whether the fees charged by Trial Exhibits comport with that of other technology support providers in the Tampa Bay area. The Court will therefore deny the recovery for these expenses.

---

[10] Considering its own knowledge and experience concerning reasonable expenses, the Court finds that the cost of process service provided in this case by Bolter & Carr Investigations, Inc. was reasonable and the amount incurred to secure the Certificate of Veterinary Inspection from Green's Veterinary Clinic was also reasonable. *See Brungardt v. Comm'r of Soc. Sec.*, 234 F. App'x 889, 891 (11th Cir. 2007) (reasoning that a court may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value) (quoting *Norman v. Housing Auth. of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988)).

Having deducted these expenses, the award for expenses incurred by outside counsel shall be reduced from $59,925.75 to $ 40,358.34.

Plaintiff objected to the recommendation that the Court deny expenses incurred by house counsel, contending that the magistrate judge incorrectly assumed that the expenses were incurred solely in house counsel's capacity as a client liaison. [Doc. 337 at pp. 11-13]. As indicated in our discussion on recovery of fees, it is not apparent why house counsel was so heavily involved in the litigation after Plaintiff had retained outside counsel, and this same reason warrants denial of some of the expenses incurred by house counsel. Plaintiff has sought recovery for the expenses incurred by outside counsel to research the issues in this case. House counsel has also incurred research expenses, but it is not apparent that this research was necessary considering outside counsel's handling of the matter and the significant amount of time that outside counsel dedicated to research. Plaintiff also asks the Court to award research expenses for outside counsel.

The Court is also unable to determine whether house counsel's costs for printing services for its Oklahoma inspection prep and the evidentiary hearing exhibits was necessary. Notably, the documentary evidence for expenses incurred by house counsel does not reflect costs incurred in November 2017 in the amount of $61.00 for Oklahoma inspection prep. However, the evidence before the Court is that Plaintiff retained local counsel in Oklahoma to handle the litigation there and outside counsel in Florida also travelled to Oklahoma in November 2017. [Doc. 314-6 at pp. 6-7]. Again, this raises the issue of whether house counsel was attending to matters that outside counsel was also attending to and thus whether the expenses that house counsel incurred were necessary. The Court finds that the same circumstances exist as to the cost for evidentiary hearing exhibits incurred in February 2018. [Doc. 34-11 at p. 18]. The record before the Court reflects that outside counsel prepared hundreds of pages of photocopies in the days leading up to the hearing

held February 21, 2018 and February 22, 2018. [Doc. 34-19 at pp. 19-22]. The Court is unable to determine whether the same documents were being reproduced, and thus duplicative of each other. Hence, the Court cannot find that these printing costs incurred by house counsel were necessary.

The Court will also disallow the various travel related expenses incurred by house counsel in this case as either unnecessary or unreasonable. For instance, house counsel seeks expenses in the amount of $1,745.77 associated with travelling to the depositions in Oklahoma in September 2017. [Doc. 314-14 at p. 3]. Those depositions were taken by outside counsel from Florida. [Doc. 314-4 at p. 9]. In fact, house counsel sought the expenses incurred by both Mr. Hasbun and Mr. Cochran for their trip to Oklahoma. *Id.* at pp. 22-23. As such, Plaintiff has not demonstrated that this expense was necessary. *See, e.g., Am. Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 438–39 (11th Cir. 1999) (reasoning that travel expenses incurred by two New York ACLU attorney were not recoverable under 42 U.S.C.§ 1988 because their presence at the status conference and Internet demonstration was unnecessary); *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *23 (M.D. Fla. May 3, 2019) ("A court may cut travel expenses if outside-market counsel was unnecessary and the plaintiff would not have incurred travel and meal expenses had the plaintiff hired local counsel.") (citing *Mock v. Bell Helicopter Textron, Inc.,* 456 F. App'x 799, 803 (11th Cir. 2012)), *report and recommendation adopted*, No. 3:16-CV-965-J-39PDB, 2019 WL 3383628 (M.D. Fla. June 13, 2019); *Barlow v. Sun Life & Health Ins. Co.*, No. 3:09-CV-1063-J-32JBT, 2011 WL 3475298, at *2 (M.D. Fla. Aug. 9, 2011) (denying travel expenses on the basis that "it was unnecessary to have out of town counsel undertake the same work that capable local counsel could perform"). Likewise, house counsel sought expenses incurred in visiting the Endangered Species Animal Rescue Sanctuary in Florida in September 2017.  [Doc. 31414 at p. 3]. Mr. Cochran was also in attendance for the visit and

billed for his travel time.[11] [Doc. 314-4 at p. 15]. Several of the expense entries for that period have been redacted, which precludes the Court from determining whether outside counsel claimed its expenses associated with this trip. *Id.* at pp. 23-24. House counsel visited Florida again in October 2017, this time for a visit to Hernando Primate. [Doc. 314-14 at p. 3]. Again, Mr. Hasbun accompanied her—as his time entries reflect—and he claimed as an expense his mileage for the trip. [Doc. 314-5 at p. 18, 36]. Plaintiff has not satisfied the Court that house counsel's presence at this visit was necessary and that her expenses were necessarily incurred. *See, e.g., Am. Civil Liberties Union of Georgia*, 168 F.3d at 438–39, *Lockwood*, 2019 WL 2226126, at *23, *Barlow*, 2011 WL 3475298, at *2.

Plaintiff has sought expenses incurred by its employees for travel to two inspections in pursuit of evidence in this case. [Doc. 314-14 at pp. 2-3, Doc. 314-11 ¶ 9]. Expenses in the amount of $4,946.50 were incurred for the first inspection in Florida and a total of $5,322.12 was incurred for the second inspection in Oklahoma. [Doc. 314-14 at pp. 2-3]. While Plaintiff has provided a breakdown of these expenses—airfare, hotels, car rental, meals, and other travels—there is no indication as to how many employees attended the inspections and how many days the travels lasted, which precludes the Court from making a reasoned assessment as to whether the amounts are reasonable, and if not, what a reasonable amount would be. Hence, these expenses are due to be denied. As the Court has previously stated, it will not blindly award expenses. *Demsheck v. Ginn Dev. Co., LLC*, No. 309CV00335J25TEM, 2013 WL 12177830, at *1 (M.D. Fla. Nov. 26, 2013) (reasoning that "the affidavits do not include vital information necessary for the Court to award the requested expense reimbursements").

---

[11] A completely redacted time entry attributed to Mr. Hasbun on the day of the visit precludes the Court from determining whether he was also in attendance. [Doc. 314-4 at p. 9].

Lastly, the expenses incurred by house counsel in attending the November 2017 hearing on the motion to compel a site inspection in Oklahoma and the February 2018 evidentiary hearing on the motion for sanctions before this Court do not appear to have been necessary. [Doc. 314-14 at p. 3]. Time and expense entries reflect that Mr. Hasbun travelled to Oklahoma City on November 8, 2017, to attend the hearing on the motion to compel. [Doc. 316-6 at pp. 6, 19]. Local counsel in Oklahoma also attended that hearing. [Doc. 314-12 at pp. 15-16]. There is no evidence before the Court that house counsel's presence was required at the hearing, such that her travel expenses were necessarily incurred.[12] *See, e.g., Am. Civil Liberties Union of Georgia*, 168 F.3d at 438–39, *Lockwood*, 2019 WL 2226126, at *23, *Barlow*, 2011 WL 3475298, at *2. The same holds true for the two-day evidentiary hearing in February 2018. The witnesses were examined and the arguments for Plaintiff were presented by Mr. Hasbun. [Doc. 314-9 at p. 8]. Mr. Cochran appeared alongside him. *Id.* at p. 12. There is no record evidence suggesting that house counsel's presence was necessary, which would justify an award of her travel expenses. *See, e.g., Am. Civil Liberties Union of Georgia*, 168 F.3d at 438–39, *Lockwood*, 2019 WL 2226126, at *23, *Barlow*, 2011 WL 3475298, at *2. Hence, the Court agrees with the recommendation of the magistrate judge that these expenses too, should not be awarded. Therefore, Plaintiff's recovery for expenses shall be reduced to $40,358.34.

---

[12] Moreover, $1,247.70 would appear excessive for a roundtrip flight from California to Oklahoma, which would present an additional basis on which the Court could deny the expense. *See, e.g., DPR Constr., Inc. v. Rees Assocs., Inc.*, No. 8:03-CV-2050-T-30EAJ, 2007 WL 9723391, at *2 (M.D. Fla. Mar. 16, 2007) ("In light of the fact Southwest Airlines provides airline services from Oklahoma City to Tampa on a daily basis at the rate of $372.60 round trip, this Court will not award costs for a flight four times that amount. Defendant is entitled to recover reasonable travel expenses; a fourteen hundred dollar airline flight does not meet that standard.").

It is therefore **ORDERED AND ADJUDGED**:

1. Plaintiff's Objections to the Report and Recommendation [Doc. 337] are **OVERRULED.**

2. Defendants' Objections to the Report and Recommendation [Doc. 338] are **SUSTAINED**.

3. Except for Defendants' objections as to four specific expenses which are discussed fully in this Order, the Court will adopt, confirm, and approve the Magistrate Judge's Report and Recommendation [Doc. 336] in all respects.

4. Plaintiff's Motion for Reasonable Attorneys' Fees and Expenses [Doc. 314] is **GRANTED-in-part** and **DENIED-in-part**.

5. Plaintiff, People for the Ethical Treatment of Animals, Inc., shall recover attorneys' fees in the amount of $358,759.76. and expenses in the amount of $40,358.34, for a total of $399,118.10, against Defendants Dade City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., d/b/a Dade City's Wild Things, Kathryn Stearns, and Randy Stearns, jointly and severally.

6. The Clerk is directed to enter a Judgment as to Fees and Expenses in favor of Plaintiff People for the Ethical Treatment of Animals, Inc. and against Defendants Dade City's Wild Things, Inc., Stearns Zoological Rescue & Rehab Center, Inc., d/b/a Dade City's Wild Things, Kathryn Stearns, and Randy Stearns, jointly and severally.

**DONE AND ORDERED** in Tampa, Florida on November 24, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any